**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
           )
        Plaintiff, )
           )
v. )    CIVIL ACTION NO.
           )    1:06-cv-1603 (JDB)
URBAN ENTERPRISES, INC., *et al.* )
           )
        Defendants. )

**PLAINTIFF'S REQUEST FOR ADMISSIONS (FIRST SET)**
**<u>DIRECTED TO ALL DEFENDANTS</u>**

Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Plaintiff"),

asks that all Defendants within thirty (30) days after service of this Request (except as otherwise

provided in the Rules or by Order of the Court) make the following admissions in accordance

with Rule 36 of the Federal Rules of Civil Procedure.

**SECTION 1.  <u>OBLIGATION TO RESPOND</u>**

In accordance with the Federal Rules of Civil Procedure ("the Rules"), you must respond

in writing to this Request For Admissions ("Request"). Under the Rules, each matter on which

an admission is requested will be deemed admitted unless you serve me (i.e, send me) with your

written and signed answer or objection to each of the individual matters on which an admission

has been requested within thirty (30) days of the date on which this Request was sent to you.

You must separately respond to each request. You must admit those matters on which an

admission is requested that are true. If you object to any request, you must state the reasons for

your objection. In your answer you must specifically deny any matter for which an admission is



requested if you contend the request is not true or set forth in detail the reasons why you cannot truthfully admit or deny the matter. A denial must fairly meet the substance of the requested admission, and if good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, then you must specify so much of it as is true and qualify or deny the remainder. You may not fail to admit or deny a request claiming lack of information or knowledge unless you have first made a reasonable inquiry and the information you know or can readily obtain is insufficient to enable you to admit or deny the request. Finally, you cannot object to a matter of which an admission has been requested simply because you believe it presents a genuine issue for trial; you may, however, subject to possible sanctions that may be imposed by the Court, deny the matter or set forth reasons why you cannot admit or deny it.

## SECTION 2. DEFINITIONS

As used in this Request for Production of Documents,

2.01    "Audit Report" shall mean the report generated by Moore, Renner & Simonin, P.C. detailing the results of the audit conducted on Defendants' books and records for the period August 1, 2004 through September 30, 2005.

2.02    "Complaint" shall mean the Complaint filed in this matter.

2.03    "Contested Period" means August 1, 2004 through the present.

2.04    "Fund" means the International Painters and Allied Trades Industry Pension Fund.

2.05    "G. Russo" means Gary Russo, the individual defendant in this action.

2.06    "Labor Contract" means the Collective Bargaining Agreement by and between Urban and District Council 711, International Painters and Allied Trades.

2.07    "Officer" means the president, vice-president, general manager, treasurer, secretary and

comptroller of a Corporation and any other Person who performs duties corresponding to those normally performed by Persons occupying such positions even though such Person may no longer be serving in such capacity.

2.08    "Project Agreement" means the Collective Bargaining Agreement By and Between Urban and District Council 711, International Painters and Allied Trades for work down on the Steen School project in Bogota, New Jersey.

2.09    "Request for Admissions" means Plaintiffs' Request for Admissions (First Set) Directed to all Defendants.

2.10    "Rure" means Rure Associates Inc. d/b/a GSR Architectural, Inc. d/b/a GSR Architectural Windows and any and all of its past or present officers, agents, attorneys, accountants, shareholders, representatives, employees, affiliates, brokers or any other individuals or organizations acting with it or on its behalf.

2.11    "Union" means District Council 711, International Painters and Allied Trades Industry.

2.12    "Urban" means Urban Enterprises, Inc. and any and all of its past or present officers, agents, attorneys, accountants, shareholders, representatives, employees, affiliates, brokers or any other individuals or organizations acting with it or on its behalf.


## SECTION 3.  REQUESTS

3.01    The document attached as Exhibit 1 is a true and correct copy of the Project Agreement between Urban and the Union covering work done on the Steen School project.

3.02    Urban executed the Project Agreement on August 31, 2004.

3.03    Urban received a copy of the Project Agreement.

3.04    Urban was obligated to submit monthly remittance reports to the Fund detailing each hour of covered work performed on the Steen School project and identifying its employees who performed such work.

3.05    The document attached as Exhibit 2 is a true and correct copy of the Labor Contract between Urban and the Union.

3.06    Urban executed the Labor Contract on July 20, 2005.

3.07    Urban received a copy of Labor Contract.

3.08    Urban was obligated to submit monthly remittance reports to the Fund accounting for each hour that an employee performed work that was covered by the Labor Contract.

3.09    The Project Agreement, attached as Exhibit 2, requires contributions to be made to the Fund on all hours of covered work performed on the Steen School project.

3.10    The Labor Contract, attached as Exhibit 3, requires contributions to be made to the Fund on all hours of covered work performed during the period July 20, 2005 through April 30, 2006.

3.11    The Project Agreement requires that contributions be submitted by the 20th of each month.

3.12    The Labor Contract requires that contributions be submitted by the 20th of each month.

3.13    Urban maintained a principal place of business at 200 Mountain Avenue, Middlesex, New Jersey 08846.

3.14    Throughout the Contested Period Rure maintained a principle place of business at 200 Mountain Avenue, Middlesex, New Jersey 08846.

3.15    G. Russo is an officer of Urban.

3.16    G. Russo is an officer of Rure.

3.17    Employees of Urban work and/or worked for Rure.

3.18    Employees of Rure work and/or worked for Urban.

3.19    Employees perform the same or similar types of work for both Urban and Rure.

3.20    Urban utilized the same equipment as Rure.

3.21    Rure utilizes the same equipment as Urban.

3.22    Urban submitted remittance reports for the months of February 2005 through September 2005.

3.23    True and correct copies of the remittance reports submitted by Urban are attached as Exhibit 3.

3.24    The persons listed on the remittance reports attached as Exhibit 3 performed work covered by the Project Agreement attached as Exhibit 1.

3.25    The persons listed on the remittance reports attached as Exhibit 3 performed work covered by the Labor Contract attached as Exhibit 2.

3.26    Pension Contribution rates for the period February 2005 through September 2005 are as follows:

| | |
|---|---|
| Journeyman | $4.00/hr |
| First Year Apprentice | $0.00/hr |
| Second Year Apprentice | $0.50/hr |
| Third Year Apprentice | $1.00/hr |

3.27    Annuity Contribution rates for the period February 2005 through April 2005 are as follows:

| | |
|---|---|
| Journeyman | 11% of Gross wages |

First Year Apprentice      0% of Gross wages
Second Year Apprentice    4% of Gross wages
Third Year Apprentice     8% of Gross wages

3.28     Annuity contribution rates for the period May 2005 through September 2005 are

as follows:

Journeyman            12% of Gross wages
First Year Apprentice      0% of Gross wages
Second Year Apprentice    4% of Gross wages
Third Year Apprentice     8% of Gross wages

3.29     On the remittance reports Urban submitted to the Fund, it reported total hours and

total gross wages for purposes of calculating pension and annuity contributions as follows:

| Month | Hours for Pension | Total Gross Wages for Annuity |
|---|---|---|
| February 2005 | 544 - Journeyman | $17,507.00 - Journeyman |
| March 2005 | 796 - Journeyman | $24,863.60 - Journeyman |
| April 2005 | 360 - Journeyman | $11,468.00 - Journeyman |
| May 2005 | 804 - Journeyman | $25,721.00 - Journeyman |
| June 2005 | 1072 - Journeyman | $34,452.00 - Journeyman |
| July 2005 | 1408 - Journeyman | $43,699.20 - Journeyman |
|  | 120 - 2nd Yr. Apprentice | $2,232.00 - 2nd Yr. Apprentice |
| August 2005 | 2224.5 - Journeyman | $74,791.59 - Journeyman |
|  | 356 - 2nd Yr. Apprentice | $5,452.90 - 2nd Yr. Apprentice |
| September 9/1/05 -9/14/05 | 588 - Journeyman | $19,809.28 - Journeyman |
|  | 124 - 2nd Yr. Apprentice | $2,876.80 - 2nd Year apprentice |
| September 9/15/05 - 9/22/05 | 168 - Journeyman | $5,500.80 - Journeyman |
|  | 48 - 2nd Yr. Apprentice | $1,041.60 - 2nd Yr. Apprentice |

3.30     Urban owes Pension and Annuity contributions to the Fund for the period

February 2005 through September 2005 as follows:

| Month | Pension Fund | Annuity Fund | Total |
|---|---|---|---|
| February 2005 | $2,176.00 | $1,925.77 | $4,101.77 |
| March 2005 | $3,184.00 | $2,735.00 | $5,919.00 |
| April 2005 | $1,472.00 | $1,261.48 | $2,733.48 |
| May 2005 | $3,216.00 | $3,086.52 | $6,302.52 |
| June 2005 | $4,288.00 | $4,134.24 | $8,422.24 |
| July 2005 | $5,692.00 | $5,333.18 | $11,025.18 |

180327-1

| August 2005 | $9,077.00 | $9,193.11 | $18,270.11 |
| September 9/1/05 -9/14/05 | $2,414.00 | $2,492.18 | $4,906.18 |
| September 9/15/05 – 9/22/05 | $696.00 | $701.75 | $1,397.75 |
| **TOTAL** | **$32,215.00** | **$30,863.23** | **$63,078.23** |

3.31    An audit of Urban's books and records was conducted by the accounting firm of

Moore, Renner & Simonin, P.C.

3.32    The audit covered the period August 1, 2004 through September 30, 2005.

3.33    Moore, Renner & Simonin, P.C. prepared an Audit Report of their findings based

on a review of Urban's records.

3.34    Attached as Exhibit 4 is a true and correct copy of the Audit Report.

3.35    Urban received a copy the Audit Report.

3.36    The Audit Report revealed delinquent contributions in addition to the unpaid

contributions described in Request 3.30 in the amount of $1,703.83.

3.37    Urban owes delinquent contributions revealed by the audit in the amount of

$1,703.83.

3.38    Urban owes delinquent contributions to the Fund in the total amount of

$64,782.06.

3.39    The Labor Contract provides a specific method that must be followed in order to

effect its termination.

3.40    In order to terminate the Labor Contract Urban must serve upon the Union written

notice of its desire to cancel or terminate the Labor Contract not less than sixty (60) days and not

more than ninety (90) days prior to April 30th.

3.41    If no notice is served, as described in Request 3.40, the Labor Contract shall

remain in full force and effect and shall continue from year to year thereafter unless notice, as

described in Request 3.40, is served not less than sixty (60) days and not more than ninety (90) days prior to April 30th, of any subsequent year.

3.42    Urban has not served upon the Union written notice of its desire to cancel or terminate the Labor Contract not less than sixty (60) and not more than ninety (90) days prior to April 30, 2006 or April 30, 2007.

3.43    Attached as Exhibit 5 is a true and correct copy of the Fund's Trust Agreement.

3.44    Attached as Exhibit 6 is a true and correct copy of the Fund's Plan of Benefits.

3.45    The Fund is entitled to liquidated damages calculated as twenty percent (20%) of the unpaid contributions.

3.46    Urban owes $13,465.04 in liquidated damages.

3.47    The Fund is entitled to interest on the unpaid contributions from the date contributions were due until the date they are paid.

3.48    Urban owes the Fund $7,509.50 in interest on unpaid contributions calculated through February 28, 2007.

3.49    Wages of Urban's employees have been paid by Rure.

3.50    Rure is liable for the delinquent contributions owed by Urban.

3.51    Rure is the alter ego of Urban.

3.52    During the entire Contested Period, G. Russo's duties and responsibilities included the day-to-day management of the operations of Urban.

3.53    During the entire Contested Period, G. Russo's duties and responsibilities included the day-to-day management of the financial affairs of Urban.

3.54    During the entire Contested Period, G. Russo's duties and responsibilities

180327-1                                                    8

included the day-to-day management of the business operations of Urban.

3.55    G. Russo had discretion and control over the disposition of the financial assets (i.e., money) of Urban.

3.56    During the entire Contested Period, G. Russo exercised discretion and control over the disposition of the financial assets (i.e., money) of Urban.

3.57    During the entire Contested Period, G. Russo had discretion and control over the spending practices of Urban.

3.58    During the entire Contested Period, G. Russo exercised discretion and control over the spending practices of Urban.

3.59    During the entire Contested Period, G. Russo's duties and responsibilities included making decisions regarding the disbursement of monies by Urban to other parties (its creditors), including the Fund and suppliers.

3.60    During the Contested Period G. Russo was, at all times, a signatory on all bank accounts.

3.61    During the entire Contested Period, G. Russo determined, on a day-to-day basis, which creditors would be paid out of Urban's bank accounts.

3.62    During the entire Contested Period, G. Russo was responsible for authorizing the payment of fringe benefit contributions to the Fund.

3.63    During the Contested Period, G. Russo was responsible for insuring the payment of fringe benefit contributions to the Fund by Urban.

3.64    During the Contested Period, G. Russo dealt directly with the Fund in attempting to remedy any non-payment of fringe benefit contributions owed by Urban.

180327-1                                      9

3.65    It was at G. Russo's direction that Urban did not pay the Fund the fringe benefit contributions it was obligated to pay for August 1, 2004 through the present.

3.66    Rather than pay the fringe benefit contributions described in Request 3.30 above, G. Russo authorized Urban to pay one or more of its other general creditors.

3.67    G. Russo understands that Urban is under an obligation, for so long as Urban remains bound to the Project Agreement attached as Exhibit 1, to submit monthly remittance reports to the Fund accounting for each hour that an Urban employee performs work that is covered by the Project Agreement attached as Exhibit 1.

3.68    G. Russo understands that Urban is under an obligation, for so long as Urban remains bound to the Labor Contract attached as Exhibit 2, to submit monthly remittance reports to the Fund accounting for each hour that an Urban employee performs work that is covered by the Labor Contract attached as Exhibit 2.

3.69    During the entire Contested Period, G. Russo had discretion and control over the disposition of the financial assets (i.e., money) of Rure.

3.70    During the entire Contested Period, G. Russo exercised discretion and control over the disposition of the financial assets (i.e., money) of Rure.

3.71    During the entire Contested Period, G. Russo had discretion and control over the spending practices of Rure.

3.72    During the entire Contested Period, G. Russo exercised discretion and control over the spending practices of Rure.

3.73    At present, G. Russo currently still exercises discretion and control over the financial assets and spending practices of Rure.

3.74    During the entire Contested Period, G. Russo's duties and responsibilities included making decisions regarding the disbursement of monies by Rure to other parties (its creditors), including the Fund and suppliers.

3.75    G. Russo is currently responsible for making decisions regarding the disbursement of monies by Rure to other parties, including the Funds and suppliers.

3.76    During the Contested Period G. Russo was, at all times, a signatory on all bank accounts.

3.77    During the entire Contested Period, G. Russo determined, on a day-to-day basis, which creditors would be paid out of Rure's bank accounts.

3.78    During the entire Contested Period, G. Russo was responsible for authorizing the payment of fringe benefit contributions to the Fund.

3.79    During the Contested Period, G. Russo was responsible for insuring the payment of fringe benefit contributions to the Funds by Rure.

3.80    During the Contested Period, G. Russo dealt directly with the Fund in attempting to remedy any non-payment of fringe benefit contributions owed by Rure.

3.81    It was at G. Russo's direction that Rure did not pay the Funds the fringe benefit contributions it was obligated to pay for August 1, 2004 through the present.

3.82     Rather than pay the fringe benefit contributions described Request 3.30 above, G. Russo authorized Rure to pay one or more of its other general creditors.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:

SANFORD G. ROSENTHAL (ID NO. 478737)
ELIZABETH A. COLEMAN
(Admitted Pro Hac Vice)
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0611/0644

Date: March 6, 2007          Attorneys for Plaintiffs

180327-1                          12

## CERTIFICATE OF SERVICE

I state under penalty of perjury that I served the foregoing Plaintiffs' Request for

Admissions (First Set) Directed to All Defendants by mailing same first class mail, postage

prepaid, on the date listed below to:

Eric Stuart, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Avenue
Suite 402
Morristown, NJ  07960

Date: <u>March 6, 2007</u>

ELIZABETH A. COLEMAN

**LOCAL UNION** _DC711_

**DATES** _5/1/00   4/30/06_

**PENISON PAGES** _12, 18,19 20 26,32,33_



5/1/00  Pen #3.00  Ann 12%  5/1/01  Pen $3.30 Ann 12%
5/1/02  Pen $3.60  Ann 12%  5/1/03  Pen $ 3.90 Ann 12%

**RATES** _5/1/04  Pen #4.20 Ann 12%_
5/1/05  Pen $ 4.50  Ann 12%

**MODEL CLAUSE** _✓_

50% JC ✓  SC ✓

no pen 1st yr Appr6

**EXHIBIT**
1

Printr Urban
27916. cba

```
                    DC0711 LOCAL INFORMATION

LOCATION : PLEASANTVILLE NJ/PTG CONTR  CONSTRUCTION

STATUS          : A        RPTDUE DAY  : 00     REGION    : 2  ADM:
AGREEMENT DATE : 19960501   MODEL     CL: Y     COUNTRY   : U
AGREEMENT EXP  : 20010430   ROLLOVER  CL: N      BENEFIT LV : M
PARTICIPATION  : 19670601   SUBCONTR  CL: N      RFORMS    : NO ENVELOPES
MERGER DATE    : 19950501   OUTOF AREA CL: N     STAT EFFEC : 00000000

MESSAGES: BEFORE 5/1/00 GRANDFATHER RATES   PEN $.25  ANN $.57
          1ST YR APPRS NO PEN OR ANN (D RATE PEN $.30 ANN $.30 EFF 5/00
          2ND YR APPRS PEN $.50    ANN 4% GROSS  PEN $1.14
          3RD YR APPRS PEN $1.00   ANN 8% GROSS  PEN $2.28
         PEN.  PENSION   ANN.  ANNUITY  TOTAL  PCENT
         TYPE   RATE     TYPE   RATE    RATE     %      BEG. DATE   END DATE
CURRENT   H    03.00      P    12.00   03.00   00.00   2000/05/01  2010/12/31
HISTORY   H    02.50      P    12.00   02.50   00.00   1997/05/01  2000/04/30
HISTORY   H    02.50      P    07.50   02.50   00.00   1996/05/01  1997/04/30
```

# TABLE OF CONTENTS

| Article | | Page |
|---|---|---|
| 1 | Recognition | 1 |
| 2 | Jurisdiction | 3 |
| 3 | Union Security | 7 |
| 4 | Administrative Dues | 7 |
| 5 | Exclusive Hiring Hall | 7 |
| 6 | Wages and Schedules | 10 |
| 7 | Hours & Overtime | 27 |
| 8 | Contractual Relations and Obligations | 28 |
| 9 | Working Conditions | 30 |
| 10 | Fringe Benefit Funds | 31 |
| 11 | Cooperation and Advancement Funds | 33 |
| 12 | Political Action Fund | 34 |
| 13 | Joint Board | 35 |
| 14 | Union Representatives and Shop Stewards | 35 |
| 16 | Preservation of Work Clause | 36 |
| 17 | Joint Trade Board | 37 |
| 18 | Successor Clause | 39 |
| 19 | General Savings Clause | 40 |
| 20 | Duration Clause | 40 |



(A)  Employ not less than 50% of the employed on such work from the residents of the area where they work is performed or from among the persons who are employed the greater percentage of their time in such area; any others shall be employed from the contractor's home area.

(B)  Comply with all lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits, and procedure for settlement of grievances; provided, however, employees brought into an outside jurisdiction by employers shall be entitled to receive the wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees.

1.8   An employer shall not engage in work covered by the agreement through the use of device of another business or corporation which such an employer owns or controls through the use or device of a joint venture with another employer or contractor without first consulting with the Union to establish to the Union's satisfaction that the use of such device is not for the purpose of taking advantage of lower wages or conditions in effect in the area where said device is sought to be used. If the Union is not so satisfied, it may resort to all legal or economic recourse, including cancellation of this agreement with said employer, not withstanding any other provision of this agreement.

1.9   An employer from another territorial jurisdiction who has work to be performed in the territory of District Council 711 and seeks persons to perform the work, shall employ persons from the registration list in the ratio of one (1) person from said list to one (1) person from other sources.

1.10   Employees covered by this agreement have the right to respect any legal picket line validly established by a bona fide labor organization; the Union has the right to withdraw employees subject to this agreement if the employer is involved in a legitimate primary labor dispute with a bona fide labor organization.

(A)  It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, if any employee refuses to perform any service which his or her employer undertakes to perform for an employer or person whose employees are on strike, and which service, but for such strike, would be performed by the employees of the employer or person on strike.

2



3.  The application of relief, stucco, plaster or decorative work shall not be considered paperhangers' work exclusively.

(C)  All persons engaged in applying or removing paints, pigments, extenders, metal primers and metal pigments, clear pigments, binders, thinners and dryers, primers and sealers, oil paints and enamels, chemical and epoxy coatings, water colors and emulsions clear coatings, waxes, stains, mastics, cement enamels and other special coatings, plastics, adhesives, coating and sheet rubber and other linings, oils, varnishers, water colors, wall paper, wall coverings, decorative textures on all surfaces, foams, seamless and tile-like coatings or other materials used in the various branches of the trade, and the cleaning and beaching of all interior, and exterior walls and surfaces with liquid steam, sandblast, waterblast or any other process.

(D)  Glaziers, Architectural Metal and Glass Workers: General Glazing will include, but not be limited to: (1) the installation, setting, cutting, preparing, fabricating, distributing, handling or removal of the following: art glass, prism glass, beveled glass, leaded glass, automotive glass, protection glass, plate glass, window glass, colored glass, figured glass, vitrolite glass, carrara glass, all types of opaque glass, glass chalk boards, structural glass, curtainwall systems, louvers, tempered and laminated glass, thiokol, neoprene, all types of insulating glass units, all plastics or other similar materials when used in place of glass to be set or glazed in its final resting place with or without putty, vinyl, molding, rubber, lead, sealants, silicone and all types of mastics in wood, iron, aluminum, sheet metal or vinyl sash, skylights, doors, frames, stone wall cases, show cases, book cases, sideboards, partitions and fixtures; (2) the installation of the above materials when in the shop or on the job site, either temporary or permanent, on or for any building in the course of repair, removal, alteration, retrofit or construction; (3) the installation and welding of all extruded, rolled or fabricated materials including, but not limited to, all metals, plastics and vinyls, or any materials that replace same, metal and vinyl tubes, mullions, metal facing materials, corrugated flat metals, aluminum panels, muntins, facia, trim moldings, porcelain panels, architectural porcelain, plastic panels, unitized panels, skylights, showcase doors, all handrails and relative materials, including those in any or all types of building related to store front, door/window construction and curtain wall

4



materials of a reflective nature used in the sign field for advertising or decorative purposes.

All operations involving cutting, bending, trimming and adhesion of plastic or other transparent, translucent or any other material used as a sign face background, also porcelain, enamel or force dried object when used for identification or advertising purposes and control of all sign handling, erecting and other necessary operation, pertaining to the same; theatrical and lobby displays, also all sketched whether made by pencil, ink, paints or by coloring material be it on hand or by any other method process.

(G)  Display Convention and Show Decorators:
This jurisdiction includes the installation and removal of all exhibits (floor to ceiling) and related materials in connection with trade shows and conventions, including, but not limited to: trade shows and convention booth assembly and disassembly; installation, removal, disassembly, and recrating of all commercial exhibits.

The construction, preparation, erection, and maintenance of all signs, lettering, pictorial work, screen process work, show card writing, commercial exhibits and fabrication of advertising displays and pattern and sketch making, scale model making, the preparation training aids and mockups and application of plastic, scotchlite and similar reflective materials.

(H)  Scenic Artists:
Scenic Artists' work shall consist of models, sketches, carpenter drawings, painting for theatrical productions, motion picture settings and all the various effects; the painting of properties and decorations which may be used to decorate the stage and motion picture settings, mural paintings, display creations and the art of makeup and all its various effects.

(I)  Tools and Equipment:
The operation of all tools, equipment and machinery used by all trades coming under our Union's jurisdiction including brushes, rollers, spray painting equipment, miscellaneous hand and power driven tools including sandblasting equipment, ladders, scaffolding and other rigging, the operations and maintenance of all types of compressors and hi-reaches.

(J)  The forgoing is not all-inclusive, and may be enlarged or otherwise changed by action of the General Executive Board in a manner not inconsistent with the express provisions of The Constitution of the Union and upon approval by the Coalition.

6

crimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, or regulations, bylaws, constitutional provisions, or any other aspect or obligation of the Union membership policies or requirements. All such selection and referral shall be in accordance with the following procedure.

5.1  The Union shall establish and maintain an open and non-discriminatory referral system for the employment of journeymen and apprentice painters, tapers and glaziers.

5.2  The employer shall, upon requesting referral of job applicants, specify the following to the Union:

    (A)   Number of persons required

    (B)   Work or project location

    (C)   Type of work

    (D)   Individuals requested by name

    (E)   Specialty involved

    (F)   Any information to assist with proper referrals

5.3  The Union shall refer workers to the employer in the following manner and order:

    (A)   If available, specifically requested individuals previously employed by said employer may be recalled for a period of twelve (12) months from date of layoff.

    (B)   Those available whose names are entered on a seniority list, specialties included, posted and maintained by the Union.

5.4  The employer shall have entire freedom of selectivity in hiring and may reject, layoff or terminate any person referred to it by the Union.

    (A)   In the event the Union is unable to furnish qualified persons for employment, the employer may procure them from any other source or sources.

5.5  The selection of applicants for referrals shall be on a non-discriminatory basis. Seniority shall be based upon the length of employment in the

8

## ARTICLE 6
## WAGES & SCHEDULES

6.1   Classification of Painters/Tapers Work:

(A)   New Construction of all kinds, except as described in (c).

(B)   Repainting, paperhanging work and preparation therefore on jobs where no major alterations occur, and where there are not more than three (3) other Union trades other than painters and allied trades present on that job, but excluding bridges, stacks, elevated tanks, and generating stations.

(C)   Painting/Taping of residences and apartment buildings up to three (3) stories in height.

In the event of a dispute, the Joint Trade Board shall determine the classification of the specific project.

6.2   Spraying, sandblasting, pneumatic and powertool (over 115V), work on tanks, stacks, open structural steel, cables, swing scaffolds, and exterior work over three (3) stories; work above thirty (30) feet from pole trucks, scissor lifts or other lifting devices shall be at the listed wage rates.

6.3   Glaziers Installation (Rack) Schedule:

(A)   One (1) man for door lights and similar sizes up to 42" x 84". Over this size shall be two (2) men.

(B)   This does not apply to steel or work sash of typical sizes and may be adjusted on prevailing rate projects.

(C)   On all plate glass:

Glass up to 170 united inches ...................................Two    Men
Glass from 171 united inches to 191 united inches ......Three  Men
Glass from 191 united inches to 221 united inches ......Four   Men
Glass from 221 united inches to 240 united inches ......Five   Men
Glass from 240 united inches to 250 united inches ......Six    Men
Glass from 250 united inches to 260 united inches ......Seven  Men
Glass from 260 united inches to 272 united inches ......Eight  Men
Glass from 272 united inches to 284 united inches ......Nine   Men
Glass from 284 united inches to 290 united inches ......Ten    Men
Glass from 290 united inches to 305 united inches ......Eleven Men
Glass from 305 united inches to 312 united inches ......Twelve Men

10

6.4   Painters, Glaziers & Tapers wage rates are as indicated on the following charts:

## PAINTERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | $31.00 | $33.85 | $35.70 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | $31.95 | $35.40 | $36.95 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | $32.80 | $36.20 | $37.85 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | $33.65 | $37.05 | $38.75 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | $34.45 | $37.90 | $39.65 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | $35.25 | $38.80 | $40.55 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

Abbreviations:
J-Journeyman Painter   F-Foreman Painter   GF-General Foreman   Jsp-Journeyman Spray   Fsp-Foreman Spray
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

Painters repaint
Wage for work classification B, as described: Repainting, paperhanging work and preparation therefore on jobs where no major alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding bridges, stacks, elevated tanks, and generating stations.

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | $24.20 | $26.80 | $27.80 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | $24.75 | $27.20 | $28.45 | .14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

continued

12

# TAPERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:

J-Journeyman Painter   F-Foreman Painter   GF-General Foreman
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

Tapers

Wage for work classification B, as described: Taping and preparation on jobs where no major alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding generating stations.

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $23.00 | $25.30 | $26.45 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $23.50 | $25.85 | $27.05 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $24.00 | $26.40 | $27.60 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $24.55 | $27.00 | $28.25 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

14

continued



## GLAZIER

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $30.00 | — | 14 | $3.00 | 1 | 12 | | | | |
| 05/01/01 | $29.20 | $30.70 | — | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $31.40 | — | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $32.10 | — | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $33.05 | $34.05 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $34.05 | $35.05 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:

J-Journeyman Painter   F-Foreman Painter   GF-General Foreman
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

## INDUSTRIAL WORKERS

| Effective From | Wage | H & W % | Pension $ | App. % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $10.20 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $10.60 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $11.00 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $11.40 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $11.80 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $12.20 | 20 | $1.25 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:

H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

16



| Painter | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Spray, Stack, Tank, Swing | $31.00 | $31.95 | $32.90 | $33.65 | $34.45 | $35.25 |
| Foreman Spray, Tank Swing, Stack | $33.85 | $35.40 | $36.20 | $37.15 | $37.90 | $38.00 |
| Gen. Foreman Spray, Tank Swing, Stack | $35.70 | $36.95 | $37.85 | $38.75 | $39.65 | $40.55 |
| Annuity | 12% Gross ($3.42) | 12% Gross ($3.51) | 12% Gross ($3.60) | 12% Gross ($3.69) | 12% Gross ($3.78) | 12% Gross ($3.87) |
| Health & Welfare | 14% Gross (#3.99) | 14% Gross ($4.095) | 14% Gross ($4.20) | 14% Gross ($4.305) | 14% Gross ($4.41) | 14% Gross ($4.515) |
| Education And Training | 1% Gross (.285) | 1% Gross (.29) | 1% Gross (.30) | 1% Gross (.31) | 1% Gross (.315) | 1% Gross (.32) |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.30 | $40.48 | $41.675 | $42.86 | $44.055 | $45.308 |

18



| C-Rate Painter | 5/01/00 | 5/01/01 | 5/01/02 | 5/01/03 | 5/01/04 | 5/01/05 |
|---|---|---|---|---|---|---|
| Journeyman | $18.00 | $18.60 | $19.20 | $19.80 | $20.40 | $21.45 |
| Foreman | $19.80 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| General Foreman | $20.70 | $21.40 | $22.10 | $22.80 | $23.50 | $24.70 |
| Spray | $19.60 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| Foreman Spray | $21.50 | $22.45 | $23.25 | $23.85 | $24.70 | $25.95 |
| General Foreman Spray | $22.55 | $23.45 | $24.30 | $25.05 | $25.80 | $27.15 |
| Annuity | 12% | 12% | 12% | 12% | 12% | 12% |
| Health & Welfare | 14% | 14% | 14% | 14% | 14% | 14% |
| Education & Training | 1% | 1% | 1% | 1% | 1% | 1% |
| Pension | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $25.46 | $26.22 | $26.98 | $27.746 | $28.508 | $29.84 |

20

| Taper B-Rate | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $22.00 | $22.50 | $23.00 | $23.50 | $24.00 | $24.55 |
| Foreman | $24.20 | $24.75 | $25.30 | $25.85 | $26.40 | $27.00 |
| General Foreman | $25.30 | $25.85 | $26.45 | $27.05 | $27.60 | $28.25 |
| Annuity | 14% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross. | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $31.48 | $31.975 | $32.91 | $22.84 | $34.78 | $35.779 |

22



| | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Glazier/Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Annuity | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.30 | $40.48 | $41.67 | $42.86 | $44.05 | $45.30 |

24



6.5  (A)  Apprentice rates shall be the following percentages of the base rate:

| First | 4 Months | 30% |
|---|---|---|
| 5 to | 8 Months | 40% |
| 9 to | 12 Months | 50% |
| 13 to | 16 Months | 60% |
| 17 to | 20 Months | 70% |
| 21 to | 24 Months | 75% |
| 25 to | 28 Months | 80% |
| 29 to | 32 Months | 85% |
| 33 to | 36 Months | 90% |

(B)  The change in rate shall apply after regular attendance at apprentice school and passing regular skills test. Journeyman status after 6000 hours of training.

(C)  Fringe benefits shall be a percentage (%) of the base wage listed in 6.4 as follows:

| Year | H & W | Pension | Annuity |
|---|---|---|---|
| First | 13% | | |
| Second | 14% | .50 hr. | 4% |
| Third | 14% | 1.00 hr. | 8% |

6.6  Effective May 1, 2000 the employer shall deduct $1.00 per hour from the pay of all Painters and Tapers; the deduction shall be $0.50 per hour from Glaziers pay. Effective May 1, 2001 the deduction shall also be $1.00 per hour from Glaziers pay. The deductions shall be paid into the Vacation Fund of District Council 711.

6.7  On jobs of four (4) or more employees, one person shall be designated as foreman. A general foreman shall be designated on jobs of fifteen (15) or more employees.

6.8  All employees shall be paid weekly at least 30 minutes prior to the end of the work day. Not more than three (3) days pay shall be held back for the period between the close of the pay period and pay day. A statement of earnings and deductions shall accompany the pay.

6.9  Employees shall be notified and paid in full at least thirty (30) minutes before being laid off at lunch or quitting time.

6.10  Employers who send employees to jobs outside the territorial jurisdiction shall pay the expense of travel, room and board.

26



in the shop for the periods indicated above for which they are paid.

(B)   In the event weather conditions require the stoppage of work on any day after work has begun, employees shall be paid to the next full hour.

7.6   If an employee fails to report to work and the employer finds he cannot use the employee upon his return to work, the employer shall have the option of either paying off the employee at once or requesting him to wait for any wages due him until the next regular pay day. Waiting time shall not enter into the settlement.

7.7   The following are recognized holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, General Election Day - afternoon (a full 8 hour day at regular wage rates is permitted prior to noon), Veterans Day, Thanksgiving Day, and Christmas Day.

7.8   In the event work is lost due to weather or job conditions, work may be accomplished on Saturday, Sunday at the regular straight time rate to make up the lost time.

7.9   (A)   Ten percent (10%) shall be added to the previously indicated wage rates for any eight (8) hours work outside the regular work day. Fifteen percent (15%) shall be added to the wage rates for any second shift outside the regular work day.

(B)   In addition to the added amounts in 7.9A, when three (3) shifts exist, the second shift shall receive eight (8) hours pay for seven and one half (7 1/2) hours work; the third shift shall receive eight (8) hours pay for seven (7) hours work.

(C)   The above applies to work classification 6.1(A) only.

## ARTICLE 8
## CONTRACTUAL RELATIONS & OBLIGATIONS

8.1   One member of a firm is allowed to work with the tools and a contractor is one that employs, on average, at least one person throughout the year.

8.2   Each employer shall carry comprehensive kinds of insurance such as, but not limited to, worker's compensation, public liability and property damage on equipment, automotive and otherwise, when used by its employees, as well as other coverage carried by custom or practice in this

28

by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

8.6   The Union agrees that journeymen will not be referred to a builder unless extenuating circumstances justifies the referral and the coalition is consulted prior to providing any employees.

8.7   In the event that a builder or general contractor owes monies for work performed on a job to a contractor who is signatory to an agreement with the Union, they will endeavor to do everything legally possible to see that all just debts owed to the contractor shall have been settled satisfactorily.

## ARTICLE 9
## WORKING CONDITIONS

9.1   The use of spray equipment is allowed to paint acoustical surfaces, ceiling grid, furniture, bar-joists, structural steel, corrugated ceiling and walls (including pipes, ducts, conduit, hangers, steel, etc. adjacent thereto), wood walls and ceilings, where exposed joists are thirty (30) inches or less on centers, fin type radiation, floors, louvers and gratings, block filler with backrolling; metal pan stairs and spindle railings, plastics and multi-color materials, lacquers and any other material deemed not brushable, and any and all work at housing projects. In the event a second employee is necessary in a spray painting operation, he shall also receive the spray rate provided he works in the immediate work area at all times the equipment is in use. He shall also relieve and otherwise assist the other person.

 (A) The Joint Board shall study other processes, materials and surfaces and shall determine those which shall be added to those mentioned herein.

 (B) The Business Manager shall be notified when spraying is contemplated.

9.2   The unrestricted use of tools of the painting trade is permitted on work classified in 6.1A (prevailing wage jobs); 6.1B; and 6.1C.

9.3   It is understood and agreed and recognized that traditional hand tools to perform work with namely hawks, trowels, bread pans, and broad knives, will be supplied by the Employees. The Employer shall furnish all other tools and equipment to work with and if at any time such tools or equipment or any material or work conditions shall constitute a hazard to health or physical safety, the Employer shall not permit his employees to

(C) For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee shall be counted as wages for which contributions are payable.

(D) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeymen, and probationary employees.

(E) The payments to the Training Fund required above shall be made to the National Training Fund which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

10.3    International Union of Painters and Allied Trades Union and Industry Pension Fund.

The only agreement between the employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1.  (A) Commencing with the first day of May, 2000, and for the duration of the Agreement, and nay renewals or extension thereof, the employer agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(B) For each hour or portion thereof for which an employee receives pay, the employer shall make a contribution of in the amount indicated in the 6.4 charts to the above named pension fund; allocations to the IUPAT Union and Industry Pension Plan and to the IUPAT Union and Industry Annuity Plan shall be as indicated in said charts.

(C) For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(D) Contributions shall be paid on behalf of any employee starting

32

(B) For the purpose to this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(C) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices and probationary employees.

(D) The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust as amended from time to time, establishing the Fund.

2. The Employer hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3. All contributions shall be made at such times and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

11.2 Industry Advancement Fund:

1. Effective May 1, 2000 each employer shall make a contribution of three cents ($.03) per hour per painter, fifteen cents ($.15) per hour per taper, and fifteen cents ($.15) per hour per glazier for each hour worked by each employee to the "Industry Advancement Fund" heretofore established and administered by Trustees appointed by each of the three (3) members of the Coalition solely for the advancement, and improvement of the trade and the payment of expenses in carrying out such programs and responsibilities.

## ARTICLE 12
## POLITICAL ACTION FUND

12.1 Employers signatory to this agreement shall deduct form the wages of each Union Employee, the voluntary sum of seven cents ($.07) for each hour worked as a non-deductible political contribution to the DC

34

(A)  The shop steward may handle routine grievances on the job but is not authorized to call work stoppages or make any agreement which contradicts, changes, modifies or alters the terms of this agreement.

(B)  In the event of emergent difficulties, he shall so notify the Business Manager.

(C)  Except for general foreman and foreman, the steward is senior and, provided he remains qualified to do the work, the shop or job steward shall be the last person laid off among the employees in the bargaining unit in any shop and/or job.

## ARTICLE 15
## SUBCONTRACTING

15.1   Subcontracting shall not be permitted except to signatory contractors whose employees receive comparable wages, hours of work and working conditions as hereunder.

(A)  Unemployed Union Painters may take work on a contract basis not to exceed one thousand dollars ($1,000.00). The member must notify the Union before starting the job and the Union shall advise the Association of the job. If there is no objection based upon the fact that an Association member bid the job, the Union member may commence the work. A Union member in violation shall be brought before the Joint Trade Board and, if found guilty, shall be fined one thousand dollars ($1,000.00) for the first offense; two thousand dollars ($2,000.00) for the second offense; and expelled from the Union for the third offense.

## ARTICLE 16
## PRESERVATION OF WORK CLAUSE

16.1   To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the employer performs on site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise) man-

36

(B)  Ten (10) members, five (5) representing each party, shall constitute a quorum. Decisions shall be made by majority vote provided that the Union representatives and Association representatives shall have equal voting strength with respect to each vote. Members of the Joint Board shall choose a chairman and co-chairman to serve such terms as agreed upon by the Board, provided that one such officer shall represent each party.

17.2  The Joint Board shall meet regularly at least once every three (3) months. Special meetings may be called by the chairman or co-chairman when prompt hearing and decision is required in any dispute.

17.3  The Joint Board is empowered to hear and decide all grievances and disputes which may arise between the parties as to the interpretation or application of this agreement; to award or assess remedies, damages and penalties for violations of this agreement provided, however, any assessment of damages shall not exceed Five Thousand Dollars ($5,000.00); to issue interpretive rulings or other rules and regulations as it deems necessary to give force and effect to the purpose and intention of this agreement; to investigate all grievances and disputes submitted to it, including audits of records; to recommend amendments to or changes in the agreement but only upon the written request of both parties; to appoint such persons or committees as necessary to aid the Board in the performance of its duties; and to demand of those who repeatedly violate this agreement the posting of a cash or surety bond to assure future compliance.

17.4  All grievances and disputes shall be submitted in writing to the chairman and co-chairman.

17.5  If all facilities to resolve disputes over the interpretation of the terms or conditions of an existing agreement have failed of settlement, both parties agree before strike or lockout, or the resort to proceedings before the National Labor Relations Board, State Government Boards or the courts, to submit the dispute to the Joint National Trade Board for binding decision. The Joint National Trade Board is hereby authorized and empowered to delegate any question or issue submitted, to a committee of two (2), one (1) of whom shall be appointed by each of the respective presidents of the IUPAT and the National Trade organization of the affected coalition member for the purpose of investigation, making recommendations to the Board, or, in fact, resolving or determining the particular issue, which determination shall be binding with the same force and effect as though rendered by the Board itself.

17.6  The remedies and sanctions specified in this section are in addi-



The Employer shall give notice of the existence of this Agreement and this provision to any purchaser, transferee, lessee, assignee, etc., of the business and operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy of said notice forwarded to the Union, at the time the seller, transferor, or lessor executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, not including financial details.

In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the Union, and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, transferee, or lessee has agreed in writing to assume to obligations of this Agreement. Retail establishments are exempt herefrom.

## ARTICLE 19
## GENERAL SAVINGS CLAUSE

If any article or section of this Agreement should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

In the event that any article or Section is held invalid or enforcement of or compliance with any article or section has been restrained, as above set forth, the affected parties shall meet at the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such article or section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement within sixty (60) days after beginning of the period of invalidity or restraint, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provision in this agreement to the contrary.

## ARTICLE 20
## DURATION CLAUSE

20.1    Previously negotiated existing agreement shall remain in full force and effect until and including April 30, 2000. Thereafter said Agreement shall be null and void.

09/14/2006    07:55    6096530795 → 12023936475                    NO.002    D01

THE PARTIES HERETO ARE DESIROUS OF ENTERING INTO AN AGREEMENT TO SET FORTH CONTROL AND REGULATE THE WAGES, HOURS, FRINGE BENEFITS, TERMS AND CONDITIONS OF EMPLOYMENT UNDER WHICH THE EMPLOYERS WILL EMPLOY PAINTERS, TAPERS, GLAZIERS AND ALLIED TRADES. EFFECTIVE MAY 1, 2000 THROUGH APRIL 30, 2006.

AT THE COMMENCEMENT OF EACH CONTRACT YEAR OR UPON BEGINNING OF WORK WITHIN THE TERRITORY DURING EACH CONTRACT YEAR, EACH EMPLOYER SHALL PAY THE JOINT TRADE BOARD THE SUM OF FIFTY DOLLARS ($50.00) (SEE ARTICLE 17.9).

➤ ONE TIME JOB AGREEMENT ONLY. (Steen School, Bogota)

BUSINESS NAME  Urban Enterprises Inc.

BUSINESS ADDRESS  200 Mountain Avenue
                  Middlesex, NJ 08846

PHONE # 732-356-0543        FAX # 732-356-8396

FEDERAL ID #  22-1762335

WORKMEN COMPENSATION INS. CO.  W08411104

UNEMPLOYMENT COMPENSATION  191069

TEMPORARY DISABILITY BENEFITS INS. _____

SIGNED THIS  31st  DAY OF August  20 04

EMPLOYERS SIGNATURE & POSITION _____ President

FOR THE UNION _____
PATRICK J. BRENNAN, BUSINESS MANAGER OF DISTRICT COUNCIL 711

DISTRICT COUNCIL 711
INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES
STATE OF NEW JERSEY

UNION COPY

37

*(handwritten notes in right margin):*
2/14/06
Per Scott
Connollo of
DC 711

← Gennaro (Gary)
  Russo

or

Betty
Russo

Signed
this

**LOCAL UNION** DC711

**DATES** 5/1/00   4/30/06

**PENISON PAGES** 12, 18, 19, 20, 26, 32, 33

5/1/00 Pen $3.00 Ann 12%   5/1/01 Pen $3.30 Ann 12%
5/1/02 Pen $3.60 Ann 12%   5/1/03 Pen $3.90 Ann 12%

**RATES** 5/1/04 Pen $4.20 Ann 12%

5/1/05 Pen $4.50 Ann 12%

**MODEL CLAUSE** ✓

50% JC ✓ SC ✓

no pen 1st yr Appr6



PTNTR Urban
27916. cba

EXHIBIT
2

DC0711 LOCAL INFORMATION

LOCATION : PLEASANTVILLE NJ/PTG CONTR  CONSTRUCTION

```
STATUS          : A          RPTDUE DAY   : 00     REGION     : 2  ADM:
AGREEMENT DATE : 19960501     MODEL      CL: Y     COUNTRY    : U
AGREEMENT EXP  : 20010430     ROLLOVER   CL: N      BENEFIT LV : M
PARTICIPATION  : 19670601     SUBCONTR   CL: N      RFORMS     : NO ENVELOPES
MERGER DATE    : 19950501     OUTOF AREA CL: N      STAT EFFEC : 00000000
```

MESSAGES: BEFORE 5/1/00 GRANDFATHER RATES   PEN $.25  ANN $.57
          1ST YR APPRS NO PEN OR ANN (D RATE PEN $.30 ANN $.30 EFF 5/00
          2ND YR APPRS PEN $.50    ANN 4% GROSS   PEN $1.14
          3RD YR APPRS PEN $1.00   ANN 8% GROSS   PEN $2.28

| | PEN.<br>TYPE | PENSION<br>RATE | ANN.<br>TYPE | ANNUITY<br>RATE | TOTAL<br>RATE | PCENT<br>% | BEG. DATE | END DATE |
|---|---|---|---|---|---|---|---|---|
| CURRENT | H | 03.00 | P | 12.00 | 03.00 | 00.00 | 2000/05/01 | 2010/12/31 |
| HISTORY | H | 02.50 | P | 12.00 | 02.50 | 00.00 | 1997/05/01 | 2000/04/30 |
| HISTORY | H | 02.50 | P | 07.50 | 02.50 | 00.00 | 1996/05/01 | 1997/04/30 |

## TABLE OF CONTENTS

**Article**                                                                     **Page**

1    Recognition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

2    Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

3    Union Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

4    Administrative Dues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

5    Exclusive Hiring Hall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

6    Wages and Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

7    Hours & Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

8    Contractual Relations and Obligations . . . . . . . . . . . . . . . . . . . . . .  28

9    Working Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

10    Fringe Benefit Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

11    Cooperation and Advancement Funds . . . . . . . . . . . . . . . . . . . . . .  33

12    Political Action Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

13    Joint Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

14    Union Representatives and Shop Stewards . . . . . . . . . . . . . . . . . . .  35

16    Preservation of Work Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

17    Joint Trade Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

18    Successor Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

19    General Savings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

20    Duration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40



(A) Employ not less than 50% of the employed on such work from the residents of the area where they work is performed or from among the persons who are employed the greater percentage of their time in such area; any others shall be employed from the contractor's home area.

(B) Comply with all lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits, and procedure for settlement of grievances; provided, however, employees brought into an outside jurisdiction by employers shall be entitled to receive the wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees.

1.8   An employer shall not engage in work covered by the agreement through the use of device of another business or corporation which such an employer owns or controls through the use or device of a joint venture with another employer or contractor without first consulting with the Union to establish to the Union's satisfaction that the use of such device is not for the purpose of taking advantage of lower wages or conditions in effect in the area where said device is sought to be used. If the Union is not so satisfied, it may resort to all legal or economic recourse, including cancellation of this agreement with said employer, not withstanding any other provision of this agreement.

1.9   An employer from another territorial jurisdiction who has work to be performed in the territory of District Council 711 and seeks persons to perform the work, shall employ persons from the registration list in the ratio of one (1) person from said list to one (1) person from other sources.

1.10  Employees covered by this agreement have the right to respect any legal picket line validly established by a bona fide labor organization; the Union has the right to withdraw employees subject to this agreement if the employer is involved in a legitimate primary labor dispute with a bona fide labor organization.

(A) It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, if any employee refuses to perform any service which his or her employer undertakes to perform for an employer or person whose employees are on strike, and which service, but for such strike, would be performed by the employees of the employer or person on strike.

2

3. The application of relief, stucco, plaster or decorative work shall not be considered paperhangers' work exclusively.

(C) All persons engaged in applying or removing paints, pigments, extenders, metal primers and metal pigments, clear pigments, binders, thinners and dryers, primers and sealers, oil paints and enamels, chemical and epoxy coatings, water colors and emulsions clear coatings, waxes, stains, mastics, cement enamels and other special coatings, plastics, adhesives, coating and sheet rubber and other linings, oils, varnishers, water colors, wall paper, wall coverings, decorative textures on all surfaces, foams, seamless and tile-like coatings or other materials used in the various branches of the trade, and the cleaning and beaching of all interior, and exterior walls and surfaces with liquid steam, sandblast, waterblast or any other process.

(D) Glaziers, Architectural Metal and Glass Workers: General Glazing will include, but not be limited to: (1) the installation, setting, cutting, preparing, fabricating, distributing, handling or removal of the following: art glass, prism glass, beveled glass, leaded glass, automotive glass, protection glass, plate glass, window glass, colored glass, figured glass, vitrolite glass, carrara glass, all types of opaque glass, glass chalk boards, structural glass, curtainwall systems, louvers, tempered and laminated glass, thiokol, neoprene, all types of insulating glass units, all plastics or other similar materials when used in place of glass to be set or glazed in its final resting place with or without putty, vinyl, molding, rubber, lead, sealants, silicone and all types of mastics in wood, iron, aluminum, sheet metal or vinyl sash, skylights, doors, frames, stone wall cases, show cases, book cases, sideboards, partitions and fixtures; (2) the installation of the above materials when in the shop or on the job site, either temporary or permanent, on or for any building in the course of repair, removal, alteration, retrofit or construction; (3) the installation and welding of all extruded, rolled or fabricated materials including, but not limited to, all metals, plastics and vinyls, or any materials that replace same, metal and vinyl tubes, mullions, metal facing materials, corrugated flat metals, aluminum panels, muntins, facia, trim moldings, porcelain panels, architectural porcelain, plastic panels, unitized panels, skylights, showcase doors, all handrails and relative materials, including those in any or all types of building related to store front, door/window construction and curtain wall

4



materials of a reflective nature used in the sign field for advertising or decorative purposes.

All operations involving cutting, bending, trimming and adhesion of plastic or other transparent, translucent or any other material used as a sign face background, also porcelain, enamel or force dried object when used for identification or advertising purposes and control of all sign handling, erecting and other necessary operation, pertaining to the same; theatrical and lobby displays, also all sketched whether made by pencil, ink, paints or by coloring material be it on hand or by any other method process.

(G)  Display Convention and Show Decorators:
This jurisdiction includes the installation and removal of all exhibits (floor to ceiling) and related materials in connection with trade shows and conventions, including, but not limited to: trade shows and convention booth assembly and disassembly; installation, removal, disassembly, and recrating of all commercial exhibits.

The construction, preparation, erection, and maintenance of all signs, lettering, pictorial work, screen process work, show card writing, commercial exhibits and fabrication of advertising displays and pattern and sketch making, scale model making, the preparation training aids and mockups and application of plastic, scotchlite and similar reflective materials.

(H)  Scenic Artists:
Scenic Artists' work shall consist of models, sketches, carpenter drawings, painting for theatrical productions, motion picture settings and all the various effects; the painting of properties and decorations which may be used to decorate the stage and motion picture settings, mural paintings, display creations and the art of makeup and all its various effects.

(I)  Tools and Equipment:
The operation of all tools, equipment and machinery used by all trades coming under our Union's jurisdiction including brushes, rollers, spray painting equipment, miscellaneous hand and power driven tools including sandblasting equipment, ladders, scaffolding and other rigging, the operations and maintenance of all types of compressors and hi-reaches.

(J)  The forgoing is not all-inclusive, and may be enlarged or otherwise changed by action of the General Executive Board in a manner not inconsistent with the express provisions of The Constitution of the Union and upon approval by the Coalition.

6

crimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, or regulations, bylaws, constitutional provisions, or any other aspect or obligation of the Union membership policies or requirements. All such selection and referral shall be in accordance with the following procedure.

5.1   The Union shall establish and maintain an open and non-discriminatory referral system for the employment of journeymen and apprentice painters, tapers and glaziers.

5.2   The employer shall, upon requesting referral of job applicants, specify the following to the Union:

    (A)   Number of persons required

    (B)   Work or project location

    (C)   Type of work

    (D)   Individuals requested by name

    (E)   Specialty involved

    (F)   Any information to assist with proper referrals

5.3   The Union shall refer workers to the employer in the following manner and order:

    (A)   If available, specifically requested individuals previously employed by said employer may be recalled for a period of twelve (12) months from date of layoff.

    (B)   Those available whose names are entered on a seniority list, specialties included, posted and maintained by the Union.

5.4   The employer shall have entire freedom of selectivity in hiring and may reject, layoff or terminate any person referred to it by the Union.

    (A)   In the event the Union is unable to furnish qualified persons for employment, the employer may procure them from any other source or sources.

5.5   The selection of applicants for referrals shall be on a non-discriminatory basis. Seniority shall be based upon the length of employment in the

8

## ARTICLE 6
## WAGES & SCHEDULES

6.1   Classification of Painters/Tapers Work:

(A)   New Construction of all kinds, except as described in (c).

(B)   Repainting, paperhanging work and preparation therefore on jobs where no major alterations occur, and where there are not more than three (3) other Union trades other than painters and allied trades present on that job, but excluding bridges, stacks, elevated tanks, and generating stations.

(C)   Painting/Taping of residences and apartment buildings up to three (3) stories in height.

In the event of a dispute, the Joint Trade Board shall determine the classification of the specific project.

6.2   Spraying, sandblasting, pneumatic and powertool (over 115V), work on tanks, stacks, open structural steel, cables, swing scaffolds, and exterior work over three (3) stories; work above thirty (30) feet from pole trucks, scissor lifts or other lifting devices shall be at the listed wage rates.

6.3   Glaziers Installation (Rack) Schedule:

(A)   One (1) man for door lights and similar sizes up to 42" x 84". Over this size shall be two (2) men.

(B)   This does not apply to steel or work sash of typical sizes and may be adjusted on prevailing rate projects.

(C)   On all plate glass:
Glass up to 170 united inches ....................................Two    Men
Glass from 171 united inches to 191 united inches ......Three   Men
Glass from 191 united inches to 221 united inches ......Four    Men
Glass from 221 united inches to 240 united inches ......Five    Men
Glass from 240 united inches to 250 united inches ......Six     Men
Glass from 250 united inches to 260 united inches ......Seven   Men
Glass from 260 united inches to 272 united inches ......Eight   Men
Glass from 272 united inches to 284 united inches ......Nine    Men
Glass from 284 united inches to 290 united inches ......Ten     Men
Glass from 290 united inches to 305 united inches ......Eleven  Men
Glass from 305 united inches to 312 united inches ......Twelve  Men

6.4   Painters, Glaziers & Tapers wage rates are as indicated on the following charts:

## PAINTERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | $31.00 | $33.85 | $35.70 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | $31.95 | $35.40 | $36.95 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | $32.80 | $36.20 | $37.85 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | $33.65 | $37.05 | $38.75 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | $34.45 | $37.90 | $39.65 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | $35.25 | $38.80 | $40.55 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

Abbreviations:
J-Journeyman Painter   F-Foreman Painter   GF-General Foreman   Jsp-Journeyman Spray   Fsp-Foreman Spray
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

Painters repaint
Wage for work classification B, as described: Repainting, paperhanging work and preparation therefore on jobs where no major alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding bridges, stacks, elevated tanks, and generating stations.

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF | N-App | IAF | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | $24.20 | $26.80 | $27.80 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | $24.75 | $27.20 | $28.45 | .14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

continued

12

# TAPERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:

J-Journeyman Painter    F-Foreman Painter    GF-General Foreman

H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

Tapers

Wage for work classification B, as described: Taping and preparation on jobs where no major alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding generating stations.

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $23.00 | $25.30 | $26.45 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $23.50 | $25.85 | $27.05 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $24.00 | $26.40 | $27.60 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $24.55 | $27.00 | $28.25 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

14



continued

## GLAZIER

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF $ | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $30.00 | — | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $29.20 | $30.70 | — | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $31.40 | — | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $32.10 | — | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $33.05 | $34.05 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $34.05 | $35.05 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
J-Journeyman Painter   F-Foreman Painter   GF-General Foreman
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

## INDUSTRIAL WORKERS



| Effective From | Wage | H&W % | Pension $ | App. % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $10.20 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $10.60 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $11.00 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $11.40 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $11.80 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $12.20 | 20 | $1.25 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

16



| Painter | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Spray, Stack, Tank, Swing | $31.00 | $31.95 | $32.90 | $33.65 | $34.45 | $35.25 |
| Foreman Spray, Tank Swing, Stack | $33.85 | $35.40 | $36.20 | $37.15 | $37.90 | $38.00 |
| Gen. Foreman Spray, Tank Swing, Stack | $35.70 | $36.95 | $37.85 | $38.75 | $39.65 | $40.55 |
| Annuity | 12% Gross ($3.42) | 12% Gross ($3.51) | 12% Gross ($3.60) | 12% Gross ($3.69) | 12% Gross ($3.78) | 12% Gross ($3.87) |
| Health & Welfare | 14% Gross (#3.99) | 14% Gross ($4.095) | 14% Gross ($4.20) | 14% Gross ($4.305) | 14% Gross ($4.41) | 14% Gross ($4.515) |
| Education And Training | 1% Gross (.285) | 1% Gross (.29) | 1% Gross (.30) | 1% Gross (.31) | 1% Gross (.315) | 1% Gross (.32) |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.30 | $40.48 | $41.675 | $42.86 | $44.055 | $45.308 |

18



| C-Rate Painter | 5/01/00 | 5/01/01 | 5/01/02 | 5/01/03 | 5/01/04 | 5/01/05 |
|---|---|---|---|---|---|---|
| Journeyman | $18.00 | $18.60 | $19.20 | $19.80 | $20.40 | $21.45 |
| Foreman | $19.80 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| General Foreman | $20.70 | $21.40 | $22.10 | $22.80 | $23.50 | $24.70 |
| Spray | $19.60 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| Foreman Spray | $21.50 | $22.45 | $23.25 | $23.85 | $24.70 | $25.95 |
| General Foreman Spray | $22.55 | $23.45 | $24.30 | $25.05 | $25.80 | $27.15 |
| Annuity | 12% | 12% | 12% | 12% | 12% | 12% |
| Health & Welfare | 14% | 14% | 14% | 14% | 14% | 14% |
| Education & Training | 1% | 1% | 1% | 1% | 1% | 1% |
| Pension | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $25.46 | $26.22 | $26.98 | $27.746 | $28.508 | $29.84 |

20