**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 39**

the Participant would have reached his or her Required Beginning Date. The amount payable at that time shall be determined as described above, except that the benefit shall be paid in accordance with the terms of the Plan in effect when the Participant last worked in Covered Employment as if the Participant had retired with a Husband-and-Wife Pension on the day before the Surviving Spouse's Annuity Starting Date and died the next day.

(e)  A Surviving Spouse who is the Beneficiary of a Participant who died prior to age 55 may elect to receive in lieu of the Pre-Retirement Surviving Spouse Pension either (1) or (2) below, whichever applies.

  (1)    If the single sum Actuarial Equivalent of the Pre-Retirement Surviving Spouse Pension is greater that the total of Employer contributes made for work by a Participant plus $10,000, the surviving Spouse will receive a single sum payment of the total Employer contributions plus a residual monthly benefit that is the Actuarial Equivalent of the remaining value of the Pre-retirement Surviving Spouse Pension (the total Actuarial Equivalent value less the amount of the Employer contributions refunded).

  (2)    If the single sum Actuarial Equivalent of the Pre-retirement Surviving Spouse Pension is less than the total of Employer contributions made for work by a Participant plus $10,000, the surviving Spo9use will receive a single sum payment of the Actuarial Equivalent of the Pre-retirement Surviving Spouse Pension.

*Section 7.11    Qualified Domestic Relations Orders*

(a)  Benefits shall be paid in accordance with a Qualified Domestic Relations Order and procedures adopted by the Trustees which shall be binding on all Pensioners, Beneficiaries and other parties.

(b)  Any rights of a former Spouse or other Alternate Payee under a Qualified Domestic Relations Order shall take precedence over those of any later Spouse of the Participant under this Article.

(c)  In no event shall the existence or enforcement of a Qualified Domestic Relations Order cause the Plan to pay benefits with respect to a Pensioner more than the Actuarial Equivalent of the Pensioner's benefits without regard to the Qualified Domestic Relations Order.

(d)  Benefits otherwise payable under the Plan shall be reduced by the Actuarial Equivalent of any payment ordered to be made under a Qualified Domestic Relations Order.

*Section 7.12    Qualified Domestic Relations Order Procedures*

(a)  Absent other written procedures adopted by the Trustees, the Plan will treat a Domestic Relations Order as a claim for benefits under the Plan with the following special rules, absent other or alternative rules and procedures approved by the Trustees.

(1)    The Participant and any earlier Alternate Payee will be notified of the receipt of a Domestic Relations Order and the procedures of the Plan for determining the qualified status of the Domestic Relations Order.

(2)    Within a reasonable period after receipt of the Domestic Relations Order, the Plan will determine whether the Domestic Relations Order is a Qualified Domestic Relations Order and notify the Participant and each Alternate Payee of its determination.

(3)    The Plan will separately account for the amount payable to the Alternate Payee under the Domestic Relations Order until a final determination of the qualified status of the Domestic Relations Order by the Plan, an appeal to the Trustees or a court of competent jurisdiction.

(4)    The Plan will pay the segregated amount to the Alternate Payee under the Domestic Relations Order on a final determination that the Domestic Relations Order is a Qualified Domestic Relations Order within eighteen months after the first payment to an Alternate Payee would be required under the Domestic Relations Order. The segregated amount will be paid to the Participant or Alternate Payee otherwise entitled to all or a portion of the segregated amount in the absence of a final determination of the qualified status of the Domestic Relations Order by that date.

(5)    The Plan will pay all monthly benefits that become due after a final determination that a Domestic Relations Order is a Qualified Domestic Relations Order in accordance with the Qualified Domestic Relations Order. It may adjust payments to assure that total payments do not exceed the Actuarial Equivalent of the Accrued Benefit of a Participant.

*Section 7.13    Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit Payment for Unmarried Participants*

The Guaranteed Five-Year Pension is payable where the Husband-and-Wife Pension is not applicable or the Participant and Spouse waive the Husband-and-Wife Pension. Under this form of payment, the Participant is to receive the monthly benefit provided under the Plan upon retirement for the remainder of his or her life. The amount of this pension will be the monthly benefit to which the individual is entitled under the provisions of the Plan. If the Participant dies before receiving 60 monthly payments, the benefit will continue to be paid to the Participant's Beneficiary until a total of 60 payments have been paid to the Participant and Beneficiary.

*Section 7.14    Pre-Retirement Death Benefit - Eligibility*

(a) <u>General Rule</u>. A death benefit equal to 50% of the Employer contributions made for work by a Participant shall be paid to his or her designated Beneficiary in the event:

(1)    a Participant dies before his or her Annuity Starting Date; and

## IUPAT INDUSTRY PENSION PLAN                                              PAGE 41

(2)    after he or she has accrued 9,000 Benefit Hours during the Contribution Period.

(b) No death benefit shall be payable if the Beneficiary is the Participant's surviving Spouse who is entitled to a Pre-retirement Surviving Spouse Pension unless the Surviving Spouse elects to waive all or part of the Pre-retirement Surviving Spouse Pension in favor of the Pre-retirement Death Benefit.

(c) <u>Loss of Entitlement to Death Benefit</u>. Effective January 1, 1990, if an Employee or Participant or former Employee or Participant performs at least one hour of Noncovered Employment, no Pre-Retirement Death Benefit shall thereafter be payable.

*Section 7.15    Post-Retirement Death Benefit – Amount*

There are no death benefits payable on the death of a Participant subsequent to his or her retirement other than those payable in connection with the form of payment elected on the Participant's Annuity Starting Date.

*Section 7.16    Beneficiary*

(a) The beneficiary of a Pensioner or a Participant is a person, estate, trust or other eligible organization under the IRC (other than a Spouse, as such) who is designated by a Participant or Pensioner or entitled to receive death benefits under the Plan as a default beneficiary under this section. All death benefits under the Plan shall be paid to a beneficiary who survives the Participant or Pensioner and, absent spousal waiver, Spouse by at least sixty (60) days. No benefits are payable to a beneficiary who is found criminally responsible for the death of a Participant or Pensioner nor in the absence of a surviving beneficiary.

(b) A Participant or Pensioner may designate a Beneficiary to receive the death benefits, if any, provided under the Plan  by forwarding such designation in a form acceptable to the Trustees, to the Plan office. A Participant or Pensioner shall have the right to change the designation of Beneficiary without the consent of the Beneficiary (except where the consent of the Spouse is required), but no change shall be effective or binding on the Trustees unless it is received by the Plan office prior to the time any payments are made to the Beneficiary whose designation is on file with the Plan Office. A divorce or legal separation from a participant or Pensioner shall automatically revoke any designation of a spouse as beneficiary, unless continued by a new designation after the divorce or legal separation or a Qualified Domestic Relations Order.

(c) If no designated Beneficiary survives to receive benefits on the death of a Participant before retirement or one or more payments payable to a beneficiary after the death of a Pensioner, the single-sum value of such payments will be payable to the default beneficiary of the Participant or Pensioner.

(d) The default beneficiary of a Participant or Pensioner is his surviving spouse, dependent child, dependent parent, other dependent, other child or other parent or the residuary heirs under a valid will or the intestate laws of District of Columbia, as classes in that order and without need for probate. Multiple beneficiaries in a class will share equally.

(e) The Trustees may provide that any amount otherwise payable to a default beneficiary of a Participant or Pensioner (other than a spouse or dependent of the Participant or Pensioner) will instead be paid to a person who incurred expenses in connection with the care or last illness or burial of the Participant or Pensioner.

*Section 7.17     Retirement and Suspension of Benefits Before Normal Retirement Age*

(a) To be considered retired and be entitled to payment for a month, a Participant may not be employed before he or she has attained Normal Retirement Age in:

    (1)    employment with any Contributing Employer or Affiliated Employer;

    (2)    employment with any Contributing Employer or Affiliated Employer in the same or related business as any Contributing Employer or Affiliated Employer;

    (3)    self-employment in the same or related business as any Contributing Employer or Affiliated Employer; or

    (4)    employment or self-employment in any business which is or may be under the jurisdiction of the Union;

    (5)    employment with any labor organization or any of its affiliated entities, including, but not limited to, employee benefit funds, committees or other related organizations;

    (6)    employment, including self-employment, in any Non-Covered Employment; or

    (7)    any employment, including self-employment, of any kind or nature in the Painters and Allied Trades Industry.

(b) A Pensioner who works in a manner inconsistent with the requirements of this sections shall not be entitled to pension benefits for any calendar months with such work, after which period the Pensioner shall again be entitled to benefits.

(c) A Husband-and-Wife Pension in effect immediately prior to suspension of benefits and any other benefit following the death of the Pensioner shall remain effective if the Pensioner's death occurs while his benefits are in suspension.

*Section 7.18     Pensioner Reporting of Work Before Normal Retirement Age*

(a) A Pensioner shall notify the Trustees in writing within 21 days after taking any work in Industry Service or Noncovered Employment without regard to the number of hours of such work.

(b) A Pensioner who fails to give written notice within the 21-day period shall be disqualified for benefits for an additional period of six months, over and above the period in which he or she

worked in Industry Service and any disqualification period for Noncovered Employment, on renewed Retirement.

*Section 7.19    Resumed Benefits Before Normal Retirement Age – Eligibility*

A Pensioner whose pension has been suspended before Normal Retirement Age shall notify the Plan when employment in Industry Service has ended.

*Section 7.20    Resumed Benefits Before Normal Retirement Age - Amount*

(a)  If a Pensioner has not attained Normal Retirement Age upon resumed Retirement and the end of the first month for which payment is resumed, his or her resumed pension shall be calculated under this section.

(b)  The pension amount shall be recomputed, based on any additional Hours of Service, Benefit Hours and Employer contributions..

(c)  The amount shall be determined as if it were then being determined for the first time, but on the basis of an adjusted age.

(d)  The adjusted age shall be the age of the Pensioner at the beginning of the first month for which payment is resumed, reduced (but not below the age at his or her initial Annuity Starting Date) by:

    (1)    the months for which he previously received benefits to which he was entitled, and

    (2)    the months for which his benefits were suspended for work (other than Covered Employment reported as required to the Trustees) if that work was Disqualifying Employment and would allow suspension of benefits if he or she had already attained Normal Retirement Age.

(e)  A Participant who retires before his or her Normal Retirement Age and then earns additional benefit accruals under the Plan through reemployment will have a separate Annuity Starting Date determined under this section with respect to those additional accruals. The benefits earned during reemployment, subsequent to retirement prior to Normal Retirement Age, shall be paid as a Husband-and-Wife Pension, if applicable, as of the new Annuity Starting Date, or, if that form is properly rejected, any other payment form available to the Participant under the Plan. The amount determined under the foregoing subsections shall be adjusted for the Husband-and-Wife Pension or any other Optional Form in which the benefits of the Pensioner, Spouse or beneficiary are payable.

(f)  Suspension of benefits for a month means non-entitlement to benefits for the month. If benefits were paid for a month for which benefits were later determined to be suspended, the overpayment shall be recoverable through deductions from future pension payments. If a

**IUPAT INDUSTRY PENSION PLAN**                        **PAGE 44**

Pensioner dies before recoupment of overpayments has been completed, deductions shall be made from the benefits payable to his or her Spouse or Beneficiary.

(g) Nothing in this Section or other Plan provisions shall be understood to extend any benefit increase or adjustment effective after the Pensioner's initial Annuity Starting Date to the amount of pension, except to the extent that it may be expressly directed by other provisions of the Plan or be required by applicable law.

*Section 7.21    Suspension of Benefits after Normal Retirement Age*

(a) After Normal Retirement Age, the monthly benefit shall be suspended for any month in which a Participant worked or was paid for at least 40 Hours of Service in Disqualifying Employment.

(b) No benefits will be suspended for work after the Pensioner's Required Beginning Date before January 1, 1997.

(c) A Husband-and-Wife Pension in effect immediately prior to suspension of benefits and any other benefit following the death of the Pensioner shall remain effective if the Pensioner's death occurs while his benefits are in suspension.

(d) After attainment of Normal Retirement Age, "disqualifying employment," means employment or self employment that is:

    (1)    in an industry covered by the Plan on the Pensioner's Annuity Starting Date;

    (2)    in the geographic area covered by the Plan on the Pensioner's Annuity Starting Date; and

    (3)    in any occupation in which the Pensioner worked under the Plan at any time or any occupation covered by the Plan on the Pensioner's Annuity Starting Date or another occupation which involves skills used or learned in Covered Employment or selling, retailing, managerial, clerical, professional occupations, or supervisory activities relating to such skills.

    (4)    If a Pensioner worked in Covered Employment only in a skilled trade or craft, that is, as a painter, glazier, architectural metal and glass worker, paint maker, resilient floors and decorative coverings worker, sign and display painter, scenic artist, decorator, paperhanger, hardwood finisher, grainier, varnisher, enameler, glider, drywall finisher and related jobs, positions and classifications, such employment in Covered Employment shall be disqualifying only if it is in work that involves the skill or skills of that trade or craft directly or, as in the case of supervisory work, indirectly. Any work outside Covered Employment shall be disqualified without regard to the specific skill or trade involved.

(5)    However, in any event, any work for at least 40 Hours of Service in a month for which contributions are required to be made to the Plan shall be disqualifying.

(e) The 'industry covered by the Plan,' means painting, glazing, architectural metal and glass, paint making, resident floors and decorative coverings, sign and display, scenic artists, decorating, paper hanging, hardwood finishing, related industries, and any industry in which Employees covered by the Plan were employed when the Pensioner's pension began or, but for suspension, would have begun.

(f) The geographic area covered by the Plan is the United States and Canada and any other area covered by the Plan when the Pensioner's pension began or, but for suspension under this Article, would have begun at his or her Normal Retirement Date.

(g) If a Pensioner re-enters Covered Employment to an extent sufficient to cause a suspension of benefits, and pension payments are subsequently resumed, the industry and area covered by the Plan "when the Pensioner's pension began" shall be the industry and area covered by the Plan when his or her pension was resumed.

*Section 7.22    Plan Disclosure of Suspension Rules*

(a) Upon commencement of pension payments or attainment of Normal Retirement Age, the Trustees shall notify a Participant of the Plan rules governing suspension of benefits including the identity of the industries and area covered by the Plan. If benefits have been suspended and payment resumed, new notification shall, upon resumption, be given to the Participant if there has been any material change in the suspension rules of the identity of the industries or area covered by the Plan. A reference to the Plan's summary plan description may satisfy this requirement as long as the summary plan description is available or made available to the Participant.

(b) The Trustees shall inform all Participants over Normal Retirement Age at least once every 12 months of the reemployment notification requirements and the presumptions relating to work that is not reported to the Plan.

*Section 7.23    Pensioner Reporting of Work after Normal Retirement Age*

(a) The Pensioner shall notify the Plan in writing within 21 days after starting any work of any type that is or may be work that allows a suspension of benefits under the Plan without regard to the number of Hours of Service of such work.

(b) If a Pensioner has worked in Disqualifying Employment in any month and has failed to give timely notice to the Plan of such employment, the Trustees shall presume that the Pensioner worked for at least 40 Hours of Service in Disqualifying Employment in such month and any subsequent month.

(c) If a Pensioner has worked in Disqualifying Employment for any number of Hours of Service for a contractor at a building or construction site and has failed to give timely notice to the Plan

of such employment, the Trustees shall presume that the Pensioner has engaged in Disqualifying Employment for as long as the contractor has been and remains actively engaged at that site.

(d) The Pensioner shall have the right to overcome such presumption by establishing that the work was not in fact an appropriate basis, under the Plan, for suspension of benefits.

*Section 7.24    Advance Determinations of Suspendible Work*

A Participant may ask the Plan whether a particular employment will result in suspension of benefits. The Plan shall provide the Pensioner with its determination with the same right of review as on a benefit claim determination.

*Section 7.25    Plan Notice of Suspension after Normal Retirement Age*

(a) A Normal Retirement Pension payment will not be suspended due to Disqualifying Employment unless the Plan notifies the Participant of the suspension during the first month in which the Plan withholds payment by personal delivery or first class mail. The notification must explain the specific reasons for the suspension, the Plan provisions relating to the suspension of payments, the procedures for review of the suspension of benefits as a denied claim for benefits, the procedures to apply for resumption of benefits on renewed retirement and, as soon as practicable, the periods of Disqualifying Employment and amount and procedure for recovery of any overpayments against future benefits and include a copy of relevant Plan provisions and reference to 29 C.F.R. §2530.203-3.

(b) The Plan shall inform a Pensioner of any suspension of benefits after Normal Retirement Age by notice given by personal delivery or first class mail during the first month in which benefits are withheld.

(c) The notice shall include a description of the specific reasons for the suspension, a copy of the relevant provisions of the Plan, a reference to the applicable regulation of the U.S. Department of Labor, and a statement of the procedure for securing a review of the suspension. In addition, the notice shall describe the procedure for the Pensioner to notify the Plan when his disqualifying employment ends. If the Plan intends to recover prior overpayments by offset against future benefits, the suspension notice shall explain the offset procedure and identify the amount expected to be recovered and the periods of employment to which they relate.

(d) A Pensioner shall be entitled to a review of determination suspending his benefits by written request filed with the Trustees in the same fashion as a denial of a claim for benefits.

*Section 7.26    Resumption of Benefit Payments after Normal Retirement Age - Eligibility*

A Pensioner whose pension has been suspended shall notify the Plan in writing when Disqualifying Employment has ended. The Trustees shall have the right to hold back benefit payments until such notice is filed with the Plan.

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 47**

*Section 7.27    Resumption of Benefit Payments after Normal Retirement Age – Amount*

(a) If, upon resumption (the end of the first month for which payment is resumed) the Pensioner had attained Normal Retirement Age, his pension amount shall be recomputed based on additional Hours of Service, Benefit Hours or Employer contributions as if it were then being determined for the first time, but on the basis of an adjusted age under this section. Nothing in this section or other Plan provisions shall be understood to extend any benefit increase or adjustment effective after the Pensioner's initial Annuity Starting Date to the amount of pension, except to the extent that it may be expressly directed by other provisions of the Plan or be required by applicable law.

(b) The adjusted age shall be the age of the Pensioner at the beginning of the first month for which payment is resumed, reduced by:

    (1)    the months for which he or she previously received benefits to which he or she was entitled, and

    (2)    the months for which his benefits were suspended for work (other than Covered Employment reported as required to the Trustees) if that work was Disqualifying Employment and would allow suspension after Normal Retirement Age.

    (3)    If following resumption, benefits are payable to the Pensioner for months for which payment would have been suspended before Normal Retirement Age in addition to the months of Disqualifying Employment, but payment was not suspended because he or she had attained Normal Retirement Age, the amount of his monthly pension shall be further reduced by 1/2 of 1% multiplied by the number of such months, but not in any event to an extent that would result in forfeiture of the Pensioner's vested pension in violation of ERISA.

    (4)    After January 1, 1997, any benefit that is suspended or delayed in payment past the Pensioner's Required Beginning Date will be increased as provided for the Late Retirement Pension, even with respect to months in which the Pensioner performed 40 Hours of Service in Disqualifying Employment.

(c) If the application is at or after the Participant's Normal Retirement Age, a suspension of benefits or return to Covered Employment on or after Normal Retirement Age shall not change the Annuity Starting Date. The recomputed amount determined shall be adjusted for the Husband-and-Wife Pension or any other optional form of benefit in accordance with which the benefits of the Pensioner and any contingent annuitant or beneficiary are payable. If a Pensioner has returned to Covered Employment, he shall not be entitled to revoke the Husband-and-Wife Pension or to make a new election as to any other Optional Form for new benefit accruals except if, upon such return, he had sufficient Covered Employment to earn at least two (2) consecutive Years of Vesting Service.

(d) Benefits shall be resumed for months after the last month for which benefits were suspended, with payments beginning no later than the third month after the later of the last calendar month

for which the Pensioner's benefit was suspended or the date of the Pensioner's written notice to the Plan of the cessation of Disqualifying Employment.

(e) The initial payment will include the payment scheduled for the month in which payment resumes and any amounts withheld between the cessation of Disqualifying Employment and the resumption of payment less benefits paid for months of suspendible work before the suspension notice. Subsequent payments will equal the regular monthly benefit for the Participant.

(f) Suspension of benefits for a month means non-entitlement to benefits for the month. If benefits were paid for a month for which benefits were later determined to be suspended, the overpayment shall be recoverable through deductions from future pension payments. Overpayments attributable to payments made for any month or months for which the Pensioner had Disqualifying Employment shall be deducted from pension payments otherwise paid or payable subsequent to the period of suspension. A deduction from a monthly benefit for a month after the Pensioner attained Normal Retirement Age shall not exceed 25% of the pension amount (before deduction), except for the first pension payment made upon resumption after a suspension. If a Pensioner dies before recoupment of overpayments has been completed, deductions shall be made from the benefits payable to his Spouse or Beneficiary, subject to the 25% limitation on the rate of deduction.

Section 7.28    Waiver of Suspension

(a) The Trustees may, upon their own motion or on request of a Pensioner, waive suspension of benefits subject to such limitations as the Trustees in their sole discretion may determine, including any limitations based on the Pensioner's previous record of benefit suspensions or non-compliance with reporting requirements under this Article. Such exceptions or waivers may be general or specific and be subject to other limitations such as time frames, geographic or trade-specific factors or any other reasonable rules that the Trustees, in the sole and absolute discretion, may choose to impose.

Section 7.29    Incompetence or Incapacity of a Pensioner or Beneficiary

(a) In the event it is determined to the satisfaction of the Plan Administrator or Trustees that a Pensioner or Beneficiary is unable to care for his or her affairs because of mental or physical incapacity, any payment due may be applied, in the discretion of the Trustees, to the maintenance and support of such Pensioner or Beneficiary by direct payment to the person or organization providing such care in trust for the benefit of the Pensioner or Beneficiary.

(b) Payment shall be made in the manner decided by the Plan Administrator orTrustees, unless, prior to such payment, claim shall have been made for such payment by a legally appointed guardian, committee, or other legal representative appropriate to receive such payments on behalf of the Pensioner or Beneficiary.

Section 7.30    Non-Assignment of Benefits

(a) Benefits under the Plan may not be assigned or alienated except as follows.

**IUPAT INDUSTRY PENSION PLAN**                    **PAGE 49**

(b) Benefits under the Plan will be paid in accordance with a Qualified Domestic Relations Order.

(c) Effective on and after August 5, 1997, the prohibition on assignment and alienation shall not apply to an offset or other recovery by the Plan, pursuant to a criminal conviction, civil judgment, or settlement agreement as provided in IRC 401(a)(13)(C) and (D). Unless prohibited by law, the remedy in IRC 401(a)(13)(C) and (D) shall not preclude any other or greater right of offset or recovery by the Plan allowed by ERISA or its common law.

(d) Notwithstanding the foregoing, an offset under IRC 401(a)(13)(C) against the benefits of a Participant with a Spouse shall be valid only if one of the following conditions is satisfied.

> (1)  a written consent of the Spouse is obtained;
>
> (2)  the Participant's Spouse is required by a judgment, order, decree or agreement to pay the Plan any amount; or
>
> (3)  a judgment, order, decree or agreement provides that the Spouse shall receive a survivor annuity, as required by IRC 401(a)(11), determined as if the Participant terminated employment on the offset date (with no offset to his benefits), to begin on or after Normal Retirement Age, and providing a 50% qualified joint and survivor annuity and a qualified pre-retirement survivor annuity.

*Section 7.31    Payments to Minors*

(a) If benefits from this Plan are payable to a minor, the Plan will pay the benefits due to the minor to a Uniform Trust for Minors Act or similar account, with the person having present custody or care of the minor or another responsible person as custodian of the account, or to the trustee of another a written trust established for the minor's support or education. The Plan Administrator or Trustees shall have the discretion to withhold any payments of benefits and make payment to the minor directly from the Plan only when he or she reaches the age of maturity.

(b) Payment made in the manner set forth in this section shall operate to discharge the Plan and Trustees from any liability to the minor or anyone representing his or her interest.

**ARTICLE 8. OPTIONAL FORMS OF PENSION PAYMENT**

*Section 8.01    General*

(a) Instead of the normal form of pension otherwise payable under the Plan with respect to a Participant, a Participant who is eligible to retire may elect an optional form of payment that is available to the Participant under this article.

(b) The Plan offers the following optional forms of payment.

| | |
|---|---|
| (1) | Joint and 50% Survivor Option |
| (2) | Joint and 75% Survivor Option |
| (3) | Joint and 100% Survivor Option |
| (4) | Husband and Wife Pension with Pop-Up Option |
| (5) | Social Security Level Income Option |
| (6) | Combined Level Income and Joint and Survivor Option |
| (7) | Ten Years Certain Option |
| (8) | Lump-Sum Payment Option |

(c) Unless otherwise specified, all Optional Forms are at least the Actuarial Equivalent of the Participant's Accrued Benefit, including the value of the 60-month guarantee as of the Annuity Starting Date, before any adjustment for a Husband-and-Wife Pension but after adjustment, if any, for early or late retirement.

(d) An election of an Optional Form is irrevocable once the period for waiver of the Husband-and-Wife Pension has passed and the normal form of payment and any related death or surviving spouse benefits are no longer payable. However, a Joint and Survivor Option is automatically revoked if the Participant or Beneficiary dies or they are divorced from each other before a pension becomes payable under the Optional Form.

(e) If a Participant with a Spouse elects an Optional Form (other than a Joint and Survivor option with the Spouse as Beneficiary and no "pop-up" feature), the Participant's Spouse must consent to the election and waive payment of a Husband-And-Wife Pension.
(f) If a Participant with a Spouse designates a Beneficiary (other than his or her Spouse) to receive payment under a Joint and Survivor Option, the Participant's Spouse must consent to the Beneficiary designation.

(g) An Optional Form shall not be payable if it would result in a monthly benefit of less than $20 to the Pensioner or the Beneficiary.

*Section 8.02    Joint and Survivor Options*

(a) A Participant who is eligible to retire may elect a joint and survivor option that provides the Participant with a reduced monthly benefit, but with 100%, 75%, or 50% of that lower amount continuing after the Participant's death for the lifetime of the Beneficiary.

(b) The adjustment in benefit amount shall be determined by the Participant's age when payment in this optional form is to commence and the age of the Beneficiary as follows.

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 51**

(1)  100% Joint and Survivor. Where 100% of the Pensioner's pension is continued to the Beneficiary and the Participant and the Beneficiary are the same age, the Participant's benefit is reduced to 81 % of the unreduced pension. This amount will increase by 0.7% for each year the Beneficiary is older than the Participant or decrease by 0.7% for each year the Beneficiary is younger than the Participant. The factor will never be greater than 96%.

(2)  75% Joint and Survivor. Where 75% of the Pensioner's pension is continued to the Beneficiary and the Participant and Beneficiary are the same age, the benefit is reduced to 85% of the unreduced pension. This amount will increase by 0.5% for each year the Beneficiary is older than the Participant or decrease by 0.5% for each year the Beneficiary is younger than the Participant. The factor will never be greater than 97%.

(3)  50% Joint and Survivor. Where 50% of the Pensioner's pension is continued to the Beneficiary and the Participant and Beneficiary are the same age, the benefit is reduced to 90% of the unreduced pension. This amount will increase by 0.4% for each year the Beneficiary is older than the Participant or decrease by 0.4% for each year the Beneficiary is younger than the Participant. The factor will never be greater than 99%.

(c) A Participant may, at the time of application for retirement, also elect a "pop-up" option for a joint and survivor option so that the 50%, 75% or 100% joint and survivor pension will revert to the full benefit that would have been payable but for the application of the joint and survivor option in the event that the Beneficiary thereafter predeceases the Participant.

(d) The Participant's pension shall be adjusted further for a "pop-up" option as follows.

(1)  100% Joint and Survivor. The 100% joint and survivor pension shall be reduced by 1.8%. For each full year that the Participant is younger than age 65 at the time of retirement, an additional .10% shall be deducted. For each full year that the Participant is older than age 65 at the time of retirement, .12% will be added.

(2)  75% Joint and Survivor. The 75% joint and survivor pension shall be reduced by 1 .5%. For each full year that the Participant is younger than age 65 at the time of retirement, an additional .08% shall be deducted. For each full year that the Participant is older than age 65 at the time of retirement, .10% will be added.

(3)  50% Joint and Survivor. The 50% joint and survivor pension shall be reduced by 1 %. For each full year that the Participant is younger than age 65 at the time of retirement, an additional .05% shall be deducted. For each full year that the Participant is older than age 65 at the time of retirement, .10% will be added.

**IUPAT INDUSTRY PENSION PLAN**                  **PAGE 52**

Section 8.03    *Social Security (Level Income) Option*

(a) A Participant who is retiring on an Early Retirement Pension may elect to have the pension increased until age 62 or 65, according to the age at which he or she expects to receive Social Security benefits, and reduced thereafter, in order to approximate a pension before age 62 or 65 as nearly equal as possible to the combined retirement income after that age.

(b) The Social Security (Level Income) Option is not available to Disability Pensioners.

(c) The adjustment in benefit amount for payment in this optional form is a monthly pension which is increased until age 62 or until age 65 for each $10 by which the increased pension is reduced thereafter under the following table:

| Pensioner's Age on Annuity Starting Date | Increase for Each $10 Reduction | |
|---|---|---|
| | At Age 62 | At Age 65 |
| 55 | $4.95 | $3.54 |
| 56 | 5.43 | 3.89 |
| 57 | 5.97 | 4.27 |
| 58 | 6.57 | 4.70 |
| 59 | 7.26 | 5.18 |
| 60 | 8.05 | 5.73 |
| 61 | 8.96 | 6.35 |
| 62 | --- | 7.06 |
| 63 | --- | 7.90 |
| 64 | --- | 8.87 |

Section 8.04    *Combined Level Income and Joint and Survivor Option*

(a) A Participant who is retiring on an Early Retirement Pension may elect the Combined Level Income and Joint and Survivor Option. The Combined Level Income and Joint and Survivor Option merges features of the Joint and Survivor Option with the Social Security Level Income Option to provide a level income prior to, and after, a Social Security award is received and also provides a Beneficiary with a 50%, 75% or 100% survivor benefit payment on the death of the Participant.

(b) The actuarial adjustment for the Combined Level Income and Joint and Survivor is done in steps as follows.

    (1)   The first step actuarially reduces the monthly Early Retirement Benefit as provided for a 50%, 75% or 100% Joint and Survivor Option chosen by the Participant.

    (2)   The second step adjusts the reduced Joint and Survivor Benefit as provided for the Social Security Level Income Option.

(c) In the event of the Participant's death, the beneficiary's monthly lifetime benefit is based on the Participant's benefit amount as if the Participant elected a regular Joint and Survivor option without level income. The Beneficiary is entitled to 50%, 75% or 100% of this benefit amount, depending upon the continuation percentage that was chosen by the Participant.

### Section 8.05    Ten Year Certain Option

(a) A Participant who is eligible to retire may elect to receive payment for life in a reduced monthly amount, with the provision that if the Participant dies before receiving 120 monthly payments, payments will be continued to the Beneficiary at the same reduced amount until a total of 120 monthly payments has been paid to the Participant and Beneficiary.

(b) The ten year certain option is not available for Disability Pensioners.

(c) The adjustment in benefit amount for the ten year certain option shall be determined on the basis of the age of the Participant when payment is to commence.

> (1)    Where the Participant is age 65, the benefit is reduced to 94% of the unreduced pension.

> (2)    For each year of age older than 65, the benefit is decreased by 0.9%.

> (3)    For each year of age younger than 65, the benefit is increased by 0.4%. but not to exceed 99.0% of the benefit otherwise payable.

### Section 8.06    Lump Sum Payment Option

(a) A Participant who is eligible to retire may elect to have the amount of the monthly benefit reduced by not more than 10% in return for a lump sum payment on his or her Annuity Starting Date.

(b) The lump sum payment option is subject to the following conditions:

> (1)    The Participant must be eligible to retire on a Normal Retirement Pension, Special Early Retirement Pension or Early Retirement Pension and have elected no other option.

> (2)    The lump sum payable as a result of the election must be not less than $500 and no more than $2,500.

> (3)    The Participant must elect to have the monthly benefit reduced by an even dollar amount which does not exceed 10% of the monthly benefit.

> (4)    This option may not be elected if the Participant elects any other option in this Article

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 54**

(c) If this option is elected, the lump sum payable shall be based upon the Participant's age on the Annuity Starting Date and the amount by which the monthly benefit is reduced shall be determined as follows.

> (1)    For an Annuity Starting Date before January 1, 1999, the lump sum is based on the 1971 Group Annuity Mortality Table (male mortality) and an investment yield of 7.0% per annum. The lump sum payable for each $10 reduction in monthly benefits is as follows:

| Age | Amount | Age | Amount |
|-----|--------|-----|--------|
| 55 | $1,308.76 | 68 | $990.41 |
| 56 | 1,287.35 | 69 | 965.01 |
| 57 | 1,265.26 | 70 | 939.99 |
| 58 | 1,242.46 | 71 | 915.40 |
| 59 | 1,218.98 | 72 | 891.23 |
| 60 | 1,194.91 | 73 | 867.37 |
| 61 | 1,170.33 | 74 | 843.75 |
| 62 | 1,145.29 | 75 | 820.43 |
| 63 | 1,119.84 | 76 | 797.56 |
| 64 | 1,094.05 | 77 | 775.41 |
| 65 | 1,068.05 | 78 | 754.26 |
| 66 | 1,042.01 | 79 | 734.28 |
| 67 | 1,016.08 | 80 | 715.47 |

(d) For an Annuity Starting Date in 1999, the benefit payable under this option shall be determined by using actuarial assumptions specified by PBGC for a mandatory lump sum payment by a terminating single-employer pension plan, except that the interest assumption shall be 7% if that would produce a larger Actuarial Equivalent lump sum . If required by applicable law for an Annuity Starting Date in 1999, the assumptions under IRC 417(e) shall be used if they produce a greater benefit to the Participant.

*Section 8.07    Benefit Payment Restrictions*

(a) Notwithstanding any other provision of the Plan to the contrary, payment of benefits will be made in accordance with IRC 401(a)(9) and applicable regulations These rules are IRC limitations and do not provide optional forms of payment not otherwise provided under the Plan.

> (1)    For purposes of this section, distributions are considered to begin on the Participant's Required Beginning Date, or, if subsection (c)(4) applies, the date distributions are required to begin to the surviving spouse under subsection (c). If annuity payments irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under subsection (c), the date distributions are considered to begin is the date distributions actually commence.

**IUPAT INDUSTRY PENSION PLAN**                                   **PAGE 55**

(2)    The required minimum distribution for the Participant's first Distribution
Calendar Year will be made on or before the Participant's Required
Beginning Date. The required minimum distribution for other Distribution
Calendar Years, including the required minimum distribution for the
Distribution Calendar Year in which the Participant's Required Beginning
Date occurs, will be made on or before December 31 of that Distribution
Calendar Year.

(3)    If the Participant's interest in the Plan is distributed in the form of an
annuity purchased from an insurance company, distributions thereunder
will be made in accordance with the requirements of IRC 401(a)(9) and
the Treasury regulations thereunder. For other form of distribution,
distributions will be made in accordance with subsections (c), (d), (e) and
(f) of this section.

(b) The entire interest of a Participant in the Plan generally will be distributed in the Normal
Form for a married or single Participant beginning not later than the Required Beginning Date
for the Participant.

(c) <u>Death before Retirement</u>. If a Participant dies before distribution of his interest in the Plan
begins, the Participant's entire interest will be distributed, or begin to be distributed, no later than
as provided in this subsection.

(1)    <u>Spouse only</u>. If the participant's surviving spouse is the sole Designated
MRD Beneficiary, distributions to the surviving spouse will begin by
December 31 of the calendar year immediately following the calendar year
in which the Participant died, or by December 31 of the calendar year in
which the participant would have attained age 70 1/2, if later.

(2)    <u>Spouse and other Designated MRD Beneficiary.</u>  If the surviving spouse is
not the sole Designated MRD Beneficiary, distribution to the designated
beneficiaries will begin by December 31 of the calendar year immediately
following the calendar year in which the Participant died.

(3)    <u>No Designated MRD Beneficiary.</u>  If there is no Designated MRD
Beneficiary as of September 30 of the year following the year of the
Participant's death, the Participant's entire interest will be distributed by
December 31 of the calendar year containing the fifth (5th) anniversary of
the Participant's death.

(4)    If the surviving spouse is the sole Designated MRD Beneficiary and the
surviving spouse dies after the Participant but before distributions to the
surviving spouse begin, this subsection, other than section (c)(1), will
apply as if the surviving spouse were the Participant.

**IUPAT INDUSTRY PENSION PLAN**                              **PAGE 56**

(5)    Distribution to a Designated MRD Beneficiary is not required to begin by the date in subsection (c)(2), but the Participant's entire interest in the Plan will be distributed to the Designated MRD Beneficiary by December 31 of the calendar year containing the fifth anniversary of the Participant's death. If the Participant's surviving spouse is the participant's sole Designated MRD Beneficiary and the surviving spouse dies after the Participant but before distributions to either the Participant or the surviving spouse begin, this election will apply as if the surviving spouse were the Participant.

(d) <u>General Annuity Requirements</u>. If the Participant's interest is paid in the form of annuity distributions under the plan, payments under the annuity will satisfy the following requirements:

(1)    the annuity distributions will be paid in periodic payments made at intervals not longer than one year;

(2)    the distribution period will be over a life (or lives) or over a period certain not longer than the period described in subsection (f) or (g);

(3)    once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permitted;

(4)    payments will either be nonincreasing or increase only as follows: (A) by an annual percentage increase that does not exceed the annual percentage increase in a cost-of-living index that is based on prices of all items and issued by the Bureau of Labor Statistics; (B) to the extent of the reduction in the amount of the Participant's payments to provide for a survivor benefit upon death, but only if the Designated MRD Beneficiary whose life was being used to determine the distribution period described in subsection (f) dies or is no longer the Participant's Designated MRD Beneficiary pursuant to a QDRO; (C) to provide cash refunds of employee contributions upon the Participant's death; or (D) to pay increased benefits that result from a Plan amendment.

(5)    The amount that must be distributed on or before the Participant's Required Beginning Date (or, if the participant dies before distributions begin, the date distributions are required to begin under subsection (c)(1) or (c)(2) is the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next calendar year. Payment intervals are the periods for which payments are received, e.g., bi-monthly, monthly, semi-annually, or annually. All of the Participant's benefit accruals as of the last day of the first Distribution Calendar Year will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Participant's Required Beginning Date.

IUPAT INDUSTRY PENSION PLAN                                    PAGE 57

(6)      Any additional benefits accruing to the Participant in a calendar year after the first Distribution Calendar Year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(e) Death After Retirement. The following additional rules apply to annuity distributions that begin during a Participant's lifetime.

(1)      Joint Life Annuities. If the Participant's interest in the Plan is being distributed in the form of a joint and survivor annuity for the joint lives of the Participant and a nonspouse Designated MRD Beneficiary, annuity payments to be made on or after the Participant's Required Beginning Date to the Designated MRD Beneficiary after the Participant's death must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the participant using the table set forth in Treasury regulation [26 C.F.R.] 1.401(a)(9)-6T Q&A-2. If the form of distribution combines a joint and survivor annuity for the joint lives of the participant and a nonspouse Designated MRD Beneficiary and a period certain annuity, the requirement in the preceding sentence will apply to annuity payments to be made to the Designated MRD Beneficiary after the expiration of the period certain.

(2)      Period Certain Annuities. Unless the Participant's spouse is the sole Designated MRD Beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Participant's lifetime may not exceed the applicable distribution period for the participant under the Uniform Lifetime Table set forth in Treasury regulation [26 C.F.R.] 1.401(a)(9)-9 for the calendar year that contains the Annuity Starting Date. If the Annuity Starting Date precedes the year in which the Participant reaches age 70, the applicable distribution period for the Participant is the distribution period for age 70 under the Uniform Lifetime Table set forth in Treasury regulation [26 C.F.R.] 1.401(a)(9)-9 plus the excess of 70 over the age of the Participant as of the Participant's birthday in the year that contains the Annuity Starting Date. If the Participant's spouse is the participant's sole Designated MRD Beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the participant's applicable distribution period, as determined under this subsection, or the joint life and last survivor expectancy of the Participant and the participant's spouse as determined under the Joint and Last Survivor Table set forth in Treasury regulation [26 C.F.R.] 1.401(a)(9)-9, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the calendar year that contains the Annuity Starting Date.

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 58**

(f) <u>Additional Rules Before Retirement</u>. The following additional requirements for minimum distributions apply where the Participant dies before distribution of his interest in the Plan begins.

(1)   Participant Survived by Designated MRD Beneficiary.  If a Participant dies before the date distribution of his or her interest in the Plan begins and there is a Designated MRD Beneficiary, the Participant's entire interest will be distributed, beginning no later than the time described in subsection (c)(1) or (c)(2), over the life of the Designated MRD Beneficiary or over a period certain not exceeding: (A) unless the Annuity Starting Date is before the first Distribution Calendar Year, the life expectancy of the Designated MRD Beneficiary determined using the Designated MRD Beneficiary's age as of the Designated MRD Beneficiary's birthday in the calendar year immediately following the calendar year of the Participant's death; or (B) if the Annuity Starting Date is before the first Distribution Calendar Year, the life expectancy of the Designated MRD Beneficiary determined using the Designated MRD Beneficiary's age as of the Designated MRD Beneficiary's birthday in the calendar year that contains the Annuity Starting Date.

(2)   <u>No Designated MRD Beneficiary</u>. If the Participant dies before the date distributions begin and there is no Designated MRD Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest in the Plan will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(3)   Death of Surviving Spouse Before Distributions to Surviving Spouse Begin. If the Participant dies before the date distribution of his or her interest in the Plan begins, the Participant's surviving spouse is the participant's sole Designated MRD Beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin, this subsection will apply as if the surviving spouse were the Participant, except that the time by which distributions must begin will be determined without regard to subsection (c)(1).

(g) Distributions that are required under the incidental death benefit requirements of IRC 401(a) shall be deemed a distribution required under this section.

*Section 8.08    Trustee-to-Trustee Transfers - Rollovers*

(a) This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution that is equal to at least $500 paid

**IUPAT INDUSTRY PENSION PLAN** **PAGE 59**

directly to an eligible retirement plan specified by the distributee in a direct rollover as those terms are defined below.

(b) An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:

    (1)    any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary,

    (2)    any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) or for a specified period of ten years or more;

    (3)    any distribution to the extent such distribution is required under IRC 401(a)(9);

    (4)    any hardship distribution described in IRC 401(k)(B)(I)(IV) received after December 31, 1998,

    (5)    the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); or

    (6)    any other distribution(s) that is reasonably expected to total less than $200 during a year.

(c) An eligible retirement plan is an individual retirement account described in IRC 408(a), an individual retirement annuity described in IRC 408(b), an annuity plan described in IRC 403(a), or a qualified trust described in IRC 401(a), that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to a surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity. Effective for distributions after December 31, 2001, an eligible retirement plan shall also mean an annuity contract described in IRC 403(b) and an eligible plan under IRC 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately interest in the Plan for amounts transferred into such plan from this plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in IRC 414(p).

(d) A distributee includes:

    (1)    an employee or  former employee, and

    (2)    with regard to the interest of a spouse or former spouse, the employee's or former employee's surviving spouse and the employee's or former employee's

spouse or former spouse who is the alternate payee under a Qualified Domestic Relations Order.

(e)  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

## ARTICLE 9.  CLAIMS PROCEDURE & BENEFIT PAYMENTS

*Section 9.01    Application*

An application must be filed with the Trustees in advance of the Annuity Starting Date unless the Trustees find that the failure to make timely application was due to extenuating circumstances. No benefits under the Plan are payable for any period before submission of a complete application except as specifically provided in the Plan or required by applicable law.

*Section 9.02    Partial Pension - Application Procedure*

The plan under which an Employee first makes application for benefits shall initiate the processing of a Partial Pension with the other Signatory Plans based upon information supplied by the Employee as to where he or she worked.

*Section 9.03    Information and Proof*

(a)  Each Participant and Pensioner shall furnish the Trustees with any information or proof reasonably required to determine his or her benefit rights.

(b)  If the claimant makes a willfully false statement material to the application or furnishes fraudulent information or proof, material to the claim, benefits that are not subject to the nonforfeitability and anti-cutback rules of ERISA and the IRC may be denied, suspended or discontinued.

(c)  The Plan shall be entitled to rely on written representations, consents, and revocations submitted by Participants, Spouses or other parties in making benefit determinations under the Plan. Unless inconsistent with ERISA, a benefit determination based on such representations, consents, and revocations shall discharge the Plan and the Trustees from liability to the extent of the payments made. This means that, unless the Plan is administered in a manner determined to be inconsistent with ERISA, the Plan shall not be liable to a Participant, Spouse or Beneficiary or any other person for duplicate benefits with respect to the same Participant in excess of the Actuarial Equivalent of the benefits properly payable with respect to a Participant.

*Section 9.04    Trustee Discretion and Authority*

The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan. The Trustees shall have the exclusive right and discretionary authority to construe the terms of the Plan, to resolve any ambiguities and to determine any questions which may arise in connection with the Plan's

## IUPAT INDUSTRY PENSION PLAN <span style="float:right">PAGE 61</span>

application or administration, including but not limited to determination of eligibility for benefits. Wherever the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and nondiscriminatory manner.

*Section 9.05    Initial Claim Determination*

(a) An application for benefits and initial benefit claim determinations will be processed through the Plan office. A claimant for benefits will be notified of approval or disapproval of the claim.

(b) Notice of approval may be made by payment or otherwise.

(c) The Plan will generally notify the claimant of the complete or partial denial of an application in writing within 90 days of the date the claim was filed. The notice will be written in a manner that the claimant should be able to understand.

(d) If special circumstances require additional time for processing the claim, the Plan may extend the time for response by notice to the claimant mailed within the original 90-day period. The extension will not exceed 180 days from the date the claim was filed.

(e) A denial notice will explain the reason the claim was denied, make specific reference to the pertinent Plan provision upon which the denial is based, describe any additional material or information necessary for the claim to be honored, explain the need for additional material or information, explain that the claimant has a right to file a written request for review by the Trustees and, after January 1, 2002, the right to sue under ERISA 502(a).

*Section 9.06    Request for Review*

A person whose application for benefits under this Plan has been denied, in whole or in part, shall have the right to request review of the decision, by written request filed with the Trustees within 60 days after receipt of such notice. The claimant or his or her authorized representative may review pertinent documents available to the Plan and submit issues and comments in writing in connection with a request for review.

*Section 9.07    Decision on Review*

(a) An appeal shall be considered and decided by the Trustees or by a fiduciary or fiduciaries designated by the Trustees.

(b) A decision on a request for review ordinarily will be made by the Trustees at or before the next regular meeting of the Trustees scheduled at least thirty (30) days after the appeal is received. If special circumstances require an extension of time for processing, a decision may be delayed until the next regularly scheduled quarterly meeting of the Trustees. Written notice of the extension will be mailed to the claimant within the original period.

(c) A decision on appeal will be in writing and, if adverse to a claimant, include specific reasons for the decision and specific references to the Plan, a description of any further or voluntary

appeal procedures, a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits and, after January 1, 2002, the right to sue under ERISA 502(a).

### Section 9.08    Administrative Delay

Except as expressly provided to the contrary for a Disability Pension or other benefits, payment of benefits shall include retroactive payment for any months for which the pension is due and payable in accordance with the Plan. If, for administrative reasons, such as the need to obtain reliable information to calculate benefits, actual payments must begin after the scheduled Annuity Starting Date, that delay will not affect the Annuity Starting Date or the calculation of benefits, but when payments actually begin the Participant shall receive a payment to cover the benefits due for all months after the Annuity Starting Date.

### Section 9.09    No Rights to Assets

No person other than the Trustees of the Plan shall have any right, title or interest in any of the income, property or funds received or held by or for the account of the Plan, and no person shall have any right to benefits provided by the Plan except as expressly provided in the Plan.

## ARTICLE 10.        FUNDING

### Section 10.01  Funding Policy

The Plan is funded through contributions from the Employers and others under Collective Bargaining Agreements or Participation Agreements acceptable to the Trustees and applicable law, Withdrawal Liability and reciprocal agreements with other plans accepted by the Trustees. The Trustees may reject payments that they find are actuarially unsound or inconsistent with the purposes of the Plan.

### Section 10.02  Trust for Participants

(a) All Plan assets will be held in trust for the exclusive purpose of providing benefits to Participants, Spouses and Beneficiaries and defraying reasonable expenses of the Plan.

(b) The Trustees shall segregate and separately account for assets of the Plan and the Annuity Plan in the Trust. If not otherwise provided by a Collective Bargaining Agreement or Participation Agreement, the Trustees shall establish the allocation of payments to the Trust and any income between this Plan and the Annuity Plan for general or specific purposes (such as payment of expenses) as plan sponsor with final and binding effect.

### Section 10.03  Investments

(a) The Trustees have the power to invest Plan assets in accordance with the Trust Agreement and applicable law.

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan.

*Section 10.04  Source of Benefit Payments*

Plan assets will be the sole source for the payment of benefits under the Plan. This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

*Section 10.05  Expenses.*

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

*Section 10.06  Non-Reversion.*

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

*Section 10.07  Employer Contributions.*

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law.

*Section 10.08  Irrevocability of Contributions.*

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

*Section 10.09  Qualified Military Service Contributions*

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan.

(b) Absent other resolution of the Trustees, the charge will equal

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 64**

(1)    the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

(2)    average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c) Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows.

(1)    Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

(2)    Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

*Section 10.10  Return of Mistaken Contributions*

(a) The Trustees may return amounts erroneously paid to the Trust as allowed by law.

(b) A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees.

(c) A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d) A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

*Section 10.11  Delinquent Employers*

(a) The Trustees may terminate a person or organization as an Employer if the person or organization files to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer.

(b) To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

## IUPAT INDUSTRY PENSION PLAN                                    PAGE 65

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law.

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

    (1)    the unpaid contributions,

    (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

    (3)    liquidated damages equal to the greater of

        (A)   the amount of interest charged on the unpaid contributions, or

        (B)   20 percent of the unpaid contributions,

    (4)    reasonable attorneys' fees and costs of the action, and

    (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

## ARTICLE 11.        CONTRIBUTING EMPLOYER WITHDRAWAL

*Section 11.01  Employer Withdrawal - In General*

(a) An Employer that withdraws from the Plan in either a Complete Withdrawal or Partial Withdrawal shall owe and pay Withdrawal Liability to the Plan, as determined under this article and ERISA.

(b) These rules generally apply only to Construction Industry Employers. In the case of an Employer that is not a Construction Industry Employer, whether a Complete Withdrawal or Partial Withdrawal has occurred and the liability and payments for Withdrawal Liability to the Plan will be determined in accordance with the provisions of ERISA 4203, 4205, 4208 and 4219 notwithstanding any contrary language in the Plan.

*Section 11.02  Control Group Employer - Definition*

(a) For Withdrawal Liability purposes, all corporations, trades or businesses that are under common control under ERISA 4001(b) and applicable regulations are treated as a single employer.

(b) The entity resulting from a change in business form described in ERISA 4218(1) is considered to be the original employer.

*Section 11.03  Construction Industry Employers - Definition*

A Control Group Employer is in the construction industry if substantially all the Employees with respect to whom the Control Group Employer has an obligation to contribute under the Plan perform work in the building and construction industry.

*Section 11.04  Complete Withdrawal - Defined*

(a) A complete withdrawal for a Control Group Employer occurs if:

    (1)    the Control Group Employer permanently ceases to have an obligation to contribute to the Plan  under a Collective Bargaining Agreement or Participation Agreement, and

    (2)    for Construction Industry Employers, the Control Group Employer

        (A)    continues to perform work in the jurisdiction of the Plan of the type for which contributions were previously required, or

        (B)    resumes such work within five years after the date on which the obligation to contribute under the Plan ceased, and does not renew the obligation at the time of the resumption.

**IUPAT INDUSTRY PENSION PLAN**                                            **PAGE 67**

(3)    For this purpose, a Construction Industry Employer's obligation to contribute is not considered to have ceased solely because the Control Group Employer is not, at the particular time, engaged in activity for which it has an obligation to contribute.

(b) A Control Group Employer's obligation to contribute is not considered to have ceased solely because it temporarily suspends contributions during a labor dispute involving its Employees.

(c) The date of a complete withdrawal is the date the Control Group Employer's obligation to contribute ceased.

*Section 11.05  Partial Withdrawal - Defined.*

(a) A Partial Withdrawal for a Construction Industry Employer occurs only if, on the last day of a Plan Year, the Control Group Employer's work mix, within the craft and area jurisdiction of a Collective Bargaining Agreement under which it is obligated to contribute to the Plan, shifts, with the result that no more than an insubstantial portion of such work remains covered under the Plan.

(b) A Partial Withdrawal for other Control Group Employers occurs on the last day of a Plan Year as provided in ERISA 4205.

*Section 11.06  Unfunded Vested Liability*

(a) The unfunded vested liability of the Plan at any date is the amount, not less than zero, determined by subtracting the value of the Plan's assets from the Plan's liability for Title IV Vested Benefits at that date.

(b) The Plan's liability for Title IV Vested Benefits as of a particular date is the actuarial present value of the Title IV Vested Benefits under this Plan as of that date determined on the basis of methods and assumptions approved by the Trustees for this purposes, upon recommendation of the Plan's enrolled actuary.

(c) The Plan's assets are to be valued on the basis of rules adopted for this purpose by the Trustees upon recommendation of the Plan's enrolled actuary.

*Section 11.07  Title IV Vested Benefits*

For Withdrawal Liability purposes, a benefit is "vested" or "nonforfeitable" if a person has satisfied the conditions for entitlement under this Plan (other than submission of a formal application, retirement, or completion of a required waiting period) whether or not the benefit may subsequently be reduced or suspended by a Plan amendment, an occurrence of any condition or operation of law and whether or not the benefit is considered "vested" or "nonforfeitable" for any other purposes under the Plan or IRC.

**IUPAT INDUSTRY PENSION PLAN**  **PAGE 68**

*Section 11.08  Initial Unfunded Vested Liability*

The Plan's initial unfunded vested liability as of December 31, 1979, is the amount of unfunded vested liability determined as of December 31, 1979. The initial liability is reduced by 5% of such amount for each succeeding complete Plan Year until the initial liability is fully amortized.

*Section 11.09  Annual Change in Unfunded Vested Liability*

(a) The change in the Plan's Unfunded Vested Liability for a Plan Year (ending after December 31, 1979) is the amount (which may be less than zero) determined by subtracting from the Unfunded Vested Liability as of the end of the Plan Year:

    (1)    the unamortized balance (as of the end of the Plan Year) of the Initial Unfunded Vested Liability,

    (2)    the sum of the unamortized balances (as of the end of the Plan Year) of the changes in the Unfunded Vested Liability for each Plan Year that ended after December 31, 1979, and before the Plan Year for which the change is determined.

(b) The change in Unfunded Vested Liability for a Plan Year is reduced by 5% of such amount for each succeeding complete Plan Year until the change in Unfunded Vested Liability is fully amortized.

*Section 11.10  Reallocated Liability*

(a) For each Plan Year after December 31, 1979, the reallocated liability amount is the sum of the following amounts:

    (1)    any amount of Withdrawal Liability that the Trustees determine in the Plan Year to be uncollectible for reasons arising out of bankruptcy or insolvency proceedings;

    (2)    any amount of Withdrawal Liability that the Trustees determine in the Plan Year will not be assessed as a result of the limitations on liability described in ERISA 4209, 4219(c)(B), or 4225 against an Employer; and

    (3)    any amount that the Trustees determine to be uncollectible or unassessable in the Plan Year for other reasons under standards that are not inconsistent with applicable law.

(b) The reallocated liability amount for a Plan Year is reduced by 5% of such amount for each succeeding complete Plan Year until the change in unfunded vested liability is fully amortized.

**IUPAT INDUSTRY PENSION PLAN**                                   **PAGE 69**

*Section 11.11  Mergers*

(a) The Initial Unfunded Vested Liability, each Annual Change in Unfunded Vested Liability, and each annual charge for Reallocated Liability shall be re-set and adjusted upon a merger of the Plan with another multiemployer plan as allowed or required by PBGC Regulation 4211.36(b).

(b) The withdrawal liability assessed to any employer in a multiemployer plan that merges with the Plan that withdraws on or before the one-year anniversary of the merger date will be calculated separately based on the unfunded vested liability and withdrawal liability rules of the prior plan. The withdrawal liability assessed to any such employer that withdraws after the one-year anniversary of the merger date will be calculated based on the unfunded vested liability and withdrawal liability rules of the merged plan.

(c) *After the one-year anniversary of the merger date, contributions to the merged plan shall be treated as contributions to the Plan in allocating withdrawal liability. The allocation fraction numerator is the total amount required to be contributed to the merged plan and this Plan by the withdrawing employer in the 60-month period ending on the last day of the initial plan year (after initial liability is reset under subsection (a). The denominator is the sum for that period of the contributions made by all Employers that had not withdrawn as of the end of the initial plan year.*

*Section 11.12  Amount of Control Group Employer Liability for Complete Withdrawal*

(a) The initial amount of a Control Group Employer's liability for a Complete Withdrawal equals the sum of the following, determined as of the end of the Plan Year preceding the date of the Complete Withdrawal:

    (1)    the Control Group Employer's proportionate share of  the Initial Unfunded Vested Liability,

    (2)    the Control Group Employer's proportionate share of each Annual Change in Unfunded Vested Liability, and

    (3)    the Control Group Employer's proportionate share of each annual charge for Reallocated Liability.

(b) The initial amount is reduced by the following limitations on the amount of withdrawal liability, if and as applicable.

    (1)    De Minimis Reduction

    (2)    20-Year Payment Limitation

    (3)    Insolvency Reduction

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 70**

*Section 11.13  Employer Proportionate Share of Initial Unfunded Vested Liability*

(a) A share of Initial Unfunded Vested Liability is assessed only in the case of a Control Group Employer that was obligated to contribute for any part of the Plan Year ended December 31, 1979, and for any part of the period from September 26, 1980 through December 31, 1980.

(b) A Control Group Employer's proportional share of Initial Unfunded Vested Liability is determined as follows

> (1)    The Plan determines the unamortized balance of the Initial Unfunded Vested Liability as of the end of the Plan Year before a withdrawal.

> (2)    The balance is multiplied by a fraction,

>> (A)    The numerator of the fraction is the total contributions that the Control Group Employer was obligated to make to the Plan for the five Plan Years ended on December 31, 1979, less Pre-1980 Terminated Unit Contributions.

>> (B)    The denominator of the fraction is the total Employer contributions reported in the audited financial statements of the Plan for the five Plan Years ended December 31, 1979, less any contributions included in that total from a Control Group Employer that was not obligated to contribute to the Plan in the period from September 26, 1980 to December 31, 1980, or had a Complete Withdrawal from the Plan before September 26, 1980.

*Section 11.14  Employer Proportionate Share of Annual Changes in Unfunded Vested Liability*

(a) A Control Group Employer is assessed a proportional share of each Annual Change in Unfunded Vested Liability for each Plan Year ending after December 31, 1979 to the end of the Plan Year before a Complete Withdrawal.

(b) The share shall be determined as follows separately for each Plan Year.

> (1)    The Plan determines the unamortized balance of the Annual Change in Unfunded Vested Liability as of the end of the Plan Year before a withdrawal.

> (2)    The unamortized balance of the Annual Change in Unfunded Vested Liability is multiplied by a fraction.

>> (A)    The numerator of the fraction is the total contributions that the Control Group Employer was obligated to pay to Plan for the Apportionment Base Period, less pre-1980 Terminated Unit Contributions.

>> (B)    the denominator of the fraction is the Base Period Employer Contributions to the Plan for the Apportionment Base Period.

**IUPAT INDUSTRY PENSION PLAN**                                      **PAGE 71**

*Section 11.15  Apportionment Base Period*

The apportionment base period is for the Plan Year in which an Annual Change in Unfunded Vested Liability or Reallocated Liability arose and the four preceding Plan Years.

*Section 11.16  Base Period Employer Contributions*

(a) The total Employer contributions for purposes of the denominator in determining a Control Group Employer's proportionate share of each Annual Change in Unfunded Vested Liability and each annual charge for Reallocated Liability, are determined as follows.

(b) The Plan determines the sum of Employer contributions accrued in each of the Plan Years in the Apportionment Base Period.

    (1)    Any contributions received by the Plan more than two and one-half (2½) months after the end of a Plan Year are excluded.

    (2)    Any contributions accrued earlier but not included, for purposes of this denominator, as contributions with respect to any earlier Plan Year, are included in the Plan Year of payment.

    (3)    The total is reduced by any contributions made by an Employer that was not obligated to contribute to the Plan in the Plan Year in which the change or real-location arose and by any other withdrawn Employer.

    (4)    The total for any Plan Year ending after December 31, 1979, shall be reduced by the amount of any Employer contributions included, consistent with these provisions, in any previous annual total Employer contributions.

    (5)    Notwithstanding the foregoing, with respect to any Plan Year ended on or before December 31, 1979, the total Control Group Employer contributions shall be as reported in the audited financial statements of the Plan for those Plan Years.

(c) The Plan may, if and as allowed by applicable law, ignore any contributions:

    (1)    by a withdrawn Employer that contributed, in any one Plan Year of the relevant period, less than 1% of total Employer contributions to the Plan or, if lower, $250,000,

    (2)    by any other Employer that was a member of an Employer association, a group of Employers covered by a single Collective Bargaining Agreement or a group of Employers covered by agreements with a single labor organization, if the contribution obligations of substantially all members of the group ceased in a single Plan Year if the group's aggregate contributions to the Plan in any one

Plan Year of the relevant period totaled less than 1% of total Employer contributions to the Plan in that Plan Year or, if lower, $250,000.

*Section 11.17  Pre-1980 Terminated Unit Contributions*

For purposes of determining the numerators in determining a Group Employer's proportionate share of each Annual Change in Unfunded Vested Liability and each annual charge for Reallocated Liability, the contributions that a Control Group Employer was obligated to make do not include contributions under a Collective Bargaining Agreement for which there was a permanent cessation of the obligation to contribute before September 26, 1980, if and to the extent that the Control Group Employer demonstrates that its total contribution obligation includes contributions properly allocable to such a terminated Collective Bargaining Agreement.

*Section 11.18  Employer Proportionate Share of Annual Charges for Reallocated Liability*

(a)  A Control Group Employer is assessed a proportional share of each annual charge for Reallocated Liability for each Plan Year ending after December 31, 1979 to the end of the Plan Year before a Complete Withdrawal.

(b)  The share shall be determined as follows, separately for each Plan Year.

　　　(1)　　The Plan determines the unamortized balance of the Reallocated Liability as of the end of the Plan Year before a withdrawal.

　　　(2)　　The unamortized balance of the Reallocated Liability is multiplied by a fraction.

　　　　　(A)　　The numerator of the fraction is the total contributions that the Control Group Employer was obligated to pay to Plan for the Apportionment Base Period, less pre-1980 Terminated Unit Contributions.

　　　　　(B)　　The denominator of the fraction is the Base Period Employer Contributions to the Plan for the Plan Year in which the change arose and the prior four Plan Years.

*Section 11.19  Transfers of Liability*

If the Plan transfers Title IV Vested Benefits to another plan to which the Control Group Employer will contribute in connection with a Complete Withdrawal or Partial Withdrawal, the Control Group Employer's Withdrawal Liability shall be reduced in an amount equal to the value of the transferred Title IV Vested Benefits, reduced by the value of any Plan assets transferred to the other plan. The value of transferred Title IV Vested Benefits and assets shall be determined on the same basis as the determination of the Withdrawal Liability that was assessed or assessable to the Control Group Employer.

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 73**

*Section 11.20  De Minimis Reduction*

A Control Group Employer's withdrawal liability shall be reduced by the lesser of: $50,000 or one percent (1%) of the Plan's Unfunded Vested Liability as of the end of the Plan Year preceding the Control Group Employer's withdrawal, less the excess of the initial liability amount over $100,000.

*Section 11.21  20-Year Payment Limitation*

The payment schedule and, as applicable, amount of withdrawal liability remaining after the De Minimis Reduction shall be reduced, to the extent applicable, in accordance with ERISA 4219(c)(1)(B).

*Section 11.22  Insolvency Reduction*

A Control Group Employer's Withdrawal Liability, remaining after the De Minimis Reduction and 20-Year Limitation, shall be reduced or abated in accordance with ERISA 4225, if and to the extent that the Control Group Employer demonstrates that the limitation applies.

*Section 11.23  Partial Withdrawal Liability - Amount*

The amount of liability for a Partial Withdrawal and the total amount due in a 12-month period with respect to a Partial Withdrawal shall be pro-rata shares of the amounts determined as if the Control Group Employer had Complete Withdrawal on the date of the Partial Withdrawal, in a manner consistent with the applicable provisions of ERISA 4206 and 4219.

*Section 11.24  Payment of Withdrawal Liability*

(a)  Withdrawal liability shall be payable in installments notwithstanding the pendency of any review, arbitration or other proceedings.

(b) Payment shall begin on the first day of the month that begins at least ten days after the date notice of, and demand for, payment is sent to the Control Group Employer.

(c) Withdrawal Liability shall be payable in equal monthly installments calculated as follows over a term which is sufficient to amortize the Withdrawal Liability under the actuarial assumptions used to calculate the Withdrawal Liability of the Control Group Employer, except as limited by the 20-Year Payment Limitation, Insolvency Reduction or abated.

(d) The monthly payment is 1/12th of an annual payment amount equal to the product of multiplying the Control Group Employer's highest contribution rate by its average annual contribution base units with interest (under the actuarial assumptions used to calculate Withdrawal Liability) for payment after the first day of a Plan Year.

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 74**

     (1)    The highest contribution rate is the highest dollar amount at which the Control Group Employer was obligated to contribute to the Plan in the Plan Year in which the withdrawal occurred and the preceding nine (9) Plan Years.

     (2)    The average annual contribution base units equal the average of contribution base units for the three consecutive Plan Years, within the ten consecutive Calendar Year s ending before the Calendar Year in which the withdrawal occurred, during which the Employer's contribution base units were the highest.

(e) A Control Group Employer may prepay all or part of its Withdrawal Liability, without penalty.

(f) Interest shall accrue on any late payment from the date the payment was due until the date paid in accordance with PBGC regulations.

(g) If, following review, arbitration or other proceedings, the amount of the Control Group Employer's Withdrawal Liability is determined to be different from the amount set forth in the notice and demand, the adjustment shall be made by reducing or increasing the total number of installment payments due. If the Control Group Employer has paid more than the amount finally determined to be its Withdrawal Liability, the Plan shall refund the excess with interest in accordance with PBGC regulations.

(h) On a Withdrawal Liability Default, the Plan may require immediate payment of some or all installments that would otherwise be due in the future.

(i) The monthly payment with respect to a Partial Withdrawal shall be the amount determined for a Complete Withdrawal multiplied by the factor used to adjust the amount of liability for a Complete Withdrawal to a Partial Withdrawal.

*Section 11.25  Notice and Collection of Withdrawal Liability*

The Trustees shall notify a Control Group Employer of the amount of Withdrawal Liability, schedule for payment and demand payment as soon as practicable after a Complete Withdrawal or Partial Withdrawal.

*Section 11.26  Withdrawal Liability Review*

No later than ninety (90) days after a demand for Withdrawal Liability, any party from whom Withdrawal Liability is sought or a member of its Control Group Employer may seek review in accordance with ERISA 4219(b)(2). The Trustees shall do a reasonable review and respond to a request for review with their decision, the basis for the decision and the reason for any change in the amount of Withdrawal Liability or payment schedule.

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 75**

*Section 11.27  Withdrawal Liability Arbitration*

A dispute between a Control Group Employer and the Plan concerning a determination of Withdrawal Liability shall be submitted to arbitration as provided for in ERISA 4221 and the withdrawal liability arbitration rules of the American Arbitration Association. No issue concerning the computation of Withdrawal Liability may be submitted for arbitration unless the matter has been reviewed by the Trustees in accordance with ERISA 4219(b)(2) and any Plan rules adopted thereunder. Arbitration must be initiated with the American Arbitration Association by the deadline in ERISA 4221(a)(1) absent contrary written agreement with the Trustees or their counsel.

*Section 11.28  Withdrawal Liability Default*

(a) The Trustees may declare a default on payment of Withdrawal Liability in the following situations.

(b) The Control Group Employer fails to may installment when due, provided that the Plan has notified the Control Group Employer of its failure to make the payment on the date it was due, and the Control Group Employer has failed to pay the past-due installment (and any related interest or other late charges) within 60 days after its receipt of the late-payment notice.

(c) The Control Group Employer liquidates pursuant to a petition under the Bankruptcy Code, or similar proceedings under state or other federal laws.

(d) All or substantially all of the Control Group Employer's assets are sold, distributed, or transferred out of the jurisdiction of the courts of the United States.

*Section 11.29  Withdrawal Liability Collection Litigation*

(a) In any suit by the Trustees to collect Withdrawal Liability, including a suit to enforce an arbitrator's award and a claim asserted by the Trustees in an action brought by a Control Group Employer or other party to preclude collection, if judgment is awarded in favor of the Plan, the Control Group Employer shall pay to the Plan:

      (1)    the overdue payments,

      (2)    interest thereon determined at the rate for underpayment of federal income taxes under IRC 6621,

      (3)    liquidated damages equal to the greater of:

          (A)   the amount of interest charged on the unpaid balance, or

          (B)   twenty percent of the unpaid amount awarded.

      (4)    attorney's fees and all costs incurred in the action.

(b) Nothing in this paragraph shall be construed as a waiver or limitation of the Plan's right to any other legal or equitable relief.

*Section 11.30  Withdrawal Liability Abatement – Construction Industry Employers*

(a) <u>Successive Withdrawals</u>. If, after a Partial Withdrawal, a Control Group Employer again incurs liability for a Complete Withdrawal or Partial Withdrawal, the Withdrawal Liability incurred as a result of the later withdrawal(s) shall be adjusted to the extent necessary to avoid duplication of liability.

(b) <u>Abatement after renewed or increased participation</u>. If a Control Group Employer has a Complete Withdrawal from the Plan later renews the obligation to contribute, or if an Employer that has a Partial Withdrawal later increases the share of its work in the craft and area jurisdiction of the Collective Bargaining Agreement under which the Control Group Employer is obligated to contribute to the Plan so that the portion of such work that is covered under the Plan is determined by the Trustees to be more than insubstantial, the unpaid balance of the Control Group Employer's liability incurred on account of the earlier Complete Withdrawal or Partial Withdrawal may be reduced in accordance with rules adopted by the Trustees pursuant to PBGC regulations.

*Section 11.31  Withdrawal Liability Abatement – Other Employers*

Withdrawal Liability for Control Group Employers that are not Construction Industry Employers shall be abated in accordance with ERISA.

*Section 11.32  Mass Withdrawal.*

Notwithstanding any other provision of this Article, if all or substantially all Control Group Employers withdraw from the Plan pursuant to an agreement or arrangement in a mass withdrawal, as determined under ERISA, the withdrawal liability of each Control Group Employer shall be adjusted in accordance with ERISA.

## ARTICLE 12.        TAX RULES AND AFFILIATED EMPLOYERS

*Section 12.01  Non-Discrimination*

(a) The following rules apply to any Employee notwithstanding any other provision of the Plan to the contrary.

(b) The contributions to the Plan and benefits under the Plan for any Highly Compensated Employee shall at all times be limited to an amount that is non-discriminatory for purposes of IRC 401.

(c) The contributions to the Plan and benefits under the Plan for any Key Employee shall comply with IRC 416.

**IUPAT INDUSTRY PENSION PLAN**                    **PAGE 77**

(d) The annual compensation of each Employee taken into account under the Plan for any year shall not exceed the allowable amount under IRC 401(a)(17), as amended and adjusted under IRC 415(d).

### Section 12.02  *Affiliated Employer Participation*

(a) An Affiliated Employer may provide benefits under the Plan to its Non-Bargained Employees under the rules in this article.

(b) An Affiliated Employer may adopt the Plan by agreement with the Trustees. The terms of the agreement shall include (or be deemed to include) the Plan and Trust and in particular, the requirements of this Article, absent express written agreement of the Trustees to other rules.

(c) An Affiliated Employer may withdraw from the Plan and Trust or be terminated as an Employer by the Trustees. The withdrawal or termination will be deemed an adoption by the Affiliated Employer of a plan and trust identical to the Plan and Trust, except that all references to the Trustees will be deemed to refer to the Affiliated Employer. At such time and in such manner as the Trustees direct, the assets of the Trust allocable to Non-Bargained Employees of the Affiliated Employer will be transferred to the trust deemed adopted by the Affiliated Employer and the Withdrawal Liability of the Affiliated Employer will be reduced as provided by law.

(d) An Affiliated Employer has no other power with respect to the Plan (as an Employer, plan sponsor, fiduciary or otherwise) except as specifically provided in the Plan or Trust Agreement.

### Section 12.03  *Conditional Adoption*

(a) An Affiliated Employer may adopt the Plan on the express condition that the IRS will consider it a plan of the employer which qualifies under IRC 401(a) and with a trust which qualifies for exemption from taxation under IRC 501(a).

(b) If the IRS determines that the Plan or Trust does not so qualify, the Affiliated Employer may withdraw from the Plan and, if so desired, then amend or terminate its own plan. If the Affiliated Employer withdraws from the Plan, the rights of all Employees of the Affiliated Employer under the Plan will cease as if the Plan had never been adopted by the Affiliated Employer and will be the sole liability of the Affiliated Employer and its plan.

### Section 12.04  *General Affiliated Employer Rules*

(a) The participation of an Affiliated Employer in the Plan is subject to the following general rules.

(b) An Affiliated Employer shall contribute for its Employees in accordance with its Participation Agreement with the Trustees. An Affiliated Employer may condition contributions on deductibility for federal income tax purposes. The Affiliated Employer shall be subject to

audit by the Plan and the same delinquency remedies as the Contributing Employers under ERISA.

(c) Absent other agreement with the Trustees, an Affiliated Employer shall contribute only for Union Alumni or for all of its Employees (other than Union Employees and Highly Compensated Employees) on the basis of an equal dollar amount for each contribution base unit or an equal percentage of Compensation. The rights of Union Employees shall be governed by the Collective Bargaining Agreement for their work.

(d) An Affiliated Employer shall pay contributions and other costs of compliance with the IRC and regulations as the Trustees reasonably determine to be necessary to assure that the qualification of the Plan under IRC 401 and the exemption of the Trust under IRC 501(a) is not impaired by the participation of Non-Bargained Employees. An Affiliated Employer shall furnish evidence of compliance with the qualification requirements of the IRC and ERISA to the Trustees upon request or as provided by applicable law.

*Section 12.05  Limitation Employer*

(a) *The Plan determines applicable limitations on contributions for a Participant and qualification requirements under IRC 401, 410, 411, 415 or 416 with reference to the Limitation Employer.*

(b) *With respect to Union Employees and Union Alumni, the limitation employer is the Contributing Employer as a group (without regard to aany trade or business under common control for purposes of IRC 414(a), (b) or (c) or affiliated service group member under IRC 414(m) of a Contributing Employer). This limitation employer uses the calendar year as its testing and computation period and values benefits under the actuarial assumptions of the Plan.*

(c) *Each Affiliated Employer (and any trade or business under common control for purposes of IRC 414(a), (b) or (c) or affiliated service group member under IRC 414(m)) is a separate employer with respect to its Non-Bargained Employees. The taxable year of each such employer is the taxable year of the employer. The limitation year of each such single employer is the Plan Year unless a different period is required by law (including the IRC) or is elected by the Affiliated Employer in accordance with the IRC. An Affiliated Employer shall aggregate contributions or benefits under the Plan with contributions or benefits from other plans maintained by the Affiliated Employer in accordance with the IRC.*

*Section 12.06  Top-Heavy Requirements*

(a) The following special rules apply only to Non-Bargained Employees of an Affiliated Employer, for purposes of IRC 416. Union Employees are exempt from these requirements under IRC 416(i)(4).

(b) Top-heavy determinations are made using the actuarial assumptions and methodology of any defined benefit plan of an Affiliated Employer covering eligible Non-Bargained Employees. Absent such a plan, determinations will be based on the benefit payable under the Plan based

## IUPAT INDUSTRY PENSION PLAN                                    PAGE 79

solely on service with the Affiliated Employer, an annual valuation date of December 31 and minimum funding assumptions of the Plan in effect at a determination date.

(c) If the Plan is a Top-Heavy Plan or part of a Top-Heavy Group for a year with respect to an Affiliated Employer, the responsibility to provide a minimum benefit or contribution under IRC 416 to each Non-Key Employee of an affected Affiliated Employer will lie with any single-employer plan sponsored by the Affiliated Employer, another single-employer plan maintained by the Affiliated Employer or the Plan in that order. An Affiliated Employer shall pay any amount required under this section on notice from the Plan.

(d) If the Plan is a Top-Heavy Plan or part of a Top-Heavy Group for a year with respect to an Affiliated Employer, Non-Key Employees of the affected Employer will receive nonforfeitable rights under the following schedule, based on Plan years with 1,000 or more Hours of Service with the Affiliated Employer and any affiliated entities under IRC 414:

| Years of Vesting Service | Vested Percentage |
| --- | --- |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 or more | 100% |

(e) If the Plan is a Super Top-Heavy Plan for a year beginning before January 1, 2000 with respect to an Affiliated Employer or a minimum benefit under IRC 416(h)(2)(A) (3% option) is not provided to Non-Key Employees, the 1.25 factor used in calculating the denominator of the fraction for the Combined Plan Limit will be reduced to 1.00.

(f) The benefits or contributions required by this section are determined without regard to Social Security or other collateral sources of income.

(g) Payment of benefits to Non-Key Employees will not be suspended while the Plan is a Top-Heavy Plan with respect to the Affiliated Employer.

(h) Effective for plan years of this plan or an aggregated single-employer plan beginning after December 31, 2001, the present values of accrued benefits and the amounts of interest in the Plan balances of an Employee of an Affiliated Employer as of the determination date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under IRC 416(g)(2) during the 1-year period ending on the determination date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under IRC 416(g)(2)(A)(i). In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

## IUPAT INDUSTRY PENSION PLAN                           PAGE 80

(i) Effective for plan years of this plan or an aggregated single-employer plan beginning after December 31, 2001, the accrued benefits and interest in the Plans of any individual who has not performed services for an Affiliated Employer during the 1-year period ending on the determination date shall not be taken into interest in the Plan.

(j) Effective for plan years of this plan or an aggregated single-employer plan beginning after December 31, 2001, for purposes of satisfying the minimum benefit requirements of IRC 416(c)(1), in determining years of service with the Affiliated Employer, any service with an Affiliated Employer shall be disregarded to the extent that such service occurs during a Plan Year when the Plan benefits (within the meaning of IRC 410(b)) no Key Employee or former Key Employee of the Affiliated Employer.

*Section 12.07  Maximum Benefit Limit.*

(a) This section is effective for Limitation Years beginning after December 31, 2001. The accumulated benefit with respect to any Participant under the Plan will not exceed the Defined Benefit Plan Limit or, before January 1, 2000, the Combined Plan Limit for a Calendar Year for a single Limitation Employer. The limit is determined at the Participant's Annuity Starting Date, unless otherwise expressly provided in the Plan or applicable law.

(b) These limits apply to an annual benefit payable to a Participant at Social Security Retirement Age as a straight life annuity with no ancillary benefits or an annuity payable in a joint and survivor payment form where the Spouse is the joint pensioner. A benefit payable in any other form shall be converted to the Actuarial Equivalent of a straight life annuity and be adjusted in accordance with IRC 415 and applicable regulations thereunder.

(c) If a Participant on the Annuity Starting Date is not eligible for full monthly benefits under this Plan because of the operation of this section, the monthly benefit shall thereafter be recalculated annually until the Participant is receiving a full monthly benefit under the Plan's terms without the operation of the section. Each such recalculation shall be based on this section with any applicable adjustment to reflect cost of living increases as set forth in IRS Regulation [26 C.F.R.] §1.415-5.

(d) For any year before 1986, the limitations prescribed by IRC 415 in effect before enactment of the Tax Equity and Fiscal Responsibility Act of 1982 shall apply, and no pension earned under this Plan prior to 1986 shall be reduced on account of the provisions of this section if it would have satisfied those limitations under that prior law.

*Section 12.08  Defined Benefit Plan Limit*

(a) This section shall be effective for Limitation Years ending after December 31, 2001, except as provided in subsection (c)(4). Benefit increases resulting from the increase in the limitations of IRC 415(b) will be provided to all current and former participants (with benefits limited by section 415(b)) who have an accrued benefit under the Plan immediately prior to the effective date (other than an accrued benefit resulting from a benefit increase solely as a result of the increases in limitations under IRC 415(b)).

**IUPAT INDUSTRY PENSION PLAN**                                      **PAGE 81**

(b) The "defined benefit dollar limitation" is $160,000, as adjusted, effective January 1 of each year, under IRC 415(d) in such manner as the Secretary of the Treasury shall prescribe, and payable in the form of a straight life annuity. A limitation as adjusted under IRC 415(d) will apply to Limitation Years ending with or within the calendar year for which the adjustment applies.

(c) The "maximum permissible benefit" is the defined benefit dollar limitation (adjusted where required, as provided in subsection (c)(1) and, if applicable, in (c)(2) or (c)(3) below, and limited, if applicable, as provided in (c)(4) below).

    (1)    If the Participant has fewer than 10 years of participation in the plan, the defined benefit dollar limitation shall be multiplied by a fraction, (A) the numerator of which is the number of years (or part thereof) of participation in the plan and (B) the denominator of which is 10.

    (2)    If the benefit of a Participant begins prior to age 62, the defined benefit dollar limitation applicable to the Participant at such earlier age is an annual benefit payable in the form of a straight life annuity beginning at the earlier age that is the Actuarial Equivalent of the defined benefit dollar limitation applicable to the Participant at age 62 (adjusted under (c)(1) above, if required). The defined benefit dollar limitation applicable at an age prior to age 62 is determined as the lesser of (A) the Actuarial Equivalent (at such age) of the defined benefit dollar limitation, and (B) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using a 5 percent interest rate and the applicable Plan mortality table. Any decrease in the defined benefit dollar limitation determined in accordance with this paragraph shall not reflect a mortality decrement if benefits are not forfeited upon the death of the Participant. If any benefits are forfeited upon death, the full mortality decrement is taken into account.

    (3)    If the benefit of a Participant begins after the Participant attains age 65, the defined benefit dollar limitation applicable to the Participant at the later age is the annual benefit payable in the form of a straight life annuity beginning at the later age that is the Actuarially Equivalent of the defined benefit dollar limitation applicable to the Participant at age 65 (adjusted under (c)(1) above, if required). The actuarial equivalent of the defined benefit dollar limitation applicable at an age after age 65 is determined as (A) the lesser of the Actuarial Equivalent (at such age) of the defined benefit dollar limitation, and (B) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using a 5 percent interest rate assumption and the applicable Plan mortality table. For these purposes, mortality between age 65 and the age at which benefits commence shall be ignored.

(4)      Notwithstanding the above, for Limitation Years beginning before January 1, 2002, the maximum permissible benefit will not exceed the defined benefit compensation limitation. In the case of a Participant who has fewer than 10 years of service with the employer, the defined benefit compensation limitation shall be multiplied by a fraction, (A) the numerator of which is the number of years (or part thereof) of service with the Limitation Employer and (B) the denominator of which is 10..

### Section 12.09  Section 415 Aggregation

Effective for Limitation Years beginning after December 31, 2001, the Plan is not combined or aggregated with any non-multiemployer plan for purposes of applying the IRC 415(b)(1)(B) compensation limit to the non-multiemployer plan. The Plan was never combined or aggregated with other multiemployer plans for such purposes.

### Section 12.10  Maximum Benefits Coordination

(a) If a Participant is eligible for a pension under another qualified pension or profit-sharing plan of an Employer and this Plan and his or her pension from the other plan when aggregated with the pension payable under this Plan exceeds the limitations of IRC 415, the benefits under this Plan shall be reduced to the extent necessary to satisfy the maximum limitations set forth in IRC 415.

(b) The Trustees shall be entitled to rely on a representation by an Employer that the pension payable to a Participant under this Plan to the extent attributable to employment with the Employer does not, together with any other pension payable to him under any other Plan maintained by that Employer whether or not terminated, and to the extent attributable to employment with that Employer, exceed the limitations of IRC 415.

### Section 12.11  Restricted (High-25) Employees

(a) The benefit of any present or former Restricted Employee is limited to a benefit that is nondiscriminatory under IRC 401(a)(4).

(b) The payment of benefits to or on behalf of a Restricted Employee will not exceed an amount equal to the payments that would be made to or on behalf of the Restricted Employee in that year under a straight life annuity that is the Actuarial Equivalent of the accrued benefit and other benefits to which the Restricted Employee is entitled under the plan (other than a social security supplement) and a social security supplement, if any, that the Restricted Employee is entitled to receive.

(c) The annual limitation will not apply if, after taking into account payment to or on behalf of the Restricted Employee of all Restricted Benefits payable to or on behalf of that Restricted Employee under the Plan, the value of Plan assets equals or exceeds 110 percent of the value of current liabilities, as defined in IRC 412(1)(7).

(d) The annual limitation will not apply if the value of the Restricted Benefits payable to or on behalf of the Restricted Employee is less than one percent (1%) of the value of current liabilities before distribution.

(e) The annual limitation will not apply if the value of the Restricted Benefits payable to or on behalf of the Restricted Employee do not exceed the amount described in IRC 411(a)(11)(A) (restrictions on certain mandatory distributions).

## ARTICLE 13.      DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in the Plan:

*Accrued Benefit* ... Plan 5.01

*Active Employee* ... a Participant in the Plan who has not retired as of a particular relevant date and earned 450 Benefit Hours in the three-year period immediately preceding the relevant date or became a Participant in the three-year period and remains a Participant in the Plan on the relevant date.

*Actuarial Equivalent* ...a payment or series of payments of equal actuarial present value based on the actuarial factors and assumptions specified in the provision in which the phrase is used or, if not otherwise specified, based on the following assumptions.

(a) Except as otherwise required by applicable law, the assumptions of an insurer will be used in valuing any benefits provided by purchase of an annuity contract with such assumptions.

(b) for distributions with Annuity Starting Dates before January 1, 2003 and where required by applicable law with respect to lump sum payments, valuation will be based on assumptions under IRC 417(e) or, before January 1, 2000, actuarial assumptions for a terminating single-employer plan that is trusteed by the Pension Benefit Guaranty Corporation in effect for a given date under 29 C.F.R. 4044.

(c) for distributions with Annuity Starting Dates on or after January 1, 2003, the applicable mortality table used for purposes of adjusting any benefit or limitation under IRC 415(b)(2)(B),(C) or (D) and the applicable mortality table used for purposes of satisfying the requirements of IRC 417(e) is the table prescribed in Rev. Rul. 2001-62,

(d) Where required by applicable law, valuation will be based on rules or assumptions under IRC 401(a)(9) to determine minimum distributions, with life expectancy as computed by use of the Single Life Table in Treasury regulation [26 C.F.R.] 1.401(a)(9)-9.

( e) In other cases, interest of 7% per annum shall be assumed and the mortality assumption shall be based on the 1971 Group Annuity Mortality Table for Males.

*Alternate Payee*.. ERISA 206(d)(3)(K).

## IUPAT INDUSTRY PENSION PLAN                                    PAGE 84

*Affiliated Employer ...*

(a)  With respect to its paid officers and Employees, a Local Union or District Council that has a Collective Bargaining Agreement with a contributing Employer,

(b)  a Union-Industry Related Organization in which at least one participating Local Union or District Council has a Collective Bargaining Agreement with at least one Contributing Employer; and

(c)  Other Contributing Employers, who employ classes of Participants who may not be represented for the purpose of collective bargaining by the Union, but who are permitted to participate in the Plan on such terms and conditions determined by the Trustees, provided that such discretion shall be exercised in a nondiscriminatory manner and the acceptance of the group will not impair the actuarial soundness of the Plan.

*Annual Change in Unfunded Vested Liability...* Plan 11.09.

*Annuity Plan ..* the Painters and Allied Trades International Union and Industry Annuity Plan, also known after January 1,2002, as the Painters and Allied Trades Industry Annuity Plan

*Annuity Starting Date ...*

(a) except as otherwise provided below, a Participant's annuity starting date is the first day of the first calendar month starting after the Participant has fulfilled all of the conditions for entitlement to benefits and after the later of:

   (1)     submission of by the Participant of a completed application for benefits, or

   (2)     30 days after the Plan advises the Participant of the available benefit payment options, unless the benefit is being paid as a Husband and Wife Pension at or after the Participant's Normal Retirement Age or the benefit is being paid out automatically as a lump sum. For distributions after December 31, 1996, the annuity starting date cannot be earlier than a day after the date that the written explanation of the Husband and Wife Pension is provided to the Participant.

(b) If the benefit is being paid out automatically as a lump sum, the annuity starting date is date of payment.

(c) The annuity starting date will not be later than the Participant's Required Beginning Date.

(d) The annuity starting date for a Beneficiary or Alternate Payee will be determined under the foregoing rules.

(e) For purposes of surviving spouse benefits to a Qualified Spouse, the annuity starting date for a Disability Pension is the date that the conditions for payment under Plan 6.12 are satisfied even if payment is deferred or delayed under Plan 6.13.

*applicable law ...* enforceable law and regulations governing multiemployer defined benefit pension plans, including ERISA and the IRC as it relates to qualified pension plans.

**IUPAT INDUSTRY PENSION PLAN**                    **PAGE 85**

*Apportionment Base Period...* Plan 11.15.

*Arbitration Act* ... Title 9 of the United States Code.

*Base Period Employer Contributions...* Plan 11.16.

*Beneficiary* ... Plan 7.16.

*Benefit Break-in-Continuity* ...Plan 5.10.

*Benefit Hours...*the sum, at any date, of Pension Credits for work before January 1, 2003 multiplied by 150 and Hours of Service in Covered Employment after December 31, 2002.

*Calendar Year* ... the period from January 1 to the next December 31. For purposes of ERISA regulations, the Calendar Year shall serve as the vesting computation period, the benefit accrual computation period, and, after the initial period of employment, the computation period for eligibility to participate in the Plan.

*Collective Bargaining Agreement* ... any written labor contract or other document by and between a Contributing Employer and the Union which provides for contributions to this Plan with any and all extensions or renewals thereof and successor agreements thereto or applicable labor-management relations law which obligates an organization to make contributions to the Plan.

*Combined Level Income and Joint and Survivor Option...* Plan 8.04.

*Compensation* ... taxable gross income reflected on IRS Form W-2 for a calendar year and , but not in excess of the limit under IRC 401(a)(17), adjusted for cost-of-living increases. The compensation paid or made available during such Limitation Year shall include any elective deferral (as defined in IRC 402(g)(3)), and any amount which is contributed or deferred by the employer at the election of the employee and which is not includible in the gross income of the employee by reason of IRC 125 or 457.

*Complete Withdrawal...* Plan 11.04 and ERISA 4203.

*Construction Industry Employer* ... Plan 11.03.

*Contiguous Employment* ...a period of employment with an Employer which precedes or follows Covered Employment with no intervening quit, discharge or retirement.

*Contribution Rate..* Plan 5.08.

*Contributing Employer...*an person or organization which has agreed or shall agree to make contributions to the Plan in a Collective Bargaining Agreement.

*Contribution Period ..* means  with respect to a category of employment, the period during which a person or organization is an Employer with an obligation to pay contributions for work in the category of employment.

*Control Group Employer...* Plan 11.02

*Covered Employment* ... work or leave time that is

(a)  Hours of Service for which an Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan,

(b)  paid Hours of Service under a reciprocal agreement

(c)  Qualified Military Service, or

(d)  employment with an Employer prior to the Contribution Period that is credited in determining Pension Credits or Benefit Hours.

(e)  Covered employment shall not include employment after termination of an Employer's status as a Contributing Employer.

*De Minimis Reduction*... Plan 11.20.

*Designated MRD Beneficiary* ... an individual who is designated as the Beneficiary of a Participant under the Plan and is a designated beneficiary under IRC 401(a)(9) and Treasury regulation [26 C.F.R.] 1.401(a)(9)-1, Q&A-4 *with respect to the minimum required distribtuion rules in the IRC.*

*Disability Pension*... Plan 6.12, 6.13.

*Distribution Calendar Year* ... a calendar year for which a minimum distribution under IRC 401(a)(9) is required.

(a) For distributions beginning before a Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date.

(b) For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Plan 8.07.

*Disqualifying Employment* ... Plan 7.21(c).

*District Council* ... a district council affiliated with the International Union of Painters and Allied Trades, formerly known as the International Brotherhood of Painters and Allied Trades.

*Domestic Relations Order* ...ERISA 206(d)(3)(B)(ii).

*Early Retirement Date* ... the first day of the month after a Participant is eligible for payment of a Special Early Retirement Pension, Early Retirement Pension or Vested Early Pension and submits a completed application for payment to the Plan.

*Early Retirement Pension* ... Plan 6.10, 6.11.

*Early Vested Pension* ... Plan 6.15, 6.16.

*Eligible Employee* ... Plan 3.01.

**IUPAT INDUSTRY PENSION PLAN**                                    **PAGE 87**

*Employee ....*

(a) a person employed by an Employer for purposes of IRC 414 and 29 U.S.C. 186(c)

(b) The term "Employee" shall include a leased employee, subject to 29 U.S.C. §186(c)(5). The term "leased employee" means any person (other than an employee of the recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with IRC 414(n)(6)) on a substantially full-time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient. Contributions or benefits provided a leased employee by the leasing organization which are attributable to services performed by the recipient Employer shall be treated as provided by the recipient Employer. The inclusion of a "leased employee" as an employee shall not require the accrual of benefits for the person without payment of contributions.

*Employer ...*

(a) a Contributing Employer or Affiliated Employer with a current Collective Bargaining Agreement or Participation Agreement that has not, by resolution of the Trustees, been terminated from the Plan.

(b) An organization shall not be deemed an Employer simply because it is part of a controlled group of corporations or of a trade or business under common control with a Contributing Employer or Affiliated Employer

*Entry Date...* Plan 3.02.

*ERISA* ... the Employee Retirement Income Security Act, as amended

*Family and Medical Leave...* Plan 4.10.

*Guaranteed Five-Year Pension* ... Plan 7.13.

*Highly Compensated Employee...* IRC 414(q)

*Hour of Service ...*

(a) Each hour for which an Employee is paid or entitled to payment for the performance or nonperformance of duties with an employer.

(b) Each hour for which back pay, regardless of mitigation of damages, is either awarded or agreed to by an employer.

(c) Each hour for which an Employee is paid, or entitled to payment, by an employer, its agent or a plan maintained by the employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence other than payments made solely for the purpose of complying with applicable worker compensation, unemployment compensation or disability insurance laws or to provide reimbursement of medical expenses.

**IUPAT INDUSTRY PENSION PLAN**                    **PAGE 88**

(d)  Hours of service shall be computed and credited in accordance with DOL Regulation 2530.200-b(2)

(e)  Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with IRC 414(u) and prior law, including the Military Selective Service Act.

(f)  No credit is given for work before the Contribution Period, except as expressly provided in the Plan.

(g)  No credit is given after an Employer has a Complete Withdrawal from the Plan, including termination, for failure to pay contributions due, of status as an Employer by the Trustees.

(h)  No credit is given for work or leave lost by reason of a One-Year Break (unless and until repaired) or a Permanent Break.

(i)  Except as specifically provided for Non-Bargained Employees, the Plan does not credit nor consider work with an organization simply because it is part of a controlled group of corporations or a trade or business under common control, under IRC 414, with a Contributing Employer or Affiliated Employer.

(j)  Hours are credited to the Employee for the computation period in which service is performed, for which payment is made or to which the award or agreement pertains and will not be duplicated under different subsections. Payments made on a basis other than hours are converted to hours using 10 hours for each day, 45 hours for each week, 95 hours for a semi-monthly period and 190 hours for each month in which an hour of service would be required to be credited under 29 C.F.R. §2530.200b-2.

*Husband-and-Wife Pension* ... Plan 7.06.

*Husband-and-Wife Pension with Pop-up Option*... Plan 7.06, 8.02(c), 8.02(d).

*Industry Service*... Plan 7.17(a).

*Initial Unfunded Vested Liability*... Plan 11.08.

*Insolvency Reduction*... Plan 11.22 and ERISA 4225.

*Investment Manager*... a registered investment adviser under the Investment Advisers Act of 1940, a bank (as defined in the Investment Advisers Act of 1940) or insurance company (qualified to manage, acquire or dispose of Plan assets under the laws of more than one state) which has agreed to perform investment services with respect to Plan assets and acknowledged its status as a fiduciary in writing.

*IRC* ... the Internal Revenue Code of 1986, as amended.

*IUPAT Pension Reciprocal Agreement*... the Reciprocal Agreement for Joint Industry Pension Funds for All District Councils and Local Unions Affiliated with the International Brotherhood of Painters and Allied Trades.

**IUPAT INDUSTRY PENSION PLAN**          <u>PAGE 89</u>

*Joint and Survivor Option*... Plan 8.02.

*Key Employee* ... a Non-Bargained Employee of an Employer described in IRC 416(i)(1)

*Late Retirement Pension*... Plan 6.04, 6.05.

*Limitation Employer*... Plan 12.05.

*Local Union* .. a local union affiliated with the International Union of Painters and Allied Trades, formerly known as the International Brotherhood of Painters and Allied Trades.

*Lump Sum Payment Option*... Plan 8.06.

*Non-Bargained Employee* .. an Employee who is not a Union Employee

*Noncovered Employment* ...

(a) employment in the Painters and Allied Trades Industry,

(b) on or after January 1, 1990,

(c) for a person or organization which does not have, or self-employment which is not covered by, a Collective Bargaining Agreement with the Union.

*Non-Key Employee* ... any Non-Bargained Employee of an Employer other than a Key Employee.

*Normal Retirement Age* ...Plan 6.02.

*Normal Retirement Date* ... the first day of the month after a Participant reaches Normal Retirement Age.

*Normal Retirement Pension* ... Plan 6.03.

*One-Year Break* ... Plan 4.07.

*Optional Form*... Plan 8.02, 8.03, 8.04, 8.05, 8.06 or, with respect to a Participant with a Spouse, the Guaranteed Five-Year Pension.

*Painters and Allied Trades Industry* ...any and all types of work:

(a) covered by Collective Bargaining Agreements to which the Union and/or any Local or District Council are a party;

(b) under the trade jurisdiction of the Union, as that trade jurisdiction is described in the Union's Constitution; or,

(c) to which an Employee has been assigned or referred, or can perform because of his skill and training as an Employee covered by a Collective Bargaining Agreement between the Union and an Employer.