## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND )<br><br>Plaintiff, )<br><br>v. )<br><br>URBAN ENTERPRISES, INC., *et al.* )<br><br>Defendants. ) | CIVIL ACTION NO.<br>1:06-cv-1603 (JDB) |

## PLAINTIFF'S  REQUEST FOR PRODUCTION OF DOCUMENTS (FIRST SET) DIRECTED TO URBAN ENTERPRISES, INC.

Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Plaintiff"),

asks that defendant Urban Enterprises, Inc. produce for inspection and copying the documents

identified in Section 3.  Production shall be made within thirty (30) days at the offices of

Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor, 510 Walnut Street, Philadelphia,

PA 19106-3683 beginning at 10:00 A.M. and continuing as necessary in accordance with Rule

34 of the Federal Rules of Civil Procedure.

## SECTION 1.  INSTRUCTIONS

In responding to this request for production of documents, please follow these

instructions.

1.01    **Response and Duty to Investigate**.  You must respond to this request for production of

documents by producing the designated documents at the offices of Jennings Sigmond, P.C. You

must produce all documents which are available to you or which may be discovered by you from

your files, attorneys, agents and others subject to your direction, control or cajole.  You must

make a diligent investigation of all files and records available to you.  You may mail or deliver

EXHIBIT
C2

copies of the designated documents before the due date instead of appearing with originals at the scheduled time.  Any request to change the time or place for production should be directed to the undersigned counsel. The original documents are to be produced as they are kept in the usual course of business and must be organized or labeled to correspond with paragraphs (and sub-paragraphs) in Section 3.

1.02    **Supplementary Response and Incomplete Answers.**  This Request for Production of Documents is to be regarded as continuing past the date of your original response.  If additional documents become available to you or any other person subject to your direction or control, you must produce them for inspection and copying (or deliver copies) within ten (10) days after receipt of the new documents.  If you cannot find a document after exercising due diligence to secure it, identify the missing document in your response, state the reasons for its omission and identify any other possible sources or means of obtaining the document.

1.03    **Burdensome Production.**  If you object to production of a document or category of documents on the ground that it is burdensome, please provide any summaries or easily accessible documents within the spirit of the request.  Your response must include an objection to the requested production and explain the reasons for your objection.

1.04    **Claims of Privilege.**  If you claim that a designated document is privileged, your response must include an objection and the reasons for the objection.  It should:  (1) identify the information or document subject to the claim of privilege with sufficient particularity to allow Plaintiffs to bring this matter before the Court; (2) state the nature of the privilege asserted; and (3) describe in detail the factual basis for the claim of privilege.  In particular, if you claim the attorney-client privilege, identify the speaker or author of the communication, the capacity and situation in which the speaker or author was acting when he made the communication, all

180493-1                                                2

recipients of a document or persons present at the making of the communication and the date of the communication.

1.05    **Construction.**  This Request for Production of Documents shall be construed to secure the speedy and efficient discovery of pertinent material in accordance with the basic sense of each request and the dictates of common sense.  The production of more than eight (8) square feet of documents is prohibited unless efforts to separate summaries from raw data are shown to be impracticable.

1.06    **Rules of Construction.**   The following rules of construction apply to this Request for Production of Documents.

(a)    The conjunction "and" is also to be interpreted disjunctively.

(b)    The disjunctive "or "is also to be interpreted conjunctively.

(c)    The present tense of a verb includes the past tense and _vice versa_.

(d)    Use of the singular includes the plural and _vice versa_.

(e)    Use of the masculine gender includes the feminine gender and _vice versa_.

(f)    Use of any of the functional words "each," "every," "any" and "all" includes each of the other functional words.

(g)    Use of any conjunction of the verb "to include" is illustrative and not limiting.

## SECTION 2.  DEFINITIONS

As used in this Request for Production of Documents,

2.01    "Audit Report" shall mean the report generated by Moore, Renner & Simonin, P.C. detailing the results of the audit conducted on Defendants' books and records for the period August 1, 2004 through September 30, 2005.  A true and correct copy of the Audit Report is attached as Exhibit 1.

2.02    "Complaint" shall mean the Complaint filed in this matter.

2.03    "Contested Period" means August 1, 2004 through the present.

2.04    "Describe in detail" or "state the reason" means to:

      (a)    Describe fully by reference to underlying facts rather than by ultimate facts, conclusions of law or unexplained assumptions or determinations;

      (b)    Particularize as to:

           (1)    time;

           (2)    place; and

           (3)    manner.

      (c)    Identify all Documents relevant to your response.

2.05    "Document" or "Documents" means any written, recorded (visual or auditory), reproduced, filmed or graphic matter on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media.  It includes, without limitation, memoranda, computer printouts, financial summaries, microfilm and microfiche records, notes, minutes, records, photographs, correspondence, telegrams, news releases, diaries, bookkeeping entries, financial statements, tax returns, checks, check stubs, reports, studies, charts, graphs, statements, notebooks, handwritten notes, applications, agreements, books, pamphlets, periodicals, appointment calendars, notes, records and recordings of oral conversations, work papers and any other writings or documentary material of any nature whatsoever, together with any attachments and enclosures.  Copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise, and drafts leading to a final document are considered separate Documents from the original or final version of an item.

2.06    "Employee" means:

      (a)    Any Officer of a corporation or former Officer or employee with an ongoing consulting relationship or contract with the Organization; and

(b)    Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.

2.07    "Fund" means International Painters and Allied Trades Industry Pension Fund.

2.08    The term "Identify" when used with reference to a Document means to state:

(a)    The type of Document (e.g., memorandum, employment application, letter, etc.);

(b)    Its date or the regular period (annual, quarterly, monthly) for which the type of Document is prepared;

(c)    Its author (and if different, the originator and signer) or operational division or personnel responsible for preparation of a type of Document;

(d)    The title, heading or other designation, numerical or otherwise, of the Document;

(e)    The Persons (or if widely distributed, set forth the organization or classes or Person) to whom the Document was sent;

(f)    The present or last known location of the Document and of each copy with unique notations or markings;

(g)    A description, in detail, of the substance of the Document;

(h)    If any such Document was, but no longer is, in your possession or subject to your control, the disposition which was made of it, the reason for the date of such disposition; and

(i)    If you are no longer in possession of the original or a copy, the name, address and telephone number of the custodian of the original or copy.

2.09    "Interrogatories" means the Plaintiff's Interrogatories (First Set) Directed to all Defendants.

2.10    "Labor Contract" means the Collective Bargaining Agreement by and between District Council 711, International Painters and Allied Trades. A true and correct copy of the Labor Contract is attached as Exhibit 2.

2.11    "G. Russo" means Gary Russo, an individual defendant in this action.

2.12    "Officer" means the president, vice-president, general manager, treasurer, secretary and comptroller of a Corporation and any other Person who performs duties corresponding to those normally performed by Persons occupying such positions even though such Person may no longer be serving in such capacity.

2.13    "Organization" means a sole proprietorship, Partnership, trust, estate, Corporation or business.

2.14    "Person" or "Persons" means all individuals and entities, including without limitation individuals, representatives of persons, associations, companies, Corporations, Partnerships, limited partnerships, joint ventures, trusts, estates, public agencies, departments, divisions, subdivisions, subsidiaries, bureaus and boards.

2.15    "Project Agreement" means the Collective Bargaining Agreement By and Between District Council 711, International Painters and Allied Trades for work down on the Steen School project in Bogota, New Jersey.  A true and correct copy of the Project Agreement is attached as Exhibit 3.

2.16    "Record" or "Records" shall include any regular, formal or non-formal, official or non-official, memorandum or written preservation of any event, actions taken and details thereof inquiring into in these Interrogatories. A copy of the original of the "Record" is preferred; giving the substance of such "Records" will suffice where a copy is not available.

2.17    "Relating to", "relate to", "evidence", "referring to", "refer to" and "regarding" mean constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing or concerning directly or indirectly.

2.18    "Request for Admissions" means Plaintiff's Request for Admissions (First Set) Directed

to all Defendants.

2.19    "Rure" means Rure Associates, Inc. d/b/a GSR Architectural, Inc. d/b/a GSR

Architectural Windows and any and all of its past or present officers, agents, attorneys,

accountants, shareholders, representatives, employees, affiliates, brokers or any other individuals

or organizations acting with it or on its behalf.

2.20    "Union" means District Counsel 711, International Union of Painters and Allied Trades.

2.21    "Urban" means Urban Enterprises, Inc. and any and all of its past or present officers,

agents, attorneys, accountants, shareholders, representatives, employees, affiliates, brokers or

any other individuals or organizations acting with it or on its behalf.

2.22    "You" or "Your" means the party to whom these Interrogatories are directed and includes

all other Persons including, but not limited to, attorneys and accountants, acting, or purporting to

act, on behalf of or in service of said party.

## SECTION 3   REQUEST FOR DOCUMENTS

3.01    Any and all collective bargaining agreements executed or otherwise agreed to by Urban,

either directly, or through an employer association authorized to bargain on Urban's behalf, with

the Union that were in effect during all or any part of the Contested Period.

3.02    Any and all collective bargaining agreements executed or otherwise agreed to by Urban,

either directly, or through an employer association authorized to bargain on Urban's behalf, with

any union representing Urban's employees that were in effect during all or any part of the

Contested Period.

3.03    All documents identifying Persons and Organizations employed by Urban either as direct

Employees or subcontractors during the Contested Period.

3.04    All time cards, time reports, individual earnings records, payroll ledgers, payroll journals, earnings reports and master payroll earnings summaries including information on each and all persons employed by Urban as direct Employees or subcontractors during the Contested Period.

3.05    All daily time sheets or other type of work report(s) covering the Contested Period that show for each Employee and subcontractor, the date he worked, the job/project on which he worked and the location of the project.

3.06    All documents including information about job titles or job classifications of Employees of Urban in the Contested Period.

3.07    All payroll tax submissions (with all addendums, attachments or amendments) submitted by Urban during the Contested Period to any municipal, state and/or federal taxing authority.

3.08    All quarterly unemployment compensation returns filed by Urban with Pennsylvania, New Jersey, Delaware and any other state in which Urban conducted business in the Contested Period.

3.09    All Forms W-2, W-3, 1096 and 1099 issued or filed by Urban in the Contested Period.

3.10    All documents identifying projects/jobs on which Urban performed any services or to which Urban delivered any materials in the Contested Period, including documents that will identify the name of each project/job, its location, the date(s) the work was performed or materials delivered, and the identity of Urban's Employees who performed the services.

3.11    Invoices (including all attachments) and any other type of documents which show the amount billed and the nature of services provided by Urban on each  project/job on which it performed or provided any services in the Contested Period.

3.12    All general ledgers, cash disbursement journals, check registers and check disbursement journals, petty cash journals, payroll journals, canceled checks and receipts for cash payments

180493-1                                               8

issued, prepared or maintained by or on behalf of Urban in the Contested Period.

3.13    All accounts payable and accounts receivable ledgers maintained by Urban in the Contested Period and all invoices relating to amounts set forth in the ledger(s).

3.14    All documents evidencing, referring to and/or relating to check disbursements or cash disbursements made by Urban in the Contested Period.

3.15    All remittance reports, checks, correspondence or other documents which Urban forwarded to the Funds and/or Local in the Contested Period.

3.16    All correspondence or other documents which Urban received from the Funds and/or Local in the Contested Period.

3.17    All remittance reports and checks submitted by or on behalf of Urban to employee benefit plans other than the Funds in the Contested Period.

3.18    All documents setting forth, evidencing, relating to or referring to the rate of pay received by each of Urban's Employees during the Contested Period.

3.19    All contracts, subcontracts or other agreements between Urban and any Person, Corporation, partnership or Organization other than Rure which evidence, refer or relate to work performed (or to be performed) by Urban during the Contested Period.

3.20    All contracts, subcontracts or other agreements between Urban and Rure which evidence, refer or relate to work performed (or to be performed) by Urban during the Contested Period.

3.21    All corporate tax returns filed by or on behalf of Urban for the years 2004, 2005 and 2006 with any State in which Urban did business.

3.22    All employment personnel files and other documents that include, without limitation, information concerning dates of hire and termination, job classification and wage rates for each Employee of Urban.

180493-1                                         9

3.23   All bank statements, check registers and cancelled checks for all of Urban's open and closed bank accounts including, without limitation, payroll, operations, field, general and petty cash, covering Contested Period.

3.24   All contracts or other documents relating to Urban's performance of work during the Contested Period.

3.25   Correspondence files and job files for all projects/jobs on which Urban performed any work in the Contested Period.

3.26   All documents relating to payments from Urban to Rure including documents that set forth, describe or explain the purpose of the payment.

3.27   All documents relating to Urban's use of any of Rure's employees, including documents that relate to the reason that Rure's employees perform(ed) services for Urban and the method of payment for their services.

3.28   All documents relating to any past or present financial interest of the owners and/or officers of Urban in Rure.

3.29   All documents that evidence, refer or relate to oral and written communications between Urban and Rure.

3.30   All documents relating to loans from Rure to Urban.

3.31   All documents relating to financial obligations of Rure that were, in whole or in part, paid directly or indirectly by Urban.

3.32   To the extent not otherwise produced, all documents that evidence, refer or relate to financial transactions of any nature between Urban and Rure.

3.33   Any and all documents not otherwise provided as a result of a request made herein which evidence, relate or refer to Urban's payment of money or other thing of value to Persons or

Organizations employed as subcontractors by Urban during the Contested Period.

3.34    Any and all documents not otherwise provided as a result of a request made herein which evidence, refer or relate to payment of money or other thing of value to Persons or Organizations who supplied materials to Urban during the Contested Period.

3.35    To the extent not otherwise provided as a result of a request made herein, any and all documents evidencing, relating to or referring to payments of money or other thing of value made to Employees of Urban in the Contested Period and all documents evidencing the basis for such payments.

3.36    Correspondence files for all projects on which Urban performed any work in the Contested Period.

3.37    Any and all Workers' Compensation audits and employee classifications for Urban for the Contested Period.

3.38    Any and all job reports or job site labor distribution records maintained by Urban for projects or job sites on which Urban performed any service for any person, firm or corporation in the Contested Period.

3.39    All cash receipt journals and records of deposits maintained by Urban during the Contested Period.

3.40    Any and all documents identifying any subcontractor hired by or on behalf of and/or paid by Urban during the Contested Period, including but not limited to subcontracts, invoices, proposals, bids, and cancelled checks.

3.41    Any and all documents identifying suppliers/material providers used and/or paid by Urban, including purchase orders and cancelled checks.

3.42    List of all Urban's projects and/or jobs, including the related job cost records during the

180493-1                                                11

Contested Period.

3.43    Any and all documents related to jobs on which Urban performed any work during the Contested Period, including but not limited to contracts, proposals, invoices, bids, waivers of lien and any documents reflecting or designating the job, for whom it was performed, the nature of the work performed, the location and the individuals and/or subcontractors who actually performed the work on that job.

3.44    Any and all documents relating to equipment, tools and/or vehicles owned, leased, rented or used by Urban during the Contested Period, including but not limited to title documents, lease agreements, rental agreements and any other agreements entered into for the use of such equipment, tools and/or vehicles.

3.45    Any and all documents reflecting or relating to the types of insurance coverage maintained by Urban during the Contested Period, including but not limited to workers' compensation, business liability and auto insurance policies.

3.46    Any and all documents relating to business licenses or any type of license obtained by Urban.

3.47    Copies of the following for Urban:

(a)    Articles of Incorporation and Certificate of Incorporation or state Corporate Registration Certificate including all amendments;

(b)    Annual reports and other documents filed with the New Jersey Secretary of State or Secretary of State of any other state in which Urban operates;

(c)    Bylaws of the corporation and all amendments;

(d)    All corporate documents of Urban from incorporation to the present;

(e)    Stock certificates issued by Urban or, in lieu of the actual certificates, the stock

register or other securities;

(f)     Minutes of all regular meetings and special meetings of the Board of Directors

from the date of incorporation to the present;

(g)     Minutes of all regular and special meetings of the stockholders of Urban from the

date of incorporation to the present;

(h)     Statements of dividends paid to stockholders from the date of incorporation to the

present;

(i)     All documents relating to the capitalization of Urban;

(j)     All documents relating to any loan from Urban to any officer or person having an

ownership interest in Urban;

(k)     All documents relating to any loan to Urban from any officer or person having an

ownership interest in Urban.

3.48    All federal income tax forms in the following series (including all Schedules and

attachments) filed by Urban individually or on a consolidated basis with other business entities

for the years 2004, 2005 and 2006:

(a)     Form 1040 (Individual Income Tax Return), including Schedules B and E.

(b)     Form 1120 (Corporate Income Tax Return).

(c)     Form 1065 (Partnership Information Return).

(d)     Form K-1 (Information Return to Partner or Beneficiary of Trust or Estate).

(e)     Form 1041 (Income Tax Return of Estate or Trust).

(f)     Forms 940, 941 (Employment Tax Returns and Depository Reports).

(g)     Form 5500 (Information Return of Employee Benefit Plan).

(h)     State Unemployment Compensation Forms.

3.49    Audited or unaudited financial statements prepared by an independent accountant or, in the absence of such reports, unaudited financial statements or similar documents including all documents reflecting the business finances, assets and liabilities of Urban during the Contested Period.

3.50    All documents relating to the making and adjudicating of employee grievances with Urban during the Contested Period.

3.51    All documents relating to the assignment of any contracts or subcontracts between Urban and Rure.

3.52    All documents relating to the assumption of any of Urban's contracts or subcontracts by Rure.

3.53    All documents relating to the assumption of any of Rure's contracts or subcontracts by Urban.

3.54    All documents relating to any of Urban's contracts or subcontracts on which Rure performed any work.

3.55    All documents relating to any of Rure's contracts or subcontracts on which Urban performed any work.

3.56    All documents relating to the purchase, sale, lending, leasing, rental, transfer of any assets between Urban and Rure, including all documents relating to any business transactions between Urban and Rure.

3.57    All documents which either support or refute that Rure is the alter ego of Urban.

3.58    All documents provided to a bank or other financial institution with respect to any loan(s) or loan application(s) by Urban during the Contested Period.

3.59    Any pass books, account statements, cancelled checks or similar documents from banks,

brokers, mutual funds, savings and loan associations and other financial institutions that relate to Urban during the Contested Period.

3.60    Urban's bank statements for all accounts during the Contested Period.

    (a)    For each deposit on the bank statements, records indicating the name of the customer from whom the money was received.

    (b)    Sales invoices, contracts and/or other supporting receipts pertaining to said deposits.

3.61    All certificates of title to motor vehicles.

3.62    Sales journals for the Contested Period.

3.63    To the extent not produced in response to any other request in this Request for Production of Documents, any and all documents relating to transactions of any nature whatsoever between Urban and Rure.

3.64    To the extent not already done, produce all documents you are identifying in response to the Interrogatories.

                    Respectfully submitted,

                    JENNINGS SIGMOND, P.C.

                    BY:_____

                    SANFORD G. ROSENTHAL (ID NO. 478737)
                    ELIZABETH A. COLEMAN
                    (Admitted Pro Hac Vice)
                    The Penn Mutual Towers, 16th Floor
                    510 Walnut Street, Independence Square
                    Philadelphia, PA 19106-3683
                    (215) 351-0611/0644

Date: March 6, 2007          Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I state under penalty of perjury that I served the foregoing Plaintiffs' Request for

Production of Documents Directed to Urban Enterprises, Inc. (First Set) by mailing same first

class mail, postage prepaid, on the date listed below to:

Eric Stuart, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Avenue
Suite 402
Morristown, NJ 07960

Date: March 6, 2007

ELIZABETH A. COLEMAN

180493-1

**URBAN ENTERPRISES, INC.**
**200 MOUNTAIN AVENUE**
**MIDDLESEX, NJ 08846**
**PH: 732-356-0543**

**LOCAL: GO 711**

**DATE OF REVIEW: 2/6/07**

**PERIOD REVIEWED: 8/1/04 – 9/30/05**

**CONTACT: LINDA BRINKER**

**ROBERT E. MOORE, CPA**

EXHIBIT
1

URBAN ENTERPRISES, INC.
NOTES TO REPORT

1.   Our review was conducted at the employer's office.  Available records included payroll earnings records, payroll tax returns and W-2's.

2.   Amounts paid the Fund – Review period                       $14,755.06

Summary of amounts due the Fund

|  | Pension | Annuity | FTI | LMCI | PAT | Total |
|---|---|---|---|---|---|---|
| Total deficiencies | $ 756.00 | $908.56 | $11.55 | $11.55 | $16.17 | $1,703.83 |
| Cost of audit | 2,277.20 | -- | 16.31 | 16.31 | 21.47 | 2,331.29 |
| Interest | 205.03 | -- | 1.35 | 1.35 | 1.93 | 209.66 |
| Total | $3,238.23 | $908.56 | $29.21 | $29.21 | $39.57 | $4,244.78 |

The above deficiencies represent incremental hours only.  In addition to the above amounts, the Fund has reports totaling $63,080.43 that are unpaid covering the period 2/01/05 – 9/30/05.  Of this amount, $1,397.95 represents contributions on wages paid by GSR Architectural, Inc., which became the successor employer to Urban Enterprises, Inc., and is not signatory to the CBA.

3.   Interest in the amount of $209.66 has been calculated from the due date of the report where each deficiency was rated through 2/20/07 as follows:

|  |  |  |
|---|---|---|
| 10/1/04 | 3/31/05 | 5% |
| 4/1/05 | 9/30/05 | 6% |
| 10/1/05 | 6/30/06 | 7% |
| 7/1/06 | 2/20/07 | 8% |

URBAN ENTERPRISES
2005 DC 711 WAGES PAID

| SSN | NAME | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | J. Leon | | | | | | | | 2,232.00 | | | | | 2,232.00 |
| 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 | A. Owens | | | | | | | | 1,016.80 | | | | | 1,016.80 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| TOTAL | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,248.80 | 0.00 | 0.00 | 0.00 | 0.00 | 3,248.80 |

DOLLAR AMOUNTS DUE

| FUND | DATE | RATE | DATE | RATE | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL DOLLARS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 5/05 | 0.04 | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $129.95 | $0.00 | $0.00 | $0.00 | $0.00 | $129.95 |
| TOTAL | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $129.95 | $0.00 | $0.00 | $0.00 | $0.00 | $129.95 |

TOTALS DUE

| | |
|---|---|
| Due to Annuity | $129.95 |
| | $129.95 |

URBAN ENTERPRISES
2005 HOURS WORKED DC 711

| SSN | NAME | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | J. Leon | | | | | | | | 8.00 | | | | | 8.00 |
| 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 | A. Owens | | | | | | | | 40.00 | | | | | 40.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| TOTAL | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48.00 |

DOLLAR AMOUNTS DUE

| FUND | DATE | RATE | DATE | RATE | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL DOLLARS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | 5/05 | 0.50 | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24.00 |
| FTI | 5/05 | 0.05 | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.40 | $0.00 | $0.00 | $0.00 | $0.00 | $2.40 |
| PAT | 5/05 | 0.07 | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3.36 | $0.00 | $0.00 | $0.00 | $0.00 | $3.36 |
| Industry Advancement | 5/05 | 0.05 | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.40 | $0.00 | $0.00 | $0.00 | $0.00 | $2.40 |
| TOTAL | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $32.16 | $0.00 | $0.00 | $0.00 | $0.00 | $32.16 |

TOTALS DUE

| | |
|---|---|
| Due to Pension | $24.00 |
| Due to FTI | $2.40 |
| Due to PAT | $3.36 |
| Due to Industry Advancement | $2.40 |
| | $32.16 |

URBAN ENTERPRISES
2005 DC 711 WAGES PAID

| SSN | NAME | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | B. Cooke | -400.60 | | | | | | | | | | | | -400.60 |
| 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 | D. Hand | -81.00 | | | | | | | | | | | | -81.00 |
| 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 | W. O'Neill | | | | | 220.00 | | | | | | | | 220.00 |
| 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 | J. Eldridge | | | | | | | 1,240.00 | | | | | | 1,240.00 |
| 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 | K. Peters | | | | | | | 384.00 | 982.00 | | | | | 1,366.00 |
| 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 | R. Liput | | | | | | | | 62.00 | 496.00 | | | | 558.00 |
| 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 | M. Rhodes | | | | | | | | 102.75 | | | | | 102.75 |
| | | | | | | | | | | | | | | 0.00 |
| TOTAL | | -481.60 | 0.00 | 0.00 | 0.00 | 220.00 | 0.00 | 1,624.00 | 1,146.75 | 496.00 | 0.00 | 0.00 | 0.00 | 3,025.15 |

DOLLAR AMOUNTS DUE

| FUND | DATE | RATE | DATE | RATE | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL DOLLARS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 1/05 | 0.11 | 5/05 | 0.12 | ($50.78) | $0.00 | $0.00 | $0.00 | $26.40 | $0.00 | $194.88 | $137.61 | $59.52 | $0.00 | $0.00 | $0.00 | $367.63 |
| TOTAL | | | | | ($50.78) | $0.00 | $0.00 | $0.00 | $26.40 | $0.00 | $194.88 | $137.61 | $59.52 | $0.00 | $0.00 | $0.00 | $367.63 |

TOTALS DUE

Due to Annuity    $367.63

$367.63

URBAN ENTERPRISES
2005 HOURS WORKED DC 711

| SSN | NAME | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | B. Cooke | -8.00 | | | | | | | | | | | | -8.00 |
| 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 | D. Hand | -2.00 | | | | | | | | | | | | -2.00 |
| 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 | W. O'Neil | | | | | 16.00 | | | | | | | | 16.00 |
| 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 | J. Eldridge | | | | | | | 40.00 | | | | | | 40.00 |
| 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 | K. Peters | | | | | | | 16.00 | 32.00 | | | | | 48.00 |
| 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 | R. Liput | | | | | | | | 2.00 | 16.00 | | | | 18.00 |
| 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 | M. Rhodes | | | | | | | | 3.00 | | | | | 3.00 |
| | | | | | | | | | | | | | | 0.00 |
| TOTAL | | -10.00 | 0.00 | 0.00 | 0.00 | 16.00 | 0.00 | 56.00 | 37.00 | 16.00 | 0.00 | 0.00 | 0.00 | 115.00 |

DOLLAR AMOUNTS DUE

| FUND | DATE | RATE | DATE | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL DOLLARS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | 1/05 | 4.00 | | ($40.00) | $0.00 | $0.00 | $0.00 | $64.00 | $0.00 | $224.00 | $148.00 | $64.00 | $0.00 | $0.00 | $0.00 | $460.00 |
| FTI | 1/05 | 0.05 | | ($0.50) | $0.00 | $0.00 | $0.00 | $0.80 | $0.00 | $2.80 | $1.85 | $0.80 | $0.00 | $0.00 | $0.00 | $5.75 |
| PAT | 1/05 | 0.07 | | ($0.70) | $0.00 | $0.00 | $0.00 | $1.12 | $0.00 | $3.92 | $2.59 | $1.12 | $0.00 | $0.00 | $0.00 | $8.05 |
| Industry Advancement | 1/05 | 0.05 | | ($0.50) | $0.00 | $0.00 | $0.00 | $0.80 | $0.00 | $2.80 | $1.85 | $0.80 | $0.00 | $0.00 | $0.00 | $5.75 |
| TOTAL | | | | ($41.70) | $0.00 | $0.00 | $0.00 | $66.72 | $0.00 | $233.52 | $154.29 | $66.72 | $0.00 | $0.00 | $0.00 | $479.55 |

TOTALS DUE

| | |
|---|---|
| Due to Pension | $460.00 |
| Due to FTI | $5.75 |
| Due to PAT | $8.05 |
| Due to Industry Advancement | $5.75 |
| | $479.55 |

URBAN ENTERPRISES
2004 HOURS WORKED DC 711

| SSN | NAME | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | B. Cooke | | | | | | | | | 8.00 | | | 14.00 | 22.00 |
| 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 | J. Plaskosta | | | | | | | | | 32.00 | | | | 32.00 |
| 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 | D. Hand | | | | | | | | | | | | 14.00 | 14.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 0.00 | 0.00 | 28.00 | 68.00 |

DOLLAR AMOUNTS DUE

| FUND | DATE | RATE | DATE | RATE | DATE | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL DOLLARS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pension | 8/04 | 4.00 | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $160.00 | $0.00 | $0.00 | $112.00 | $272.00 |
| FTI | 8/04 | 0.05 | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.00 | $0.00 | $0.00 | $1.40 | $3.40 |
| PAT | 8/04 | 0.07 | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.80 | $0.00 | $0.00 | $1.96 | $4.76 |
| Industry Advancement | 8/04 | 0.05 | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $2.00 | $0.00 | $0.00 | $1.40 | $3.40 |
| | | | | TOTAL | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $166.80 | $0.00 | $0.00 | $116.76 | $283.56 |

TOTALS DUE

| | |
|---|---|
| Due to Pension | $272.00 |
| Due to FTI | $3.40 |
| Due to PAT | $4.76 |
| Due to Industry Advancement | $3.40 |
| | $283.56 |

**URBAN ENTERPRISES**
**2004 DC 711 WAGES PAID**

| SSN | NAME | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | G. Capone | | | | | | | | | 1,220.00 | | | | 1,200.00 |
| 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 | B. Cooke | | | | | | | | | 195.10 | | | 704.55 | 899.65 |
| 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 | J. Plakosta | | | | | | | | | 976.00 | | | | 976.00 |
| 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 | D. Hand | | | | | | | | | | | | 640.50 | 640.50 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | 0.00 |
| TOTAL | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,391.10 | 0.00 | 0.00 | 1,345.05 | 3,736.15 |

**DOLLAR AMOUNTS DUE**

| FUND | DATE | RATE | DATE | RATE | JAN. | FEB. | MARCH | APRIL | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | TOTAL DOLLARS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 8/04 | 0.11 | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $263.02 | $0.00 | $0.00 | $147.96 | $410.98 |
| TOTAL | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $263.02 | $0.00 | $0.00 | $147.96 | $410.98 |

**TOTALS DUE**

| | |
|---|---|
| Due to Annuity | $410.98 |
| | $410.98 |

**LOCAL UNION** DC711

**DATES** 5/1/00  4/30/06

**PENISON PAGES** 12, 18, 19, 20, 26, 32, 33

5/1/00 Pen #3.00 Ann 12%  5/1/01 Pen #3.30 Ann 12%
5/1/02 Pen #3.60 Ann 12%  5/1/03 Pen #3.90 Ann 12%

**RATES** 5/1/04 Pen #4.20 Ann 12%
5/1/05 Pen #4.50 Ann 12%

**MODEL CLAUSE** ✓

50% JC ✓ SC ✓

No pen 1st yr Appr6

Printer union
27916. cba

EXHIBIT

2

DC0711 LOCAL INFORMATION

LOCATION : PLEASANTVILLE NJ/PTG CONTR  CONSTRUCTION

```
STATUS          : A          RPTDUE DAY  : 00    REGION    : 2  ADM:
AGREEMENT DATE : 19960501    MODEL    CL: Y      COUNTRY   : U
AGREEMENT EXP  : 20010430    ROLLOVER CL: N      BENEFIT LV : M
PARTICIPATION  : 19670601    SUBCONTR CL: N      RFORMS    : NO ENVELOPES
MERGER DATE    : 19950501    OUTOF AREA CL: N    STAT EFFEC : 00000000
```

MESSAGES: BEFORE 5/1/00 GRANDFATHER RATES  PEN $.25  ANN $.57
         1ST YR APPRS NO PEN OR ANN (D RATE PEN $.30 ANN $.30 EFF 5/00
         2ND YR APPRS PEN $.50   ANN 4% GROSS  PEN $1.14
         3RD YR APPRS PEN $1.00  ANN 8% GROSS  PEN $2.28

| | PEN. TYPE | PENSION RATE | ANN. TYPE | ANNUITY RATE | TOTAL RATE | PCENT % | BEG. DATE | END DATE |
|---|---|---|---|---|---|---|---|---|
| CURRENT | H | 03.00 | P | 12.00 | 03.00 | 00.00 | 2000/05/01 | 2010/12/31 |
| HISTORY | H | 02.50 | P | 12.00 | 02.50 | 00.00 | 1997/05/01 | 2000/04/30 |
| HISTORY | H | 02.50 | P | 07.50 | 02.50 | 00.00 | 1996/05/01 | 1997/04/30 |



## TABLE OF CONTENTS

**Article**                                                              **Page**

1   Recognition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2   Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3   Union Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4   Administrative Dues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5   Exclusive Hiring Hall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6   Wages and Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7   Hours & Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

8   Contractual Relations and Obligations . . . . . . . . . . . . . . . . . . 28

9   Working Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

10   Fringe Benefit Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

11   Cooperation and Advancement Funds . . . . . . . . . . . . . . . . . . 33

12   Political Action Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

13   Joint Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

14   Union Representatives and Shop Stewards . . . . . . . . . . . . . . . 35

16   Preservation of Work Clause . . . . . . . . . . . . . . . . . . . . . . . . . . 36

17   Joint Trade Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

18   Successor Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

19   General Savings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

20   Duration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40



(A) Employ not less than 50% of the employed on such work from the residents of the area where they work is performed or from among the persons who are employed the greater percentage of their time in such area; any others shall be employed from the contractor's home area.

(B) Comply with all lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits, and procedure for settlement of grievances; provided, however, employees brought into an outside jurisdiction by employers shall be entitled to receive the wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees.

1.8 An employer shall not engage in work covered by the agreement through the use of device of another business or corporation which such an employer owns or controls through the use or device of a joint venture with another employer or contractor without first consulting with the Union to establish to the Union's satisfaction that the use of such device is not for the purpose of taking advantage of lower wages or conditions in effect in the area where said device is sought to be used. If the Union is not so satisfied, it may resort to all legal or economic recourse, including cancellation of this agreement with said employer, not withstanding any other provision of this agreement.

1.9 An employer from another territorial jurisdiction who has work to be performed in the territory of District Council 711 and seeks persons to perform the work, shall employ persons from the registration list in the ratio of one (1) person from said list to one (1) person from other sources.

1.10 Employees covered by this agreement have the right to respect any legal picket line validly established by a bona fide labor organization; the Union has the right to withdraw employees subject to this agreement if the employer is involved in a legitimate primary labor dispute with a bona fide labor organization.

(A) It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, if any employee refuses to perform any service which his or her employer undertakes to perform for an employer or person whose employees are on strike, and which service, but for such strike, would be performed by the employees of the employer or person on strike.

2



3. The application of relief, stucco, plaster or decorative work shall not be considered paperhangers' work exclusively.

(C) All persons engaged in applying or removing paints, pigments, extenders, metal primers and metal pigments, clear pigments, binders, thinners and dryers, primers and sealers, oil paints and enamels, chemical and epoxy coatings, water colors and emulsions clear coatings, waxes, stains, mastics, cement enamels and other special coatings, plastics, adhesives, coating and sheet rubber and other linings, oils, varnishers, water colors, wall paper, wall coverings, decorative textures on all surfaces, foams, seamless and tile-like coatings or other materials used in the various branches of the trade, and the cleaning and beaching of all interior, and exterior walls and surfaces with liquid steam, sandblast, waterblast or any other process.

(D) Glaziers, Architectural Metal and Glass Workers: General Glazing will include, but not be limited to: (1) the installation, setting, cutting, preparing, fabricating, distributing, handling or removal of the following: art glass, prism glass, beveled glass, leaded glass, automotive glass, protection glass, plate glass, window glass, colored glass, figured glass, vitrolite glass, carrara glass, all types of opaque glass, glass chalk boards, structural glass, curtainwall systems, louvers, tempered and laminated glass, thiokol, neoprene, all types of insulating glass units, all plastics or other similar materials when used in place of glass to be set or glazed in its final resting place with or without putty, vinyl, molding, rubber, lead, sealants, silicone and all types of mastics in wood, iron, aluminum, sheet metal or vinyl sash, skylights, doors, frames, stone wall cases, show cases, book cases, sideboards, partitions and fixtures; (2) the installation of the above materials when in the shop or on the job site, either temporary or permanent, on or for any building in the course of repair, removal, alteration, retrofit or construction; (3) the installation and welding of all extruded, rolled or fabricated materials including, but not limited to, all metals, plastics and vinyls, or any materials that replace same, metal and vinyl tubes, mullions, metal facing materials, corrugated flat metals, aluminum panels, muntins, facia, trim moldings, porcelain panels, architectural porcelain, plastic panels, unitized panels, skylights, showcase doors, all handrails and relative materials, including those in any or all types of building related to store front, door/window construction and curtain wall

4



materials of a reflective nature used in the sign field for advertising or decorative purposes.

All operations involving cutting, bending, trimming and adhesion of plastic or other transparent, translucent or any other material used as a sign face background, also porcelain, enamel or force dried object when used for identification or advertising purposes and control of all sign handling, erecting and other necessary operation, pertaining to the same; theatrical and lobby displays, also all sketched whether made by pencil, ink, paints or by coloring material be it on hand or by any other method process.

(G)    Display Convention and Show Decorators:
This jurisdiction includes the installation and removal of all exhibits (floor to ceiling) and related materials in connection with trade shows and conventions, including, but not limited to: trade shows and convention booth assembly and disassembly; installation, removal, disassembly, and recrating of all commercial exhibits.

The construction, preparation, erection, and maintenance of all signs, lettering, pictorial work, screen process work, show card writing, commercial exhibits and fabrication of advertising displays and pattern and sketch making, scale model making, the preparation training aids and mockups and application of plastic, scotchlite and similar reflective materials.

(H)    Scenic Artists:
Scenic Artists' work shall consist of models, sketches, carpenter drawings, painting for theatrical productions, motion picture settings and all the various effects; the painting of properties and decorations which may be used to decorate the stage and motion picture settings, mural paintings, display creations and the art of makeup and all its various effects.

(I)    Tools and Equipment:
The operation of all tools, equipment and machinery used by all trades coming under our Union's jurisdiction including brushes, rollers, spray painting equipment, miscellaneous hand and power driven tools including sandblasting equipment, ladders, scaffolding and other rigging, the operations and maintenance of all types of compressors and hi-reaches.

(J)    The forgoing is not all-inclusive, and may be enlarged or otherwise changed by action of the General Executive Board in a manner not inconsistent with the express provisions of The Constitution of the Union and upon approval by the Coalition.

6



crimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, or regulations, bylaws, constitutional provisions, or any other aspect or obligation of the Union membership policies or requirements. All such selection and referral shall be in accordance with the following procedure.

5.1   The Union shall establish and maintain an open and non-discriminatory referral system for the employment of journeymen and apprentice painters, tapers and glaziers.

5.2   The employer shall, upon requesting referral of job applicants, specify the following to the Union:

    (A)   Number of persons required

    (B)   Work or project location

    (C)   Type of work

    (D)   Individuals requested by name

    (E)   Specialty involved

    (F)   Any information to assist with proper referrals

5.3   The Union shall refer workers to the employer in the following manner and order:

    (A)   If available, specifically requested individuals previously employed by said employer may be recalled for a period of twelve (12) months from date of layoff.

    (B)   Those available whose names are entered on a seniority list, specialties included, posted and maintained by the Union.

5.4   The employer shall have entire freedom of selectivity in hiring and may reject, layoff or terminate any person referred to it by the Union.

    (A)   In the event the Union is unable to furnish qualified persons for employment, the employer may procure them from any other source or sources.

5.5   The selection of applicants for referrals shall be on a non-discriminatory basis. Seniority shall be based upon the length of employment in the

8

## ARTICLE 6
## WAGES & SCHEDULES

6.1   Classification of Painters/Tapers Work:

(A)   New Construction of all kinds, except as described in (c).

(B)   Repainting, paperhanging work and preparation therefore on jobs where no major alterations occur, and where there are not more than three (3) other Union trades other than painters and allied trades present on that job, but excluding bridges, stacks, elevated tanks, and generating stations.

(C)   Painting/Taping of residences and apartment buildings up to three (3) stories in height.

In the event of a dispute, the Joint Trade Board shall determine the classification of the specific project.

6.2   Spraying, sandblasting, pneumatic and powertool (over 115V), work on tanks, stacks, open structural steel, cables, swing scaffolds, and exterior work over three (3) stories; work above thirty (30) feet from pole trucks, scissor lifts or other lifting devices shall be at the listed wage rates.

6.3   Glaziers Installation (Rack) Schedule:

(A)   One (1) man for door lights and similar sizes up to 42" x 84". Over this size shall be two (2) men.

(B)   This does not apply to steel or work sash of typical sizes and may be adjusted on prevailing rate projects.

(C)   On all plate glass:

| | |
|---|---|
| Glass up to 170 united inches ..........................................Two | Men |
| Glass from 171 united inches to 191 united inches ......Three | Men |
| Glass from 191 united inches to 221 united inches ......Four | Men |
| Glass from 221 united inches to 240 united inches ......Five | Men |
| Glass from 240 united inches to 250 united inches ......Six | Men |
| Glass from 250 united inches to 260 united inches ......Seven | Men |
| Glass from 260 united inches to 272 united inches ......Eight | Men |
| Glass from 272 united inches to 284 united inches ......Nine | Men |
| Glass from 284 united inches to 290 united inches ......Ten | Men |
| Glass from 290 united inches to 305 united inches ......Eleven | Men |
| Glass from 305 united inches to 312 united inches ......Twelve | Men |

10

6.4    Painters, Glaziers & Tapers wage rates are as indicated on the following charts:

## PAINTERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | $31.00 | $33.85 | $35.70 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | $31.95 | $35.40 | $36.95 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | $32.80 | $36.20 | $37.85 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | $33.65 | $37.05 | $38.75 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | $34.45 | $37.90 | $39.65 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | $35.25 | $38.80 | $40.55 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

Abbreviations:
J-Journeyman Painter   F-Foreman Painter   GF-General Foreman   Jsp-Journeyman Spray   Fsp-Foreman Spray
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

Painters repaint
Wage for work classification B, as described: Repainting, paperhanging work and preparation therefore on jobs where no major
alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding
bridges, stacks, elevated tanks, and generating stations.

| Effective From | J | F | GF | Jsp | Fsp | GFsp | H & W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | $24.20 | $26.80 | $27.80 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | $24.75 | $27.20 | $28.45 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.03 | 0.07 |

continued

12

# TAPERS

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $31.35 | $32.75 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $29.20 | $32.15 | $33.60 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $32.90 | $34.40 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $33.65 | $35.20 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $34.45 | $36.00 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $35.25 | $36.85 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:

J-Journeyman Painter    F-Foreman Painter    GF-General Foreman
H&W-Health & Welfare    App.-Apprentice    LMCF-Labor Management Contributions Fund    N-App-National Apprentice
Fund    IAF-Industry Advancement Fund    PAC-Political Action Committee

14

Tapers

Wage for work classification B, as described: Taping and preparation on jobs where no major alteration occur, and not more than three (3) other than painters and allied trades are present on the job site, but excluding generating stations.

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $22.00 | $24.20 | $25.30 | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $22.50 | $24.75 | $25.85 | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $23.00 | $25.30 | $26.45 | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $23.50 | $25.85 | $27.05 | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $24.00 | $26.40 | $27.60 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $24.55 | $27.00 | $28.25 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |



continued

## GLAZIER

Wage for work classification A, as described: All New Construction except as described in 5.1 C

| Effective From | J | F | GF | H&W % | Pension $ | App. % | Annuity % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $28.50 | $30.00 | — | 14 | $3.00 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $29.20 | $30.70 | — | 14 | $3.30 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $29.90 | $31.40 | — | 14 | $3.60 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $30.60 | $32.10 | — | 14 | $3.90 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $31.30 | $33.05 | $34.05 | 14 | $4.20 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $32.05 | $34.05 | $35.05 | 14 | $4.50 | 1 | 12 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
J-Journeyman Painter   F-Foreman Painter   GF-General Foreman
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

## INDUSTRIAL WORKERS

| Effective From | Wage | H&W % | Pension $ | App. % | LMCF $ | N-App $ | IAF $ | PAC $ |
|---|---|---|---|---|---|---|---|---|
| 05/01/00 | $10.20 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/01 | $10.60 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/02 | $11.00 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/03 | $11.40 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/04 | $11.80 | 20 | $1.00 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |
| 05/01/05 | $12.20 | 20 | $1.25 | 1 | 0.05 | 0.05 | 0.15 | 0.07 |

Abbreviations:
H&W-Health & Welfare   App.-Apprentice   LMCF-Labor Management Contributions Fund   N-App-National Apprentice
Fund   IAF-Industry Advancement Fund   PAC-Political Action Committee

16



| Painter | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Spray, Stack, Tank, Swing | $31.00 | $31.95 | $32.90 | $33.65 | $34.45 | $35.25 |
| Foreman Spray, Tank Swing, Stack | $33.85 | $35.40 | $36.20 | $37.15 | $37.90 | $38.00 |
| Gen. Foreman Spray, Tank Swing, Stack | $35.70 | $36.95 | $37.85 | $38.75 | $39.65 | $40.55 |
| Annuity | 12% Gross ($3.42) | 12% Gross ($3.51) | 12% Gross ($3.60) | 12% Gross ($3.69) | 12% Gross ($3.78) | 12% Gross ($3.87) |
| Health & Welfare | 14% Gross (#3.99) | 14% Gross ($4.095) | 14% Gross ($4.20) | 14% Gross ($4.305) | 14% Gross ($4.41) | 14% Gross ($4.515) |
| Education And Training | 1% Gross (.285) | 1% Gross (.29) | 1% Gross (.30) | 1% Gross (.31) | 1% Gross (.315) | 1% Gross (.32) |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.30 | $40.48 | $41.675 | $42.86 | $44.055 | $45.308 |



| C-Rate Painter | 5/01/00 | 5/01/01 | 5/01/02 | 5/01/03 | 5/01/04 | 5/01/05 |
|---|---|---|---|---|---|---|
| Journeyman | $18.00 | $18.60 | $19.20 | $19.80 | $20.40 | $21.45 |
| Foreman | $19.80 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| General Foreman | $20.70 | $21.40 | $22.10 | $22.80 | $23.50 | $24.70 |
| Spray | $19.60 | $20.45 | $21.15 | $21.75 | $22.45 | $23.60 |
| Foreman Spray | $21.50 | $22.45 | $23.25 | $23.85 | $24.70 | $25.95 |
| General Foreman Spray | $22.55 | $23.45 | $24.30 | $25.05 | $25.80 | $27.15 |
| Annuity | 12% | 12% | 12% | 12% | 12% | 12% |
| Health & Welfare | 14% | 14% | 14% | 14% | 14% | 14% |
| Education & Training | 1% | 1% | 1% | 1% | 1% | 1% |
| Pension | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 | $2.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $25.46 | $26.22 | $26.98 | $27.746 | $28.508 | $29.84 |

20

| Taper B-Rate | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Journeyman | $22.00 | $22.50 | $23.00 | $23.50 | $24.00 | $24.55 |
| Foreman | $24.20 | $24.75 | $25.30 | $25.85 | $26.40 | $27.00 |
| General Foreman | $25.30 | $25.85 | $26.45 | $27.05 | $27.60 | $28.25 |
| Annuity | 14% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross. | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $31.48 | $31.975 | $32.91 | $22.84 | $34.78 | $35.779 |

22



|  | 5/1/00 | 5/1/01 | 5/1/02 | 5/1/03 | 5/1/04 | 5/1/05 |
|---|---|---|---|---|---|---|
| Glazier Journeyman | $28.50 | $29.20 | $29.90 | $30.60 | $31.30 | $32.05 |
| Foreman | $31.35 | $32.15 | $32.90 | $33.65 | $34.45 | $35.25 |
| General Foreman | $32.75 | $33.60 | $34.40 | $35.20 | $36.00 | $36.85 |
| Annuity | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross | 12% Gross |
| Health & Welfare | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross | 14% Gross |
| Education & Training | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross | 1% Gross |
| Pension | $3.00 | $3.30 | $3.60 | $3.90 | $4.20 | $4.50 |
| L.M.C.F. | .05 | .05 | .05 | .05 | .05 | .05 |
| National Apprentice | .05 | .05 | .05 | .05 | .05 | .05 |
| Package | $39.30 | $40.48 | $41.67 | $42.86 | $44.05 | $45.30 |

24



6.5 (A)    Apprentice rates shall be the following percentages of the base rate:

| | |
|---|---|
| First    4 Months | 30% |
| 5  to  8 Months | 40% |
| 9  to 12 Months | 50% |
| 13 to 16 Months | 60% |
| 17 to 20 Months | 70% |
| 21 to 24 Months | 75% |
| 25 to 28 Months | 80% |
| 29 to 32 Months | 85% |
| 33 to 36 Months | 90% |

(B)    The change in rate shall apply after regular attendance at apprentice school and passing regular skills test. Journeyman status after 6000 hours of training.

(C)    Fringe benefits shall be a percentage (%) of the base wage listed in 6.4 as follows:

| Year | H & W | Pension | Annuity |
|---|---|---|---|
| First | 13% | | |
| Second | 14% | .50 hr. | 4% |
| Third | 14% | 1.00 hr. | 8% |



6.6    Effective May 1, 2000 the employer shall deduct $1.00 per hour from the pay of all Painters and Tapers; the deduction shall be $0.50 per hour from Glaziers pay. Effective May 1, 2001 the deduction shall also be $1.00 per hour from Glaziers pay. The deductions shall be paid into the Vacation Fund of District Council 711.

6.7    On jobs of four (4) or more employees, one person shall be designated as foreman. A general foreman shall be designated on jobs of fifteen (15) or more employees.

6.8    All employees shall be paid weekly at least 30 minutes prior to the end of the work day. Not more than three (3) days pay shall be held back for the period between the close of the pay period and pay day. A statement of earnings and deductions shall accompany the pay.

6.9    Employees shall be notified and paid in full at least thirty (30) minutes before being laid off at lunch or quitting time.

6.10    Employers who send employees to jobs outside the territorial jurisdiction shall pay the expense of travel, room and board.

26



in the shop for the periods indicated above for which they are paid.

(B)   In the event weather conditions require the stoppage of work on any day after work has begun, employees shall be paid to the next full hour.

7.6   If an employee fails to report to work and the employer finds he cannot use the employee upon his return to work, the employer shall have the option of either paying off the employee at once or requesting him to wait for any wages due him until the next regular pay day. Waiting time shall not enter into the settlement.

7.7   The following are recognized holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, General Election Day - afternoon (a full 8 hour day at regular wage rates is permitted prior to noon), Veterans Day, Thanksgiving Day, and Christmas Day.

7.8   In the event work is lost due to weather or job conditions, work may be accomplished on Saturday, Sunday at the regular straight time rate to make up for the lost time.

7.9   (A)   Ten percent (10%) shall be added to the previously indicated wage rates for any eight (8) hours work outside the regular work day. Fifteen percent (15%) shall be added to the wage rates for any second shift outside the regular work day.

(B)   In addition to the added amounts in 7.9A, when three (3) shifts exist, the second shift shall receive eight (8) hours pay for seven and one half (7 1/2) hours work; the third shift shall receive eight (8) hours pay for seven (7) hours work.

(C)   The above applies to work classification 6.1(A) only.

## ARTICLE 8
## CONTRACTUAL RELATIONS & OBLIGATIONS

8.1   One member of a firm is allowed to work with the tools and a contractor is one that employs, on average, at least one person throughout the year.

8.2   Each employer shall carry comprehensive kinds of insurance such as, but not limited to, worker's compensation, public liability and property damage on equipment, automotive and otherwise, when used by its employees. as well as other coverage carried by custom or practice in this

28

by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

8.6  The Union agrees that journeymen will not be referred to a builder unless extenuating circumstances justifies the referral and the coalition is consulted prior to providing any employees.

8.7  In the event that a builder or general contractor owes monies for work performed on a job to a contractor who is signatory to an agreement with the Union, they will endeavor to do everything legally possible to see that all just debts owed to the contractor shall have been settled satisfactorily.

## ARTICLE 9
## WORKING CONDITIONS

9.1  The use of spray equipment is allowed to paint acoustical surfaces, ceiling grid, furniture, bar-joists, structural steel, corrugated ceiling and walls (including pipes, ducts, conduit, hangers, steel, etc. adjacent thereto), wood walls and ceilings, where exposed joists are thirty (30) inches or less on centers, fin type radiation, floors, louvers and gratings, block filler with backrolling; metal pan stairs and spindle railings, plastics and multi-color materials, lacquers and any other material deemed not brushable, and any and all work at housing projects. In the event a second employee is necessary in a spray painting operation, he shall also receive the spray rate provided he works in the immediate work area at all times the equipment is in use. He shall also relieve and otherwise assist the other person.

    (A)  The Joint Board shall study other processes, materials and surfaces and shall determine those which shall be added to those mentioned herein.

    (B)  The Business Manager shall be notified when spraying is contemplated.

9.2  The unrestricted use of tools of the painting trade is permitted on work classified in 6.1A (prevailing wage jobs); 6.1B; and 6.1C.

9.3  It is understood and agreed and recognized that traditional hand tools to perform work with namely hawks, trowels, bread pans, and broad knives, will be supplied by the Employees. The Employer shall furnish all other tools and equipment to work with and if at any time such tools or equipment or any material or work conditions shall constitute a hazard to health or physical safety, the Employer shall not permit his employees to

30

(C)   For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee shall be counted as wages for which contributions are payable.

(D)   Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeymen, and probationary employees.

(E)   The payments to the Training Fund required above shall be made to the National Training Fund which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

10.3    International Union of Painters and Allied Trades Union and Industry Pension Fund.

The only agreement between the employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1.    (A)   Commencing with the first day of May, 2000, and for the duration of the Agreement, and nay renewals or extension thereof, the employer agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(B)   For each hour or portion thereof for which an employee receives pay, the employer shall make a contribution of in the amount indicated in the 6.4 charts to the above named pension fund; allocations to the IUPAT Union and Industry Pension Plan and to the IUPAT Union and Industry Annuity Plan shall be as indicated in said charts.

(C)   For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(D)   Contributions shall be paid on behalf of any employee starting

32

(B)  For the purpose to this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(C)  Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices and probationary employees.

(D)  The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust as amended from time to time, establishing the Fund.

2.  The Employer hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3.  All contributions shall be made at such times and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

11.2  Industry Advancement Fund:

1.  Effective May 1, 2000 each employer shall make a contribution of three cents ($.03) per hour per painter, fifteen cents ($.15) per hour per taper, and fifteen cents ($.15) per hour per glazier for each hour worked by each employee to the "Industry Advancement Fund" heretofore established and administered by Trustees appointed by each of the three (3) members of the Coalition solely for the advancement, and improvement of the trade and the payment of expenses in carrying out such programs and responsibilities.

## ARTICLE 12
## POLITICAL ACTION FUND

12.1  Employers signatory to this agreement shall deduct form the wages of each Union Employee, the voluntary sum of seven cents ($.07) for each hour worked as a non-deductible political contribution to the DC

34

(A)  The shop steward may handle routine grievances on the job but is not authorized to call work stoppages or make any agreement which contradicts, changes, modifies or alters the terms of this agreement.

(B)  In the event of emergent difficulties, he shall so notify the Business Manager.

(C)  Except for general foreman and foreman, the steward is senior and, provided he remains qualified to do the work, the shop or job steward shall be the last person laid off among the employees in the bargaining unit in any shop and/or job.

## ARTICLE 15
## SUBCONTRACTING

15.1  Subcontracting shall not be permitted except to signatory contractors whose employees receive comparable wages, hours of work and working conditions as hereunder.

(A)  Unemployed Union Painters may take work on a contract basis not to exceed one thousand dollars ($1,000.00). The member must notify the Union before starting the job and the Union shall advise the Association of the job. If there is no objection based upon the fact that an Association member bid the job, the Union member may commence the work. A Union member in violation shall be brought before the Joint Trade Board and, if found guilty, shall be fined one thousand dollars ($1,000.00) for the first offense; two thousand dollars ($2,000.00) for the second offense; and expelled from the Union for the third offense.

## ARTICLE 16
## PRESERVATION OF WORK CLAUSE

16.1  To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the employer performs on site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise) man-

36

(B)  Ten (10) members, five (5) representing each party, shall constitute a quorum. Decisions shall be made by majority vote provided that the Union representatives and Association representatives shall have equal voting strength with respect to each vote. Members of the Joint Board shall choose a chairman and co-chairman to serve such terms as agreed upon by the Board, provided that one such officer shall represent each party.

17.2  The Joint Board shall meet regularly at least once every three (3) months. Special meetings may be called by the chairman or co-chairman when prompt hearing and decision is required in any dispute.

17.3  The Joint Board is empowered to hear and decide all grievances and disputes which may arise between the parties as to the interpretation or application of this agreement; to award or assess remedies, damages and penalties for violations of this agreement provided, however, any assessment of damages shall not exceed Five Thousand Dollars ($5,000.00); to issue interpretive rulings or other rules and regulations as it deems necessary to give force and effect to the purpose and intention of this agreement; to investigate all grievances and disputes submitted to it, including audits of records; to recommend amendments to or changes in the agreement but only upon the written request of both parties; to appoint such persons or committees as necessary to aid the Board in the performance of its duties; and to demand of those who repeatedly violate this agreement the posting of a cash or surety bond to assure future compliance.

17.4  All grievances and disputes shall be submitted in writing to the chairman and co-chairman.

17.5  If all facilities to resolve disputes over the interpretation of the terms or conditions of an existing agreement have failed of settlement, both parties agree before strike or lockout, or the resort to proceedings before the National Labor Relations Board, State Government Boards or the courts, to submit the dispute to the Joint National Trade Board for binding decision. The Joint National Trade Board is hereby authorized and empowered to delegate any question or issue submitted, to a committee of two (2), one (1) of whom shall be appointed by each of the respective presidents of the IUPAT and the National Trade organization of the affected coalition member for the purpose of investigation, making recommendations to the Board, or, in fact, resolving or determining the particular issue, which determination shall be binding with the same force and effect as though rendered by the Board itself.

17.6  The remedies and sanctions specified in this section are in addi-

The Employer shall give notice of the existence of this Agreement and this provision to any purchaser, transferee, lessee, assignee, etc., of the business and operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy of said notice forwarded to the Union, at the time the seller, transferor, or lessor executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, not including financial details.

In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the Union, and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, transferee, or lessee has agreed in writing to assume to obligations of this Agreement. Retail establishments are exempt herefrom.

### ARTICLE 19
### GENERAL SAVINGS CLAUSE

If any article or section of this Agreement should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

In the event that any article or Section is held invalid or enforcement of or compliance with any article or section has been restrained, as above set forth, the affected parties shall meet at the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such article or section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement within sixty (60) days after beginning of the period of invalidity or restraint, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provision in this agreement to the contrary.

### ARTICLE 20
### DURATION CLAUSE

20.1    Previously negotiated existing agreement shall remain in full force and effect until and including April 30, 2000. Thereafter said Agreement shall be null and void.

40

*W1149 · 30711*

THE PARTIES HERETO ARE DESIROUS OF ENTERING INTO AN AGREEMENT TO SET FORTH CONTROL AND REGULATE THE WAGES, HOURS, FRINGE BENEFITS, TERMS AND CONDITIONS OF EMPLOYMENT UNDER WHICH THE EMPLOYERS WILL EMPLOY PAINTERS, TAPERS, GLAZIERS AND ALLIED TRADES. EFFECTIVE MAY 1, 2000 THROUGH APRIL 30, 2006.

AT THE COMMENCEMENT OF EACH CONTRACT YEAR OR UPON BEGINNING OF WORK WITHIN THE TERRITORY DURING EACH CONTRACT YEAR, EACH EMPLOYER SHALL PAY THE JOINT TRADE BOARD THE SUM OF FIFTY DOLLARS ($50.00) (SEE ARTICLE 17.9).

BUSINESS NAME ___URBAN ENTERPRISES, INC.___

BUSINESS ADDRESS ___200 MOUNTAIN AVE—MIDDLESEX, NJ___
                                          08846
PHONE # _732-356-0543_      FAX # _732-356-8396_

FEDERAL ID # ___22-1762335___

WORKMEN COMPENSATION INS. CO. _NJ MANUFACTURER_

UNEMPLOYMENT COMPENSATION ___NEW JERSEY___

TEMPORARY DISABILITY BENEFITS INS. _A_s_aBove_

SIGNED THIS ___20th___ DAY OF _July_ 20 _05_

EMPLOYERS SIGNATURE & POSITION _[signature]_

FOR THE UNION _[signature]_

PATRICK J. BRENNAN, BUSINESS MANAGER OF DISTRICT COUNCIL 711

DISTRICT COUNCIL 711
INTERNATIONAL UNION OF
PAINTERS AND ALLIED TRADES
STATE OF NEW JERSEY

UNION COPY

**LOCAL UNION** _DC711_

**DATES** _5/1/00   4/30/06_

**PENISON PAGES** _1,2, 18,19 20 26, 32,33_



5/1/00  Pen #3.00  Ann 12%   5/1/01  Pen #3.30  Ann 12%
5/1/02  Pen #3.60  Ann 12%   5/1/03  Pen # 3.90  Ann 12%

**RATES** _5/1/04  Pen #4.20  Ann 12%_
         5/1/05  Pen # 4.50  Ann 12%

**MODEL CLAUSE** _✓_

50% JC ✓  SC ✓

no pen 1st yr Appr's

PRINTR Urban
27916. cba

EXHIBIT 3

DC0711 LOCAL INFORMATION

LOCATION : PLEASANTVILLE NJ/PTG CONTR   CONSTRUCTION

```
STATUS         : A           RPTDUE DAY   : 00      REGION      : 2  ADM:
AGREEMENT DATE : 19960501     MODEL       CL: Y     COUNTRY     : U
AGREEMENT EXP  : 20010430     ROLLOVER    CL: N      BENEFIT LV : M
PARTICIPATION  : 19670601     SUBCONTR    CL: N     RFORMS      : NO ENVELOPES
MERGER DATE    : 19950501     OUTOF AREA CL: N      STAT EFFEC  : 00000000
```

MESSAGES: BEFORE 5/1/00 GRANDFATHER RATES   PEN $.25  ANN $.57
          1ST YR APPRS NO PEN OR ANN (D RATE PEN $.30 ANN $.30 EFF 5/00
          2ND YR APPRS PEN $.50   ANN 4% GROSS  PEN $1.14
          3RD YR APPRS PEN $1.00  ANN 8% GROSS  PEN $2.28

| | PEN. TYPE | PENSION RATE | ANN. TYPE | ANNUITY RATE | TOTAL RATE | PCENT % | BEG. DATE | END DATE |
|---|---|---|---|---|---|---|---|---|
| CURRENT | H | 03.00 | P | 12.00 | 03.00 | 00.00 | 2000/05/01 | 2010/12/31 |
| HISTORY | H | 02.50 | P | 12.00 | 02.50 | 00.00 | 1997/05/01 | 2000/04/30 |
| HISTORY | H | 02.50 | P | 07.50 | 02.50 | 00.00 | 1996/05/01 | 1997/04/30 |



# TABLE OF CONTENTS

**Article**                                                                 **Page**

1  Recognition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2  Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3  Union Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4  Administrative Dues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5  Exclusive Hiring Hall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6  Wages and Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7  Hours & Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

8  Contractual Relations and Obligations . . . . . . . . . . . . . . . . . . . . . . . . . 28

9  Working Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

10  Fringe Benefit Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

11  Cooperation and Advancement Funds . . . . . . . . . . . . . . . . . . . . . . . . . . 33

12  Political Action Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

13  Joint Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

14  Union Representatives and Shop Stewards . . . . . . . . . . . . . . . . . . . . . . 35

16  Preservation of Work Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

17  Joint Trade Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

18  Successor Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

19  General Savings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

20  Duration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

(A) Employ not less than 50% of the employed on such work from the residents of the area where they work is performed or from among the persons who are employed the greater percentage of their time in such area; any others shall be employed from the contractor's home area.

(B) Comply with all lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits, and procedure for settlement of grievances; provided, however, employees brought into an outside jurisdiction by employers shall be entitled to receive the wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees.

1.8   An employer shall not engage in work covered by the agreement through the use of device of another business or corporation which such an employer owns or controls through the use or device of a joint venture with another employer or contractor without first consulting with the Union to establish to the Union's satisfaction that the use of such device is not for the purpose of taking advantage of lower wages or conditions in effect in the area where said device is sought to be used. If the Union is not so satisfied, it may resort to all legal or economic recourse, including cancellation of this agreement with said employer, not withstanding any other provision of this agreement.

1.9   An employer from another territorial jurisdiction who has work to be performed in the territory of District Council 711 and seeks persons to perform the work, shall employ persons from the registration list in the ratio of one (1) person from said list to one (1) person from other sources.

1.10   Employees covered by this agreement have the right to respect any legal picket line validly established by a bona fide labor organization; the Union has the right to withdraw employees subject to this agreement if the employer is involved in a legitimate primary labor dispute with a bona fide labor organization.

(A) It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, if any employee refuses to perform any service which his or her employer undertakes to perform for an employer or person whose employees are on strike, and which service, but for such strike, would be performed by the employees of the employer or person on strike.

2